UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

In re:

Case No. 09-34122-BKC-EPK

AMERIGROW RECYCLING – DELRAY,
LIMITED PARTNERSHIP, et al.[1].

Chapter 11
(Jointly Administered)

_____/

## DISCLOSURE STATEMENT FOR
## DEBTORS' JOINT PLAN OF REORGANIZATION

Dated: March 2, 2010

GENOVESE JOBLOVE & BATTISTA, P.A.
Heather L. Harmon, Esq.
Fla. Bar No. 013192
hharmon@gjb-law.com
Michael L. Schuster, Esq.
Florida Bar No. 57119
mschuster@gjb-law.com
100 S.E. 2nd Street, 44th Floor
Miami, FL 33131
Tel. (305) 349-2300
Fax. (305) 349-2310

Attorneys for Debtors and Debtors-in-Possession

**IMPORTANT:**

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PROPOSED PLAN OF REORGANIZATION.   ACCORDINGLY, PLEASE READ THIS DOCUMENT WITH CARE.**

---

[1]       The jointly administered debtors are: Amerigrow Recycling – Delray, Limited Partnership and its general partner, Amerigrow Recycling Corp.

1

## TABLE OF CONTENTS

**Page**

**INTRODUCTION** ...................................................................................................................................1
    **Generally.** .................................................................................................................................1
    **Purpose and Disclaimers** .......................................................................................................1
**CONFIRMATION HEARING** .................................................................................................................2
**THE DEBTORS** .......................................................................................................................................3
    **Background** .............................................................................................................................3
    **Events Leading up to Chapter 11 Case** ..................................................................................7
    **The Chapter 11 Case** .............................................................................................................7
**VOTING PROCEDURES AND REQUIREMENTS OF CONFIRMATION** ...........................................10
    **Creditors and Interest Holders Entitled to Vote** ...................................................................10
    **Definition of Impairment** .....................................................................................................11
    **Votes Required for Class Acceptance** ...................................................................................12
    **Information on Voting Ballots** ..............................................................................................12
**CONFIRMATION OF THE PLAN** ........................................................................................................12
    **Confirmation Hearing** ...........................................................................................................12
    **Requirements for Confirmation of the Plan** ..........................................................................13
    **Cramdown** ............................................................................................................................15
**SUMMARY OF THE PLAN** ...................................................................................................................15
    **Introduction** ..........................................................................................................................15
    **Classifications of Claims and Interests** .................................................................................15
    **Treatment of Unclassified Claims** ........................................................................................17
    **Treatment of Classified Claims** ............................................................................................19
    **Implementation of the Plan** ..................................................................................................28
    **Preservation of Claims and Causes of Action** .......................................................................32
    **Injunction and Other Limitations of Liability** .......................................................................33
    **Alternatives to the Plan** ........................................................................................................34
    **Discharge** ..............................................................................................................................35
    **Revesting of the Reorganized Debtor Assets** ........................................................................36
    **Tax Analysis** .........................................................................................................................36
    **Best Interest of Creditors Test** ..............................................................................................38
    **Liquidation Analysis** ............................................................................................................38
    **Feasibility of the Plan** ...........................................................................................................39
    **Risk Factors** .........................................................................................................................40
    **Exemption from Stamp or Similar Taxes** ..............................................................................41
**CONCLUSION** ......................................................................................................................................41

EXHIBIT A – Joint Plan of Reorganization
EXHIBIT B – Schedule of Secured Lenders
EXHIBIT C - Liquidation Analysis
EXHIBIT D – Consolidated Financial Projections
EXHIBIT E - List of Payments Within 90 Days of Petition Date
EXHIBIT F - List of Payments Within 1 Year of Petition Date

# I.  INTRODUCTION

## A.    Generally.

The Debtors have proposed their Joint Plan of Reorganization (the "Plan") under Chapter 11 of the United States Bankruptcy Code.  A copy of the Plan is attached hereto as Exhibit A.  Creditors have the opportunity to vote to accept or reject the Plan.  The Plan is summarized in this Disclosure Statement ("Disclosure Statement").  Notwithstanding such summary, holders of Claims and Interests, are urged to refer to the Plan for a full and complete statement of its specific terms, including the treatment proposed to the various Classes of Claims and Interests.  All capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Plan.

This Disclosure Statement is being distributed by the Debtors to those creditors and holders of Interests who are entitled to consider and vote on the Plan as set forth herein.  After notice and a hearing, the Bankruptcy Court approved this Disclosure Statement as containing such information as would enable a hypothetical, reasonable investor typical of the holders of Claims and Interests being solicited herein to make an adequately informed judgment in exercising such holder's right to vote either to accept or to reject the Plan.  The Bankruptcy Court's approval of this or any other Disclosure Statement does not constitute a determination by the Bankruptcy Court as to the merits of the Plan or whether any creditor or holder of an Interest should vote to accept or reject the Plan. Each holder of a Claim or an Interest should consult with a lawyer and/or other professional advisors in order to obtain specific advice on how the Plan will affect their respective rights.

A separate ballot for use by holders of Claims for indicating acceptance or rejection of the Plan is enclosed with this Disclosure Statement.

**THE DEBTORS BELIEVE THAT THE JOINT PLAN OF REORGANIZATION PROPOSED HEREIN IS IN THE BEST INTERESTS OF THEIR CREDITORS AND HOLDERS OF INTERESTS.  AS SUCH, THE DEBTORS STRONGLY URGE ALL CREDITORS AND HOLDERS OF INTERESTS TO VOTE IN FAVOR OF THE PLAN BY NO LATER THAN 4:30 P.M., EASTERN TIME, ON_____, WHICH IS THE VOTING DEADLINE SET BY THE BANKRUPTCY COURT.**

## B.    Purpose and Disclaimers.

The purpose of this Disclosure Statement is to set forth information (i) regarding the history of the Debtors, their business and the events that have occurred in this Chapter 11 Case, (ii) concerning the Plan and any alternatives to the Plan, (iii) advising the holders of Claims and Interests of the treatment of their respective Claims and Interests proposed under the Plan, (iv) advising the holders of Claims and Interests of their respective rights under the Plan, and (v) assisting the holders of Claims in making informed judgments regarding whether to accept or reject the Plan.  The information in this Disclosure Statement may bear on your decision to vote to accept or reject the Plan.  As such, you are urged to read the Disclosure Statement and the Plan carefully and to consult your lawyer and other professional advisors in connection therewith.  The contents of the Disclosure Statement should not be construed as legal, business or tax advice from the Debtors or their counsel.

1

The information contained in this Disclosure Statement (including the Exhibits hereto) concerning the financial condition of the Debtors is based upon financial and other information as of the date hereof. The information in this Disclosure Statement has been obtained from the Debtors, the Debtors' books and records and pleadings and other filings with the Bankruptcy Court, including without limitation, the Debtors' bankruptcy Schedules, proofs of claims filed by creditors, and the monthly financial reports filed by the Debtors during this Chapter 11 Case (the "Monthly Operating Reports"). The Debtors' books and records have not been audited. As such, the Debtors cannot verify the complete accuracy thereof. However, the Debtors are not aware of any material misstatements or omissions in this Disclosure Statement. Any representations made to secure the acceptance or rejection of the Plan which are other than as contained in this Disclosure Statement have not been approved by the Bankruptcy Court. No representations concerning the financial condition of the Debtors or any aspect of the Plan are authorized by the Debtors except as set forth in this Disclosure Statement. If and to the extent that any such representations have been made to any creditor or party in interest, then such representations should be reported to counsel to the Debtors or to the Office of the United States Trustee. Any such representations or inducements made to secure your acceptance or rejection of the Plan which are other than as set forth herein should not be relied upon by you in deciding whether to accept or reject the Plan.

**THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE OF THIS DOCUMENT UNLESS ANOTHER DATE IS SPECIFIED HEREIN AND THE DELIVERY OF THIS DOCUMENT DOES NOT IMPLY THAT THERE HAVE BEEN NO CHANGES IN THE INFORMATION SET FORTH HEREIN SINCE SUCH DATE.**

**THIS DISCLOSURE STATEMENT IS NOT INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW OF THE PLAN BY EACH HOLDER OF A CLAIM OR INTEREST. THIS DISCLOSURE STATEMENT IS INTENDED TO AID AND SUPPLEMENT SUCH REVIEW. THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN. THE PLAN IS THE OPERATIVE CONTROLLING LEGAL DOCUMENT. AS SUCH, IF THERE IS ANY INCONSISTENCY BETWEEN THE TERMS AND PROVISIONS OF THIS DISCLOSURE STATEMENT AND THE PLAN, THEN THE TERMS AND PROVISIONS OF THE PLAN SHALL CONTROL.**

---

**GENOVESE JOBLOVE & BATTISTA, P.A. COMMENCED REPRESENTATION OF THE DEBTORS PRIOR TO THE PETITION DATE AS THEIR BANKRUPTCY COUNSEL AND HAS RELIED UPON INFORMATION PROVIDED BY THE DEBTORS IN CONNECTION WITH THE PREPARATION OF THIS DISCLOSURE STATEMENT.**

## II. CONFIRMATION HEARING

The Bankruptcy Court has ordered that holders of Claims against the Debtors entitled to vote on the Plan file ballots for the acceptance or rejection of the Plan directly with the Clerk of the Bankruptcy Court **on or before 4:30 p.m., Eastern Standard Time, _____.** Any ballot not filed by such date will not be counted in connection with confirmation of the Plan unless the Bankruptcy Court orders otherwise. A ballot is enclosed herewith for Classes LP-2, LP-3, LP-4,

LP-5, LP-6, LP-7, LP-8, LP-9, LP-10, LP-11, LP-13, Corp-2, Corp-3 and Corp-4 which Classes are the only Class of Claims or Interests entitled to vote on the Plan.  Classes LP-1, LP-12 and Corp-1 are unimpaired and therefore are deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Classes LP-14 and Corp-5 are not expected to receive or retain any property under the Plan and therefore such Classes are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

The Bankruptcy Court has scheduled a final hearing on this Disclosure Statement and a Confirmation Hearing for the Plan on _____ at the United States Bankruptcy Court, _____, and has directed that notice of the Confirmation Hearing be given to all creditors of the Debtors as well as parties in interest.  At the Confirmation Hearing, it is expected that the Bankruptcy Court will enter an order confirming the Plan (the "Confirmation Order") if the requirements of Section 1129(a) of the Bankruptcy Code have been met, including the receipt of sufficient acceptances of the Plan by the holders of Claims against and Interests in the Debtors or, in the alternative, if the requirements of Section 1129(b) of the Bankruptcy Code have been satisfied.

In addition, Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan.  Any objection to confirmation must be made in writing and filed with the Bankruptcy Court with proof of service and served upon the following persons on or before _____:

| Heather L. Harmon, Esq. | Heidi A. Feinman, Esq. |
|---|---|
| Genovese Joblove & Battista, P.A. | Office of the U.S. Trustee |
| Bank of America Tower | U.S. Trustee's Office |
| 100 S.E. 2nd Street, 44th Floor | 51 S.W. First Avenue, Suite 1204 |
| Miami, Florida 33131 | Miami, FL  33130 |
| hharmon@gjb-law.com | Heidi.A.Feinman@usdoj.gov |

Unless an objection to confirmation is timely filed and served, it may not be considered by the Bankruptcy Court.

### III.  THE DEBTORS

A.    **Background**

1.    **Corporate Structure.**

Amerigrow LP, a New York limited partnership, has two limited partners: Janet Tomlinson, who owns a 37.5% interest in the limited partnership, and Mulchmaker, LLC, which owns a 47.5% interest.  The general partner of Amerigrow LP is Amerigrow Corp., a New York corporation, which owns the remaining 15% interest in Amergrow LP.

Mulchmaker, LLC is owned by: (i) BPK Trust (55.78%); (ii) Michael Kearney Roth IRA (17.8%); (iii) Silvia Kearney Roth IRA (14.58%); William Kearney Roth IRA (5%); Paul Kearney Roth IRA (4.29%); and Kathryn Kearney Roth IRA (3.17%).

Amerigrow Corp. is owned 50% by Janet Tomlinson and 50% by Silvia Kearney. Janet Tomlinson is the President and Secretary of Amerigrow Corp., and Silvia Kearney is its Vice-President, Assistant Secretary, and Treasurer.

Amerigrow Corp.'s only material assets, exclusive of any Litigation Claims, are its 15% partnership interest in Amerigrow LP and a Komatsu Model PC300LC-7EO Hydraulic Excavator (the "Komatsu Excavator"). At the time of the Komatsu Excavator's acquisition, Komatsu inadvertently made Amerigrow Corp. the counterparty to the loan agreement, although such equipment is solely used by Amerigrow LP and paid for by Amerigrow LP. Amerigrow Corp. has no independent operations, however, for purposes of this Disclosure Statement, the plural "Debtors" shall be used to describe Amerigrow LP and Amerigrow Corp's consolidated operations. Notwithstanding the foregoing, the Debtors are not seeking substantive consolidation in the Plan.

## 2. Current Business Operations.

The Debtors are a full-service organic-recycling facility, accepting organic landscape debris at their convenient drive-thru Delray Beach store and dumping facility. The Debtors have the largest fleet of high-capacity grapple trucks in South Florida, and offer year-round landscape debris pick-up and disposal services for landscaping companies, golf courses and residential communities.

The Debtors are also a premier manufacturer of various mulch and soil varieties. Using a fully-computerized state-of-the-art European blending system with flow sensors and weight scales for precise blending, the Company's mulch and soil products meet the strict requirements of the Mulch & Soil Council and the Department of Environmental Protection. The Debtors' mulch and soil sales are conducted at their retail location in Delray Beach, and the Debtors also offer mulch delivery and blow-on installation services.

The Debtors' operations are conducted at its Delray Beach, Florida facility, which is located at 10320 West Atlantic Avenue, Delray Beach, Florida 33446. Amerigrow LP owns the Property, which consists of three parcels of land totaling 59.94 acres, located within a special land use and zoning district known as the Agricultural Reserve. Amerigrow LP also leases an additional 5 acres of adjacent land from James Schry. The Debtors operate under a special permit from Palm Beach County to use the Property as a clean wood waste recycling facility. The Property includes several temporary and permanent metal structures containing a total of 8,989 square feet. The most recent appraisal of the Property in the Debtors' possession, which was conducted in September 2006, estimated the value of the Property to be $10,200,000. The Debtors believe that PNC has obtained additional appraisals since September 2006, although PNC has not revealed the content of those appraisals. If necessary, the Debtors will obtain a new appraisal in connection with confirmation of the Plan. The Proof of Claim filed by PNC (Claim Number 39) lists a value for the Property of $4,000,000, without any explanation as to its origin. The Debtors dispute that this is the value of the Property as a going concern, but have used the value of $4,000,000 in their Liquidation Analysis to represent what the value could be in a fire-sale situation.

The Debtors' tangible personal property includes machinery and equipment, consisting of wheel loaders, skid steer loaders, hydraulic excavators, forklifts, grinders, screening plants, mulch blowers, storage containers, self-dumping hoppers, a computer controlled mixing line, and a number of grapple trucks, trucks, and trailers. The estimated book value of the Debtors' equipment, as listed on the Debtors' schedules, is approximately $5,300,000. The Debtors estimate that if they were forced to liquidate such equipment, it would recover a maximum of 30% of book value, for a total of $1,600,000.

The Debtors' personal property also includes its inventory of wood, bulk mulch, bagged mulch, compost, nursery stock, colorant, roll bags, soil bags, shrink wrap and tires. The Debtors' personal property also includes its inventory of soil materials. The cost-basis value of this inventory is approximately $752,000 as of March 2, 2010. The Debtors estimate that if they were forced to liquidate such inventory, it would recover a maximum of 25% of cost value, or approximately $188,000. The Debtors' inventory is worth very little in a liquidation scenario because it consists of mostly compost and other organic materials that worth very little in a bulk liquidation scenario.

Amerigrow LP's intangible personal property consists of a number of trademarks, including Premium Red™ Certified Mulch™, Premium Gold™ Certified Mulch™, natural Eco-Mulch™ and Black Magic Eco-Soil™ compost/topsoil. The value of this property is unknown.

Finally, Amerigrow has a number of accounts receivable, which have a face amount estimated as of March 2, 2010 at approximately $1,200,000.00. The Debtors believe that as a going concern, their accounts receivable are close to 100% collectible. In a liquidation scenario, the Debtors estimate that the value of such accounts receivable decreases to approximately 60% recovery.

### 3.    Capital Structure – Land Loan.

On October 26, 2006, Amerigrow LP executed and delivered to National City Bank (successor by merger to Fidelity Federal Bank & Trust) a Promissory Note in the original principal amount of $6,600,000.00 (the "National City Term Note") and a Line of Credit Promissory Note in the original principal amount of $250,000.00 (the "National City Revolving Note") (collectively, the "National City Notes").

The National City Notes are secured by a Mortgage recorded in Official Records Book 21028, Page 1064 of the Public Records of Palm Beach County, Florida (the "National City Mortgage"), encumbering the Real Property.

The National City Notes are further secured by an Assignment of Rents, recorded in Official Records Book 21028, Page 1074 (the "National City Assignment") and UCC-1 Financing Statements recorded in Official Records Book 21028, Page 1081 and in Official Records Book 21028, Page 1086 (the "National City Financing Statements").

On or about September 12, 2007, Amerigrow LP executed in favor of National City  a Consolidated Promissory Note in the principal sum of $500,000.00 (the "National City Consolidated Note"), which is secured by the National City Mortgage, the National City Assignment, and the National City Financing Statements. The National City Consolidated Note consolidates and replaces

the obligations evidenced under the National City Revolving Note with future advance funding in the amount of $250,000.00. In connection with the National City Consolidated Note, Amerigrow LP executed a Mortgage Modification and Notice of Future Advance Agreement, which was recorded in Official Records Book 22116, Page 1430 on September 17, 2007.

The obligations evidenced by the National City Revolving Note have been satisfied, and no amounts remain due and owing thereunder. Accordingly, the only remaining obligations from the Debtors to National City is the National City Term Note, secured by the Property.

The outstanding indebtedness owed by Amerigrow LP to PNC Bank, as successor in interest to National City by virtue of the above-specified loan documents is approximately $6,880,957.85, inclusive of accrued but unpaid interest from February 1, 2009 to the Petition Date, attorneys fees and other charges (See Claim Number 39). All the above-specified loan documents are hereinafter collectively referred to as the "National City Loan."

### 4.    Capital Structure – Line of Credit.

On August 12, 2008, Amerigrow LP executed a Loan Agreement, Promissory Note, and Security Agreement in favor of Fifth Third Bank ("Fifth Third") evidencing and securing a loan in the original principal amount of $1,000,000.00 (the "Fifth Third Loan"), all of which remains presently due and owing. In connection with the Fifth Third Loan, Amerigrow LP granted Fifth Third a lien on and security interest in its personal property as the collateral for the Fifth Third Loan.

On August 28, 2008, Fifth Third Bank filed a UCC-1 Financing Statement in the Florida Secured Transaction Registry, perfecting its security interest in Amerigrow LP's personal property in connection with the Fifth Third Loan.

### 5.    Capital Structure – Equipment Loans.

In the course of their business, the Debtors have financed the acquisition of certain machinery, equipment, and vehicles through various installment loans acquired from various lenders, which loans are secured by liens on certain specified items of personal property (collectively, the "Equipment Loans"). A complete list of the Equipment Loans as of the Petition Date (together with the Debtors' other secured obligations) is attached hereto as Exhibit B.

### 6.    Management and Consulting Agreements.

Amerigrow LP is a party to two Management Consulting Agreements (the "Management Agreements"), with: (i) Floragem Investments Corp., whose President is Charles W. Tomlinson, III; and (ii) M & S Fin. Corp., whose President is Michael G. Kearney (collectively, the "Consultants").

Pursuant to each Management Agreement, the Consultants review the ordinary and usual business affairs of the Debtors pertaining to the operation, maintenance and management of the various aspects of the Debtors' business, interact with the officers and employees of the Debtors and provide, on a regular basis, observations and make such recommendations as are appropriate and necessary in respect of the Debtors' business operations.

Under their respective Management Agreements, in consideration of the management and consulting services rendered, Floragem is entitled to receive a consulting fee equal to 2.35% of the Company's Gross Revenues, and M & S Fin. Corp. is entitled to receive a consulting fee equal to 1.65% of the Company's gross revenues.

Charles Tomlinson and Michael Kearney, the persons in control of the Consultants, are relatives of Janet Tomlinson and Silvia Kearney, respectively, who are each a person in control of the Debtors, and are therefore "insiders" of the Debtors as such term is defined in Section 101 of the Bankruptcy Code.  However, the compensation paid to the Consultants pursuant to the Management Agreements is commensurate with or less than the fair market-value of the services provided to the Debtors thereunder.

As of the Effective Date, the Management Agreements with the Debtors will be rejected and new Management Agreements, substantially in the form of the prior Management Agreement will be entered into between the Reorganized Debtors and each of Floragem and M & S Fin.  The primary purpose of the rejection of the old agreements and entering into the new agreements is to eliminate the need for the Debtors to cure the outstanding amounts due under the Management Agreements as of the Effective Date.

## B.    Events Leading to Chapter 11 Case.

As a result of the downturn in the commercial and residential construction and property improvement sectors leading up to and following the collapse of the credit markets in fall 2008, coupled with an increased cost of fuel, raw materials, and other items essential to the Debtors' business, the Company experienced liquidity issues in respect of its cash-flow, which in turn compromised their ability to meet certain payment and borrowing base obligations under the National City Loan and under certain of its Equipment Loans.

On June 19, 2009, National City initiated a foreclosure action against the Property owned by the Company in Palm Beach County Circuit Court.  During the pendency of the foreclosure proceedings, the Company engaged in good faith settlement negotiations with National City, but National City did not accept any of the Debtors' settlement offers.

As a result, and despite the Debtors' diligent efforts to consensually restructure their credit obligations outside the protections of the Bankruptcy Code, the Debtors each filed their petitions for relief under Chapter 11 of the Bankruptcy Code on November 2, 2009.  The purpose of these bankruptcy filings is to ensure the continued survival of the Debtors' business and operations pending a restructuring of their secured debt.

## C.    The Chapter 11 Case.

### 1.    Commencement of the Chapter 11 Case.

On November 2, 2009 (the "Petition Date"), the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since that time, the Debtors operated as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  This Chapter 11 Case is pending before the Honorable Erik P. Kimball,

Judge for the United States Bankruptcy Court for the Southern District of Florida, located in West Palm Beach, Florida.

### 2. First Day Orders.

On November 2, 2009, in connection with its voluntary petition, the Debtors filed 8 first day motions seeking approval of so-called "first day orders" from the Bankruptcy Court. The first day orders were sought in order to facilitate the transition between the Debtors' pre-petition and post petition business operations by authorizing the Debtors to continue certain regular business practices that may not be specifically authorized under the Bankruptcy Code, or for which the Bankruptcy Code requires prior court approval. Each of the first day motions was supported by an Affidavit of Janet Tomlinson, the President of Amerigrow Corp., the general partner of Amerigrow LP, holder of 37.5% of the partnership interests in Amerigrow LP and holder of 50% of the equity interests in Amerigrow Corp. Among the first day motions, the Debtors filed applications to retain their bankruptcy counsel, Genovese, Joblove & Battista, P.A. ("GJB"). The Debtors subsequently sought to retain: (i) the accounting firm of Lexow, Johnson, Koffler & Adorno, LLC ("Lexow") as Accountants and Financial Advisors to the Debtors; (ii) Blaxberg, Grayson & Kukoff, P.A. ("Blaxberg") as Special Corporate Counsel to the Debtors; and (iii) Perry & Taylor, P.A. ("Perry") as Special Governmental Affairs Counsel. The Bankruptcy Court entered Final Orders approving the retention of GJB, Lexow, Blaxberg and Perry on December 17, 2009, November 24, 2009, December 17, 2009 and December 7, 2009, respectively.

As one of its first day motions, as more particularly described below, the Debtors filed its emergency motion for (A) the entry and approval of a certain Interim Order Concerning Use of Cash Collateral and Adequate, pursuant to Sections 105 and 363 of the Bankruptcy Code and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure, (1) authorizing the Debtors' use of cash collateral on an interim basis, (2) setting a final hearing on the use of cash collateral and (3) providing adequate protection in connection therewith (the "Cash Collateral Motion"). The Bankruptcy Court entered the following Final Orders regarding the Cash Collateral Motion: Interim Order (1) Authorizing The Debtors To Use Cash Collateral, (2) Granting Adequate Protection, (3) Setting Further Hearing dated November 5, 2009 [D.E. #37]; the Agreed Interim Order (1) Authorizing The Debtors To Use Cash Collateral, (2) Granting Adequate Protection, (3) Setting Further Hearing dated December 7, 2009 [D.E. #76], the Agreed Interim Order (1) Authorizing The Debtors To Use Cash Collateral, (2) Granting Adequate Protection, (3) Setting Further Hearing dated January 15, 2010 [D.E. #115], and the Final Order (1) Authorizing The Debtors To Use Cash Collateral, (2) Granting Adequate Protection, (3) Setting Further Hearing dated February 12, 2010 [D.E. #130] (collectively, the "Cash Collateral Orders").

The Debtors also filed, and the Bankruptcy Court approved, the following additional first day motions: (i) motion to pay the Debtors' pre-petition payroll and authorizing the maintenance of employee benefit programs, (ii) motion to prohibit utilities from discontinuing services post-petition; (iii) motion to continue cash management system and permit use of pre-petition bank accounts (iv) motion for extension of time to file schedules and statement of financial affairs; and (v) motion for joint administration. Each of the first day motions were granted by the Bankruptcy Court.

3.    **Appointment of Official Committee of Unsecured Creditors.**

On December 2, 2009, the Office of the United States Trustee appointed an official committee of unsecured creditors in this Chapter 11 case (the "Committee"), which Committee is comprised of Amerimulch Dispersions, LLC, Land and Sea Petroleum Holdings and LaMousse Acadienne. The Debtors have cooperated and worked with the Committee since its formation concerning all material aspects of this Chapter 11 Case. The Debtors have kept the Committee informed about their operations and have sought the concurrence of the Committee for, among other things, actions and transactions taken outside of the ordinary course of the Debtors' business.

The Committee the law firm of Shapiro, Blasi, Wasserman & Gora, P.A. as its counsel in this Chapter 11 Case. On January 13, 2010, the Bankruptcy Court entered an order approving the employment of Shapiro, Blasi, Wasserman & Gora, P.A.

3.    **Payment of Critical Vendor.**

On November 11, 2009, the Debtors filed an Emergency Motion for Payment of Pre-Petition Claim of Manuel Cordero Truck Corp. ("Cordero") as Critical Vendor. As of the Petition Date, Cordero had a claim in the amount of $46,535. Cordero provides shipping services and wood products to the Debtors to use in the ordinary course of their business. Cordero refused to continue to provide goods and services to the Debtors unless arrangements were immediately made to pay the balance due to Cordero. An interruption in the supply of goods and services to the Debtors from Cordero would have been detrimental to the Debtors' Estates, as the Debtors would have been prevented from obtaining wood supply at a cost that would make selling its mulch profitably. The Bankruptcy Court held a hearing on the Critical Vendor Motion on November 17, 2009. On November 20, 2009, the Bankruptcy Court granted the Motion and approved the arrangement reached between the Debtors and Cordero to pay Cordero 12 equal monthly payments in the amount of $3,877.92 each [D.E. #56] (the "Critical Vendor Order"). The Debtors have made payments to Cordero throughout the pendency of the Chapter 11 case and will continue to pay such monthly installments per the terms of the Order until the amount is paid to Cordero in full. The estimated amount remaining to pay to Cordero as of the Effective Date is $23,268 as reflected in the Projections attached hereto.

4.    **Reclamation Demand of Amerimulch.**

Pursuant to 11 U.S.C. § 546(c)(1), valid reclamation claims may be afforded administrative priority as set forth in Section 503(b) of the Bankruptcy Code. On November 20, 2009, Amerimulch Dispersions, LLC ("Amerimulch") made a timely request for a reclamation claim relating to certain goods shipped to the Debtors within the forty five (45) days preceding the Petition Date. Amerimulch has not yet filed a Motion for Administrative Expense to allow its reclamation claim, but expect that Amerimulch will file one prior to the Administrative Claims Bar Date. The Debtors propose to resolve such Administrative Claim as more specifically set forth below.

5.    **Sale of Scrap Equipment.**

On January 8, 2010, the Debtors filed 2 Motions seeking to sell various pieces of scrap equipment subject to a lien of Fifth Third Bank. Specifically, the Debtors sought to sell: (i) a 1992

Peterbuilt Truck, 1987 Michigan L90 Loader and 1991 Volvo L120 Loader to Ramon Rodriguez for $6,000 [D.E. #105]; and (ii) a 1995 John Deere 892 E-HL excavator to Venecar Import and Export, Inc. for $10,000 [D.E. #106]. On February 8, 2010, the Bankruptcy Court approved such sales of scrap equipment. Pursuant to the Committee's request, the proceeds of such sales are being held in escrow until the Committee completes its analysis of Fifth Third Bank's liens pursuant to the Cash Collateral Orders.

6.      **Motions for Relief from Stay.**

The following Motions for Relief from Stay have been filed in this Chapter 11 Case by various equipment lenders: (i) Motion for Relief from Stay Filed by Creditor Wells Fargo Equipment Finance, Inc. ("Wells Fargo") dated December 21, 2009 [D.E. #97]; (ii) Motion for Relief from Stay Filed by Creditor Alter Moneta Corporation ("Alter Moneta") dated December 29, 2009 [D.E. #101]; (iii) Motion for Relief from Stay Filed by Colonial Pacific Leasing Corporation ("Colonial Pacific"), or in the Alternative, for Adequate Protection dated January 26, 2010 [D.E. #119]; (iv) Motion for Relief from Stay filed by Creditor General Electric Capital Corporation ("GECC") dated February 9, 2010 [D.E. #129] (collectively, the "Stay Relief Motions").

The Debtors believe they have resolved the Stay Relief Motions filed by Alter Moneta, GECC and Colonial Pacific. There is currently an evidentiary hearing on the Stay Relief Motion filed by Wells Fargo scheduled for April 12, 2010. The Debtors hope to resolve Wells Fargo's Stay Relief Motion well in advance of the scheduled evidentiary hearing. The Debtors propose to restructure each of the Secured Claims of Wells Fargo, Alter Moneta, Colonial Pacific and GECC as set forth in Classes LP-4, LP-5, LP-6 and LP-7, as more specifically set forth below.

7.      **Ongoing Litigation**.

The Debtors have certain Litigation Claims against Palm Beach County related to their efforts to expose competitors engaged in illegal "tipping" operations, which negatively impact the Debtors' operations to the extent of approximately $3,500 per day. Perry, the Debtors' court-approved governmental affairs counsel, currently assists the Debtors to effectively and efficiently deal with their local regulatory issues and preserve the maximum viability of their operations. The Debtors intend to continue challenge their competitors' illegal activities after the Effective Date.

The Debtors also have pending collection litigation against WG Mills, Inc. South for an unpaid account in the approximately amount of $35,000. The Debtors intend to continue such litigation after the Effective Date.

IV.      **VOTING PROCEDURES AND REQUIREMENTS OF CONFIRMATION.**

A.      **Creditors and Interest Holders Entitled to Vote**.

Except as provided below, any holder of a Claim whose Claim is impaired under the Plan is entitled to vote if either (i) its Claim has been scheduled by the Debtors and such Claim is not scheduled as disputed, contingent or unliquidated, or (ii) such holder of a Claim has filed a proof of claim or interest on or before the Bar Date. A holder of a disputed, unliquidated or contingent Claim, or the holder of a Claim that has been objected to, is not entitled to vote on the Plan unless

such Claim has been allowed prior to the balloting deadline by the Bankruptcy Court after notice and a hearing, or the Bankruptcy Court estimates such Claim for voting purposes prior to the balloting deadline.  In addition, a vote may be disregarded if the Bankruptcy Court determines that the acceptance or rejection of the Plan by a creditor was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.  The holders of Claims in Classes LP-1, LP-12 and Corp-1 are unimpaired and therefore deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

**B.    <u>Definition of Impairment</u>.**

Under Section 1124 of the Bankruptcy Code, a class of Claims or Interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan:

(1)    leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or

(2)    notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default:

(A)    cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code or of a kind that Section 365(b)(2) expressly does not require to be cured;

(B)    reinstates the maturity of such claim or interest as such maturity existed before such default;

(C)    compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law;

(D)    if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and

(E)    does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

11

C.    <u>**Votes Required for Class Acceptance**</u>.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan of reorganization or liquidation by a class of claims as the acceptance by holders of at least two-thirds in amount and more than one-half in number of the allowed claims of the class actually voting to accept or reject the proposed plan. Section 1126(d) of the Bankruptcy Code defines acceptance of a plan of reorganization or liquidation by a class of interest holders as the acceptance by holders of at least two-thirds in amount of the allowed interests of the class actually voting to accept or reject the proposed plan.

D.    <u>**Information on Voting Ballots**</u>.

Ballots are being forwarded to the holders of Claims in all Classes under this Plan with the exception of Classes LP-1, LP-12, LP-14, Corp-1 and Corp-5. Classes LP-1, LP-12 and Corp-1 are unimpaired and therefore are deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Classes LP-14 and Corp-5 are impaired under the Plan, but since the holders Interests in such Class are not expected to retain or receive any property in connection therewith, Classes LP-14 and Corp-5 are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

## V.  CONFIRMATION OF THE PLAN

The Bankruptcy Code establishes certain procedural and substantive requirements for confirmation of a plan of reorganization or liquidation. In addition, the Bankruptcy Code provides a mechanism which enables the proponents of a plan of reorganization or liquidation to confirm such a plan, notwithstanding rejection thereof by a class of creditors or interest holders.

A.    <u>**Confirmation Hearing**</u>.

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan, which hearing may be adjourned by order of the Bankruptcy Court (the "Confirmation Hearing"). The Bankruptcy Court has set the Confirmation Hearing for _____. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan. Any objection to confirmation must be made in writing and filed with the Bankruptcy Court with proof of service and served upon the following persons on or before _____:

> Heather L. Harmon, Esq.
> Genovese Joblove & Battista, P.A.
> Bank of America Tower
> 100 S.E. 2nd Street, 44th Floor
> Miami, Florida 33131
> hharmon@gjb-law.com
>
> Heidi A. Feinman, Esq.
> Office of the U.S. Trustee
> U.S. Trustee's Office

12

51 S.W. First Avenue, Suite 1204
Miami, FL  33130
Heidi.A.Feinman@usdoj.gov

Unless an objection to confirmation is timely filed and served, it may not be considered by the Bankruptcy Court.

**B.     Requirements for Confirmation of the Plan**.

Section 1129 of the Bankruptcy Code sets forth the substantive requirements for confirmation of a plan of reorganization.  At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129 have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.  The relevant requirements of Section 1129 of the Bankruptcy Code include:

(1)     The plan complies with the applicable provisions of the Bankruptcy Code.

(2)     The proponent of the plan has complied with the applicable provisions of the Bankruptcy Code.

(3)     The plan has been proposed in good faith and not by any means forbidden by law.

(4)     Any payment made or promised by a debtor or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with the case, or in connection with the plan and incident to the case, has been disclosed to the court, and any such payment made before the confirmation of the plan is reasonable, or if such payment is to be fixed after confirmation of the plan, such payment is subject to the approval of the court as reasonable.

(5)     The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of a debtor, an affiliate of a debtor participating in a joint plan with a debtor, or a successor to the debtor under the plan, and the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity security holders and with public policy, and the proponent of the plan has disclosed the identity of any insider that will be employed or retained by a reorganized debtor and has disclosed the nature of any compensation for such insider.

(6)     With respect to each class of impaired claims or interests --

(A)     either each holder of a claim or interest of such class has accepted the plan or will receive or retain under the plan on account of such claim or interest, property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor was liquidated on such date under chapter 7 of the Bankruptcy Code; or

13

(B)    if Section 1111(b)(2) of the Bankruptcy Code applies to the claim of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claim.

(7)    Each class of claims or interests has either accepted the plan or is not impaired under the plan, or the requirements of Section 1129(b) are satisfied.

(8)    Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim:

(A)    The plan provides that administration expenses and gap period claims will be paid in full on the effective date;

(B)    Priority claims (other than gap period claims and tax claims) will receive, if such class has accepted the plan, deferred cash payments of a value equal to the allowed amount of such claim or, if such class has rejected the plan, payment in full on the effective date of the plan;

(C)    The plan provides that allowed unsecured claims of governmental units for certain kinds of taxes will receive on account of such claim regular installment payments in cash:

(i)    of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

(ii)    over a period ending not later than 5 years after the date of the order for relief under section 301, 302 or 303 of the Bankruptcy Code; and

(iii)    in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b); and

(D)    The plan provides that holders of secured claims which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured statue of that claim, will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in 11 U.S.C. § 1129(a)(9)(C).

(9)    If a class of claims is impaired under the plan, at least one class of impaired claims has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.

(10)    Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

14

(11)     All fees payable under Section 1930 of title 28, United States Code, as determined by the Bankruptcy Court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan.

(12)     All transfers of property of a plan shall be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

The Debtors believe that the Plan satisfies all the statutory requirements of chapter 11 of the Bankruptcy Code, and that the Debtors have complied, or will have complied, with all of the requirements of chapter 11, including Section 1129.

## C.     **Cramdown**.

The Bankruptcy Code provides for confirmation of a plan even if it is not accepted by all impaired classes of claims if at least one impaired class has voted to accept the plan and certain other conditions are satisfied. These so-called "cramdown" provisions for confirmation are set forth in Section 1129(b) of the Bankruptcy Code. If any impaired class of claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtors if, as to each impaired class which has not accepted the Plan, the Plan does not "discriminate unfairly" and is "fair and equitable." The phrase "fair and equitable" has different meanings for secured and unsecured claims and classes of interests. Because one or more Classes of Impaired Claims under the Plan will be deemed to have rejected the Plan, the Debtors reserve the right to request the Bankruptcy Court to determine at Confirmation whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting Impaired Class of Claims or Interests so as to allow Confirmation despite the vote to reject the Plan. The Debtors also reserve the right to amend the Plan at that time and in such a manner as to permit Confirmation over the vote of the rejecting Impaired Class.

## VII.  SUMMARY OF THE PLAN

## A.     **Introduction.**

Set forth below is a summary of the Plan, which is qualified in its entirety by reference to the complete text of the Plan. ALL CREDITORS AND OTHER PARTIES IN INTEREST ARE URGED TO READ AND REVIEW THE TEXT OF THE PLAN ITSELF PRIOR TO VOTING ON WHETHER TO ACCEPT OR REJECT THE PLAN.

This summary is intended merely to provide a perspective on the means for execution and implementation of the Plan and the treatment provided to the various Classes of Claims and Interests.

## B.     **Classifications of Claims and Interests.**

For purposes of this Plan, the Classes of Claims and Interests for Amerigrow LP shall be classified as follows:

a.     <u>Class LP-1</u>:   Allowed Priority Claims.

15

  b.  <u>Class LP-2</u>: Allowed Secured Claim of PNC.

  c.  <u>Class LP-3</u>: Allowed Secured Claim of Fifth Third Bank.

  d.  <u>Class LP-4</u>: Allowed Secured Claims of Wells Fargo.

  e.  <u>Class LP-5</u>: Allowed Secured Claims of Alter Moneta.

  f.  <u>Class LP-6</u>: Allowed Secured Claims of Colonial Pacific.

  g.  <u>Class LP-7</u>: Allowed Secured Claims of GECC.

  h.  <u>Class LP-8</u>: Allowed Secured Claims of Turner.

  i.  <u>Class LP-9</u>: Allowed Secured Claims of Ford Motor Credit.

  j.  <u>Class LP-10</u>: Allowed Secured Claims of Kubota.

  k.  <u>Class LP-11</u>: Allowed Other Secured Claims.

  l.  <u>Class LP-12</u>: Allowed Convenience Claims.

  m.  <u>Class LP-13</u>: Allowed Unsecured Claims.

  n.  <u>Class LP-14</u>: Allowed Interests.

Classes LP-2, LP-3, LP-4, LP-5, LP-6, LP-7, LP-8, LP-9, LP-10, LP-11, LP-13 and LP-14 are Impaired under the Plan. Classes LP-1 and LP-12 are not Impaired under the Plan. As such, Classes LP-1 and LP-12 are deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Class LP-14 is not expected to receive or retain any property under the Plan and therefore is deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

For purposes of this Plan, the Classes of Claims and Interests of Amerigrow Corp. shall be classified as follows:

  a.  <u>Class Corp-1</u>: Allowed Priority Claims.

  b.  <u>Class Corp-2</u>: Allowed Secured Claim of Komatsu.

  c.  <u>Class Corp-3</u>: Allowed Unsecured Claims.

  d.  <u>Class Corp-4</u>: Allowed Other Secured Claims

  e.  <u>Class Corp-5</u>: Allowed Interests.

Classes Corp-2, Corp-3, Corp-4 and Corp-5 are Impaired under the Plan. Class Corp-1 is not Impaired under the Plan. As such, Class Corp-1 is deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Class Corp-5 is not expected to receive or retain any

property under the Plan and therefore is deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

## C.     Treatment of Unclassified Claims.

In addition, the Plan provides for the treatment of unclassified Claims for Allowed Administrative Claims, Allowed Priority Tax Claims and fees due the Office of the United States Trustee.  Specifically, the Plan provides that the unclassified Claims shall be treated as follows:

**Administrative Claims**.  The holders of Allowed Administrative Claims against the Estates (with the exception of the Professionals employed pursuant to Sections 327, 503(b)(3) and (4) and 1102 of the Code, who will be paid 100% of the amount allowed of such Administrative Claims by the Bankruptcy Court upon application to the Bankruptcy Court prior to the bar date for filing such applications and entry of an order(s) thereon) shall be paid 100% of their Allowed Administrative Claims in Cash, unless otherwise ordered by the Bankruptcy Court, upon the earlier to occur of:  (i) the later of the Effective Date or the date of a Final Order allowing such Administrative Claim; (ii) for Allowed Administrative Claims that represent liabilities incurred by the Debtors in the ordinary course of business during this Chapter 11 Case, the date on which each such Claim becomes due in the ordinary course of the Debtors' business and in accordance with the terms and conditions of any agreement relating thereto; or (iii) upon such other dates and terms as may be agreed upon by the holder of any such Allowed Administrative Claim and the Debtors or the Reorganized Debtors.

Pursuant to the Cash Collateral Order, all non-professional Administrative Claims set forth in the Budget attached to the Cash Collateral Order will be paid in the ordinary course of business from Fifth Third's Cash Collateral, as defined in the Cash Collateral Motion.  To the best of the Debtors' knowledge, all non-professional Administrative Claims, to the extent incurred, have been paid in a timely manner and shall continue to be paid from Cash in the Estates.

With respect to Administrative Claims for professional fees and expenses, there are presently five (5) professionals involved in this case who are seeking approval by the Bankruptcy Court, namely; (i) Genovese Joblove & Battista, P.A., general bankruptcy counsel to the Debtors; (ii) the accounting firm of Lexow, Johnson, Koffler & Adorno, LLC ("Lexow") as Accountants and Financial Advisors to the Debtors; (iii) Blaxberg, Grayson & Kukoff, P.A. ("Blaxberg") as Special Corporate Counsel to the Debtors; (iv) Perry & Taylor, P.A. ("Perry") as Special Governmental Affairs Counsel to the Debtors; and (v) Shapiro, Blasi, Wasserman & Gora, P.A., counsel to the Committee.

On October 15, 2009, GJB received an amount equal to $50,000 from the Debtors, which was deposited into the trust account of GJB (the "Retainer").  As of the Petition Date, GJB had applied the Retainer to the payment of total fees through the Petition Date in the amount of $39,812.50 and expenses in the amount of $343.95 plus the filing fees of $2,078.00.  Such fees and expenses were incurred (i) in contemplation of the filing of these chapter 11 cases, and (iii) in respect of the preparation of these chapter 11 cases.  As a result, as of the Petition Date, GJB had an amount equal to $7,765.55 remaining as a Retainer to be used in connection with the prosecution of these chapter 11 cases.  GJB has applied the Retainer to monthly invoices pursuant to the Interim Fee Order.

17

Lexow, Blaxberg and Perry did not have retainers as of the Petition Date.

Pursuant to the Bankruptcy Court's December 17, 2009 Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [D.E. #95] (the "Interim Fee Order"), each of the Debtors' Professionals, the Committee's Professionals and Fifth Third Bank's Professionals have been paid on an interim basis pursuant to the Interim Fee Order. On the Effective Date, the Debtors will be required to pay holdbacks of the various Professionals plus any accrued fees and expenses pending as of the Effective Date not yet paid under the Interim Fee Order. The Debtors estimate that the total Administrative Expenses payable as of the Effective Date may be $100,000 for all Professionals. There will be sufficient Available Cash on the Effective Date to pay these Administrative Claims in full. In the event of a contested confirmation, the Debtors estimate that this amount may higher depending on the circumstances.

As described in more detail above, the Debtors have reached an agreement for the repayment of the Administrative Claim of Cordero. The balance of Cordero's Administrative Claim will be approximately $23,268.00 as of the Petition Date. The Debtors propose for the Reorganized Debtors to continue to pay until their obligations under the Critical Vendor Order are satisfied in full.

Pursuant to 11 U.S.C. § 546(c)(1), valid reclamation claims may be afforded administrative priority as set forth in Section 503(b) of the Bankruptcy Code. On November 20, 2009, Amerimulch Dispersions, LLC ("Amerimulch") made a timely request for a reclamation claim relating to certain goods shipped to the Debtors within the forty five (45) days preceding the Petition Date. Amerimulch has not yet filed a Motion for Administrative Expense to allow its reclamation claim, but expect that Amerimulch will file one prior to the Administrative Claims Bar Date. The Debtors propose to resolve such Administrative Claim as follows: Amerimulch shall receive 36 monthly payments equal to $2,375 (principal amount of $63,895, plus interest of 4%) in full satisfaction of its Allowed Administrative Claim.

**Priority Tax Claims**. Each holder of an Allowed Priority Tax Claim under Section 507(a)(8) of the Code shall be paid 100% of such Allowed Priority Tax Claim in Cash on the later to occur of: (i) the Effective Date; (ii) the date such Allowed Priority Tax Claim is allowed by a Final Order of the Bankruptcy Court, or (iii) such other dates and upon such other terms as determined by the Bankruptcy Court or agreed to by the Debtors or the Reorganized Debtors (as the case may be) and the holder of such Allowed Priority Tax Claim.

Based upon the Schedules and the proofs of claims filed to date in this Chapter 11 Case, the Debtors estimate that there are de minimis Priority Tax Claims against the Estates. The Debtors are current on their property tax obligations with the Palm Beach County Tax Collector and Plan to make any required payments for 2009 tax obligations in ordinary course of business prior to the Effective Date. More specifically, the Debtors submit that Proof of Claim Numbers 24, 25, 27 and 28 filed by the Palm Beach County Tax Collector will have been satisfied in the ordinary course of business prior to the Effective Date.

**United States Trustee's Fee**. The Debtors shall pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) on the Effective Date, and simultaneously provide to the U.S. Trustee an appropriate affidavit indicating Cash disbursements for all relevant periods; notwithstanding anything contained in the Plan to the contrary, the Reorganized Debtors shall

18

further pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6) until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon entry of an order of this Bankruptcy Court dismissing the case, or converting this case to another chapter under the United States Bankruptcy Code, and the Reorganized Debtors shall provide to the U.S. Trustee, upon the payment of each post-confirmation payment, a quarterly report and appropriate affidavit indicating income and disbursements for the relevant periods.  To date, the Debtors has paid all fees due and owing to the Office of the United States Trustee, and the Debtors or Reorganized Debtors, as applicable, anticipates paying all such fees through confirmation of the Plan and thereafter as provided herein.

> **D.** **Treatment of Classified Claims.**

The Classes of Claims and Interests under the Plan shall be classified as follows:

Class LP-1.  Allowed Priority Claims.  Each Allowed Priority Claim shall be paid in full on the later of: (i) the Effective Date; or (ii) the date of a Final Order allowing such Priority Claim.

The Debtors are not currently aware of any class LP-1 Allowed Priority Claims.

Class LP-1 is Unimpaired.

Class LP-2.  Allowed Secured Claim of PNC.   The Allowed Class LP-2 Secured Claim of PNC shall be satisfied in full by Amerigrow LP's delivery, on the Effective Date, of a Restructured Loan Instrument. For purposes of illustration of PNC's Restructured Loan Instrument under this Plan, Amerigrow LP assumes an Allowed Class 2 Secured Claim in the amount of $6,880,957.85. The Restructured Loan Instrument shall provide to PNC: (i) a payment of Cash in the amount of $ 18,635.93 per month for 36 months (interest only with an interest rate at the current prime rate at 3.25%); (ii) payment of Cash in the amount of $41,697.25 per month for the following period of 36 months (principal and interest with 20 year amortization and an interest rate of 4%); (iii) a monthly payment of Cash for the following period of 36 months of principal and interest with 7 year amortization and an interest rate of 7%; (iv) a monthly payment of Cash for the following period of 36 months of principal and interest with 4 year amortization and an interest rate of 8%; (v) a balloon payment at the end of year 12 in the approximate amount of $1,090,424; and (vi) a security interest in its Collateral in the same priority as PNC held against its Collateral as of the Petition Date.  Under the Restructured Loan Instrument, Amerigrow LP proposes to make such payments to PNC until the Allowed Class 2 Claim is paid in full, but not to exceed 12 years, at the various amortization and interest rates specified in the Restructured Debt Instrument.  Based on the 144 monthly payments and a balloon payment at the end of Year 12, PNC's Restructured Loan Instrument will fully amortize over the loan period of 12 years.

The Debtors believe that treatment of the Allowed Class LP-2 Secured Claim of PNC as provided herein shall constitute a full satisfaction of PNC's Allowed Claim and no portion of PNC's Allowed Claim shall be treated as a Class LP-13 or Corp-4 Allowed Unsecured Claim pursuant to the term of this Plan.

Class LP-2 is Impaired.

Class LP-3.  Allowed Secured Claim of Fifth Third Bank.  The Allowed Class LP-3 Secured Claim of Fifth Third Bank shall be satisfied in full by Amerigrow LP's delivery, on the Effective Date, of a Restructured Loan Instrument. For purposes of illustration of Fifth Third Bank's Restructured Loan Instrument under this Plan, Amerigrow LP assumes an Allowed Class 3 Secured Claim in the amount of $1,000,000.  The Restructured Loan Instrument shall provide to Fifth Third Bank: (i) a payment of Cash in the amount of $5,167.00 per month for 12 months; (ii) a payment of Cash in the amount of $10,167 per month for the following period of 12 months; (iii) a payment of Cash in the amount of $12,417 per month for the following period of 12 months; (iv) a payment of Cash in the amount of $10,167 per month for the following period of 36 months; and (v) a balloon payment at the end of year 6 in the approximate amount of $400,000; and (vi) a security interest in its Collateral in the same priority as Fifth Third held against its Collateral as of the Petition Date. Under the Restructured Loan Instrument, Amerigrow LP proposes to make such payments to Fifth Third until the Allowed Class LP-3 Claim is paid in full, but not to exceed 6 years, at the various amortization and interest rates specified in the Restructured Debt Instrument.  Based on the 72 monthly payments and a balloon payment at the end of Year 6, Fifth Third Bank's Restructured Loan Instrument will fully amortize over the loan period of 6 years.

The Debtors believe that treatment of the Allowed Class LP-3 Secured Claim of Fifth Third Bank as provided herein shall constitute a full satisfaction of Fifth Third Bank's Allowed Claim and no portion of Fifth Third Bank's Allowed Claim shall be treated as a Class LP-13 or Corp-4 Allowed Unsecured Claim pursuant to the term of this Plan.

Class LP-3 is Impaired.

Class LP-4.  Allowed Secured Claim of Wells Fargo.  The Allowed Class LP-4 Secured Claim of Wells Fargo shall be satisfied in full by Amerigrow LP's delivery, on the Effective Date, of a Restructured Loan Instrument. For purposes of illustration of Wells Fargo's Restructured Loan Instrument under this Plan, Amerigrow LP assumes an Allowed Class LP-4 Secured Claim in the amount of $2,160,782.73.  The Restructured Loan Instrument shall provide to Wells Fargo: (i) a payment of Cash in the amount of $24,442 per month for 36 months; (ii) a payment of Cash in the amount of $33,333 per month for the following period of 24 months; (iii) a payment of Cash in the amount of $60,000 per month for the following period of 12 months; and (iv) a security interest in its Collateral in the same priority as Wells Fargo held against its Collateral as of the Petition Date. Under the Restructured Loan Instrument, Amerigrow LP proposes to make such payments to Wells Fargo until the Allowed Class LP-4 Claim is paid in full, but not to exceed 6 years, at the various amortization and interest rates specified in the Restructured Debt Instrument.  Based on the 72 monthly payments, Wells Fargo's Restructured Loan Instrument will fully amortize over the loan period of 6 years.

The Debtors believe that treatment of the Allowed Class LP-4 Secured Claim of Wells Fargo as provided herein shall constitute a full satisfaction of Well Fargo's Allowed Claim and no portion of Wells Fargo's Allowed Claim shall be treated as a Class LP-13 or Corp-4 Allowed Unsecured Claim pursuant to the term of this Plan.

Class LP-4 is Impaired.

Class LP-5.  Allowed Secured Claim of Alter Moneta.   The Allowed Class LP-5 Secured Claim of Alter Moneta shall be satisfied in full by Amerigrow LP's delivery, on the Effective Date, of three (3) Restructured Loan Instruments, as follows.

For purposes of illustration of Alter Moneta's Restructured Loan Instrument No. 1 under this Plan, Amerigrow LP assumes an Allowed Class LP-5 Secured Claim in the amount of $734,689.71.  The Restructured Loan Instrument No. 1 shall provide to Alter Moneta: (i) a payment of Cash in the amount of $22,605 per month for 36 months; and (ii) a security interest in its Collateral in the same priority as Alter Moneta held against its Collateral as of the Petition Date.   Under the Restructured Loan Instrument No. 1, Amerigrow LP proposes to make such payments to Alter Moneta until such portion of the Allowed Class LP-5 Claim is paid in full, but not to exceed 3 years, at the various amortization and interest rates specified in the Restructured Debt Instrument.  Based on the 36 monthly payments, Wells Fargo's Restructured Loan Instrument No. 1 will fully amortize over the loan period of 3 years.

For purposes of illustration of Alter Moneta's Restructured Loan Instrument No. 2 under this Plan, Amerigrow LP assumes an Allowed Class LP-5 Secured Claim in the amount of $309,420.61.  The Restructured Loan Instrument No. 2 shall provide to Alter Moneta: (i) a payment of Cash in the amount of $6,062 per month for 60 months; and (ii) a security interest in its Collateral in the same priority as Alter Moneta held against its Collateral as of the Petition Date.   Under the Restructured Loan Instrument No. 2, Amerigrow LP proposes to make such payments to Alter Moneta until such portion of the Allowed Class LP-5 Claim is paid in full, but not to exceed 5 years, at the various amortization and interest rates specified in the Restructured Debt Instrument.  Based on the 60 monthly payments, Wells Fargo's Restructured Loan Instrument No. 2 will fully amortize over the loan period of 5 years.

For purposes of illustration of Alter Moneta's Restructured Loan Instrument No. 3 under this Plan, Amerigrow LP assumes an Allowed Class LP-5 Secured Claim in the amount of $181,164.  The Restructured Loan Instrument No. 3 shall provide to Alter Moneta: (i) a payment of Cash in the amount of $3,057.00 per month for 72 months; and (ii) a security interest in the Property of the Reorganized Debtors in the same priority as Alter Moneta held against its Collateral as of the Petition Date.  Under the Restructured Loan Instrument No. 3, Amerigrow LP proposes to make such payments to Alter Moneta until such portion of the Allowed Class LP-5 Claim is paid in full, but not to exceed 6 years, at the various amortization and interest rates specified in the Restructured Debt Instrument.  Based on the 72 monthly payments, Wells Fargo's Restructured Loan Instrument No. 3 will fully amortize over the loan period of 6 years.

The Debtors believe that treatment of the Allowed Class LP-5 Secured Claim of Alter Moneta as provided herein shall constitute a full satisfaction of Alter Moneta's Allowed Claim and no portion of Alter Moneta's Allowed Claim shall be treated as a Class LP-13 or Corp-4 Allowed Unsecured Claim pursuant to the term of this Plan.

Class LP-6 is Impaired.

21

Class LP-6.  Allowed Secured Claim of Colonial Pacific.  The Allowed Class LP-6 Secured Claim of Colonial Pacific shall be satisfied in full by Amerigrow LP's delivery, on the Effective Date, of a Restructured Loan Instrument.  For purposes of illustration of Colonial Pacific's Restructured Loan Instrument under this Plan, Amerigrow LP assumes an Allowed Class LP-6 Secured Claim in the amount of $193,905.70.  The Restructured Loan Instrument shall provide to Colonial Pacific: (i) a payment of Cash in the amount of $6,062 per month for 36 months; and (ii) a security interest in its Collateral in the same priority as Colonial Pacific held against its Collateral as of the Petition Date.  Under the Restructured Loan Instrument, Amerigrow LP proposes to make such payments to Colonial Pacific until the Allowed Class LP-6 Claim is paid in full, but not to exceed 3 years, at the various amortization and interest rates specified in the Restructured Debt Instrument.  Based on the 36 monthly payments, Colonial Pacific's Restructured Loan Instrument will fully amortize over the loan period of 3 years.

The Debtors believe that treatment of the Allowed Class LP-6 Secured Claim of Colonial Pacific as provided herein shall constitute a full satisfaction of Colonial Pacific's Allowed Claim and no portion of Colonial Pacific's Allowed Claim shall be treated as a Class LP-13 or Corp-4 Allowed Unsecured Claim pursuant to the term of this Plan.

Class LP-6 is Impaired.

Class LP-7.  Allowed Secured Claim of GECC.  The Allowed Class LP-7 Secured Claim of GECC shall be satisfied in full by Amerigrow LP's delivery, on the Effective Date, of a Restructured Loan Instrument.  For purposes of illustration of GECC's Restructured Loan Instrument under this Plan, Amerigrow LP assumes an Allowed Class LP-7 Secured Claim in the amount of $15,612.48. The Restructured Loan Instrument shall provide to GECC: (i) a payment of Cash in the amount of $1,952.00 per month for 8 months; and (ii) a security interest in its Collateral in the same priority as GECC held against its Collateral as of the Petition Date.  Under the Restructured Loan Instrument, Amerigrow LP proposes to make such payments to GECC until the Allowed Class LP-7 Claim is paid in full, but not to exceed 9 months, at the various amortization and interest rates specified in the Restructured Debt Instrument.  Based on the 8 monthly payments, GECC's Restructured Loan Instrument will fully amortize over the loan period of 8 months.

The Debtors believe that treatment of the Allowed Class LP-7 Secured Claim of GECC as provided herein shall constitute a full satisfaction of GECC's Allowed Claim and no portion of GECC's Allowed Claim shall be treated as a Class LP-13 or Corp-4 Allowed Unsecured Claim pursuant to the term of this Plan.

Class LP-7 is Impaired.

Class LP-8.  Allowed Secured Claim of Turner.  The Allowed Class LP-8 Secured Claim of Turner shall be satisfied in full by Amerigrow LP's delivery, on the Effective Date, of a Restructured Loan Instrument.  The Restructured Loan Instrument shall provide to Turner: (i) a payment of Cash in the amount of $2,344.00 per month for 48 months; and (ii) a security interest in its Collateral in the same priority as Turner held against its Collateral as of the Petition Date.  Under the Restructured Loan Instrument, Amerigrow LP proposes to make such payments to Turner until the Allowed Class LP-8 Claim is paid in full, but not to exceed 4 years, at the various amortization

22

and interest rates specified in the Restructured Debt Instrument. Based on the 48 monthly payments, GECC's Restructured Loan Instrument will fully amortize over the loan period of 4 years.

The Debtors believe that treatment of the Allowed Class LP-8 Secured Claim of Turner as provided herein shall constitute a full satisfaction of Turner's Allowed Claim and no portion of Turner's Allowed Claim shall be treated as a Class LP-13 or Corp-4 Allowed Unsecured Claim pursuant to the term of this Plan.

Class LP-8 is Impaired.

Class LP-9.  Allowed Secured Claim of Ford Motor Credit.  The Allowed Class LP-9 Secured Claim of Ford Motor Credit shall be satisfied in full by Amerigrow LP's delivery, on the Effective Date, of a Restructured Loan Instrument. The Restructured Loan Instrument shall provide to Ford Motor Credit: (i) a payment of Cash in the amount of $435.00 per month for 37 months; and (ii) a security interest in its Collateral in the same priority as Ford Motor Credit held against its Collateral as of the Petition Date. Under the Restructured Loan Instrument, Amerigrow LP proposes to make such payments to Ford Motor Credit until the Allowed Class LP-9 Claim is paid in full, but not to exceed 37 months, at the various amortization and interest rates specified in the Restructured Debt Instrument. Based on the 37 monthly payments, Ford Motor Credit's Restructured Loan Instrument will fully amortize over the loan period of 37 months.

The Debtors believe that treatment of the Allowed Class LP-9 Secured Claim of Ford Motor Credit as provided herein shall constitute a full satisfaction of Ford Motor Credit's Allowed Claim and no portion of Ford Motor Credit's Allowed Claim shall be treated as a Class LP-13 or Corp-4 Allowed Unsecured Claim pursuant to the term of this Plan.

Class LP-9 is Impaired.

Class LP-10.  Allowed Secured Claim of Kubota.  The Allowed Class LP-10 Secured Claim of Kubota shall be satisfied in full by Amerigrow LP's delivery, on the Effective Date, of a Restructured Loan Instrument. The Restructured Loan Instrument shall provide to Kubota: (i) a payment of Cash in the amount of $353.00 per month for 18 months; and (ii) a security interest in its Collateral in the same priority as Kubota held against its Collateral as of the Petition Date. Under the Restructured Loan Instrument, Amerigrow LP proposes to make such payments to Kubota until the Allowed Class LP-10 Claim is paid in full, but not to exceed 18 months, at the various amortization and interest rates specified in the Restructured Debt Instrument. Based on the 18 monthly payments, Kubota's Restructured Loan Instrument will fully amortize over the loan period of 18 months.

The Debtors believe that treatment of the Allowed Class LP-10 Secured Claim of Kubota as provided herein shall constitute a full satisfaction of Kubota's Allowed Claim and no portion of Kubota's Allowed Claim shall be treated as a Class LP-13 or Corp-4 Allowed Unsecured Claim pursuant to the term of this Plan.

Class LP-10 is Impaired.

Class LP-11.  Allowed Other Secured Claims.  Allowed Other Secured Claims shall be satisfied by each holder of an Allowed Other Secured Claim receiving from Amerigrow LP one or

more of the following: (i) the net proceeds of the liquidation of the collateral securing the Class LP-11 Claim, including but not limited to, through a sale of such collateral pursuant to section 363 of the Bankruptcy Code or otherwise; (ii) realization of the indubitable equivalent of the Class LP-11 Claim, including either in the form of Cash equal to the value of such collateral pursuant to section 506(a) of the Bankruptcy Code and/or the return of the collateral securing such Claim in accordance with 11 U.S.C. §1129(b)(2)(A)(iii); or (iii) satisfaction of such Class LP-11 Claim as otherwise authorized by the Code or agreed to by the holder of such Class LP-11 Claim.  Such satisfaction shall occur on the later of the Effective Date or the date each respective Class LP-11 Other Secured Claim is Allowed by a Final Order.

The Debtors are not currently aware of any Other Secured Claims to be paid under the Plan. There are currently three Proofs of Claim on asserting Secured Claims, but the Debtors do not believe that such claims should be classified as Other Secured Claims.  More specifically, Proof of Claim Number 22 filed by John Deere Risk Protection, Inc. as a secured claim will be satisfied in the ordinary course of business prior to the Effective Date as such claim represents the insurance premium for the Debtors' crops that comes due in March 2010.  Proof of Claim Number 37 filed by FIRST Insurance Funding Corp., a secured claim for monthly insurance premiums, is currently being paid in the ordinary course of business and will continue to be paid by the Reorganized Debtors after the Effective Date.  In addition, the Debtors believe that Proof of Claim Number 17 filed by Tate Transport Corp. should be reclassified to an Unsecured Claim and will be payable as a member of Class LP-13.

Class LP-11 is Impaired.

<u>Class LP-12.  Allowed Convenience Claims</u>.    Allowed Convenience Claims shall be satisfied in full from the Available Cash within ten (10) days after the Effective Date by Reorganized Debtors.  No Distribution shall be made to holders of Allowed Convenience Claims in this Class LP-12 unless and until all Allowed Administrative Claims, all Allowed Post-Confirmation Administrative Claims, all Allowed Priority Tax Claims and all Allowed Claims in Classes LP-1 through LP-11 have been paid in full, reserved or otherwise resolved, and/or included in or accounted for in the Distribution at issue.

The Debtors propose a convenience class for holders of Allowed Unsecured Claims in an amount equal to or less than $2,200.  There are approximately 29 creditors who currently hold Allowed Unsecured Claims under $2,200 against the Debtors in the aggregate amount of approximately $15,000.  The Debtors propose that it would be an administrative inconvenience to pay out these creditors with small balances over time as proposed in Class LP-13 below and that the creation of this Allowed Convenience class satisfies the requirements of 11 U.S.C. §1122(b).

The Debtors also propose to include on the Ballot for Class LP-13, the option to make a Convenience Class Election.  Pursuant to the Convenience Class Election, the holder of an Allowed Unsecured Claim in Class LP-13 may make the election to receive a one-time payment in the amount of $2,200 as a member of Class LP-12 in full and complete satisfaction of their Allowed Class LP-13 Unsecured Claim.  The Debtors submit that the inclusion of this election may further decrease the administrative burden of small Unsecured Claims and may inure significant savings to the Debtors and the Reorganized Debtors.  The Debtors estimate that approximately 10 holders of

Class LP-13 Claims may make the Convenience Class Election, for a total cost of $22,000 on the Effective Date, but a total savings of $22,000 in addition to the decreased costs of administration.

Class LP-12 is Unimpaired.

Class LP-13.  Allowed General Unsecured Claims.      Under the terms of the Plan, each holder of an Allowed General Unsecured Claim in Class LP-13 casting a ballot accepting the Plan shall have the option to select Plan Treatment Option No. 1, Plan Treatment Option No. 2 or Plan Treatment Option No. 3, as described below, with regard to the treatment of their Allowed General Unsecured Claim.  Any unsecured creditor who does not make such an election or does not file an accepting ballot or vote on the Plan will be deemed to have elected to receive a distribution under Plan Treatment Option No. 1.  In addition, no Insider of any of the Debtors shall have the option to choose Plan Treatment Option No. 2 or Plan Treatment Option No. 3 with regard to the treatment of its Allowed General Unsecured Claim.

Plan Treatment Option No. 1 - The Plan provides that each holder of an Allowed Unsecured Claim may elect to receive, after payment of Administrative and Priority Claims, a pro rata distribution equal to 100% payable over a period of sixty (60) months beginning ten (10) days from the Effective Date. The pro rata distributions from Reorganized Amerigrow LP shall be in full satisfaction, settlement, release and discharge of such Class LP-13 claimant's respective Allowed Unsecured Claim; or

Plan Treatment Option No. 2 - The Plan provides that each holder of an Allowed Unsecured Claim may elect to receive, after payment of Administrative and Priority Claims, a pro rata distribution equal to 66% payable over a period of thirty (30) months beginning ten (10) days from the Effective Date. The pro rata distributions from Reorganized Amerigrow LP shall be in full satisfaction, settlement, release and discharge of such Class LP-13 claimant's respective Allowed Unsecured Claim; or

Plan Treatment Option No. 3 - The Plan provides that each holder of an Allowed Unsecured Claim may elect to receive, after payment of Administrative and Priority Claims, a pro rata distribution equal to 33% payable over a period of twelve (12) months beginning ten (10) days from the Effective Date. The pro rata distributions from Reorganized Amerigrow LP shall be in full satisfaction, settlement, release and discharge of such Class LP-13 claimant's respective Allowed Unsecured Claim.

No Distribution shall be made to holders of Allowed Unsecured Claims in this Class LP-13 unless and until all Allowed Administrative Claims, all Allowed Post-Confirmation Administrative Claims, all Allowed Priority Tax Claims and all Allowed Claims in Classes LP-1 through LP-11 have been paid in full, reserved or otherwise resolved, and/or included in or accounted for in the Distribution at issue.

The Debtors estimate that the aggregate Allowed Class LP-13 Unsecured Claims will total approximately $940,000, net of the Convenience Claims in Class LP-12. This amount is comprised of approximately 34 non-insiders with claims in the aggregate of approximately $500,000 and 4 Insiders with Unsecured Claims in the aggregate amount of $440,788.00.  The Insider Unsecured Claims are: (i) Claim Number 30 filed by M & S Fin in the amount of $52,829 for unpaid consulting

fees; (ii) Claim Number 40 filed by Floragem Investments Corp. for unpaid consulting fees; (iii) Claim Number 32 filed by Chuck W. Tomlinson in the amount of $92,717.00 for unpaid consulting fees; and (iv) Claim Number 31 filed by Earth & Wood Product Consulting in the amount of $220,000 for a Promissory Note for monies loaned (collectively, the "Insider Unsecured Claims").

The Debtors intend to object to a handful Unsecured Claims to correct small variances. In addition, the Debtors intend to vigorously prosecute a claim objection against Robert & Helen Howard (Claim Number 41 in the amount of $284,933.44). The Debtors submit that this Claim has absolutely no merit and is based on an alleged breach of contract with Amerigrow of Jupiter Corp. ("Amerigrow Jupiter"). Amerigrow Jupiter is an affiliate of the Debtors, but is not a debtor in this Chapter 11 Case.

As set forth above, all Insider Unsecured Claims will be defaulted to Plan Treatment Option No. 1. The Debtors estimate that 1/3 of each of the remaining $500,000 in Unsecured Claims will elect, or be defaulted, to treatment under each of the various Plan Treatments. As a result, for purposes of Projections, the Debtors estimate that approximately $607,000 in Unsecured Claims will elect or be defaulted to Plan Treatment No. 1, $167,000 in Unsecured Claims will elect Plan Treatment No. 2 and $167,000 will elect Plan Treatment No. 3.

Attached hereto as Exhibit D are the Debtors' consolidated financial protections for a six year period. A detailed schedule of the Debtors' proposed payout to Class LP-13 Unsecured Creditors is attached to the Projections and is incorporated therein.

The recovery percentage for Allowed Class LP-13 Unsecured Claims under the Plan is estimated to be 100% at this time, unless otherwise elected by the holder of such Allowed Class LP-13 Claim. Notwithstanding the above, Unsecured Claims remain subject to (i) objections to be filed by the Debtors or the Reorganized Debtors, as the case may be, by the deadline to be set by the Bankruptcy Court, (ii) set off rights in respect of certain of such Unsecured Claims, and (iii) potential avoidance actions and other Litigation Claims being investigated by the Debtors or the Reorganized Debtors.

Class LP-13 is Impaired.

Class LP-14. Allowed Interests. The holders of Allowed Interests in Amerigrow LP shall receive from the Reorganized Amerigrow LP periodic Distributions, on a pro rata basis, from any remaining Available Cash, provided that, no Distribution shall be made to the holders of Allowed Interests unless and until all Allowed Administrative Claims, all Allowed Post-Confirmation Administrative Claims, all Allowed Priority Tax Claims and all Allowed Claims in Classes LP-1 through LP-13 have been paid in full, reserved or otherwise resolved and/or included in or accounted for in the Distribution at issue. Subject to the right to receive Distributions hereunder, all Interests in Amerigrow LP shall be extinguished and canceled as of the Effective Date and new partnership interests in Amerigrow LP shall be issued on the Effective Date, or as soon thereafter as is practicable. The Reorganized Amerigrow LP will be composed of Janet Tomlinson (37.5%). As limited partner, Mulchmaker (47.5%), as limited partner and Amerigrow Corp. (15%), as general partner (collectively, the "New Partnership Interests"). The corporate documentation of Amerigrow LP will be amended to (i) authorize the issuance of New Partnership Interests; and (ii) provide for the cancellation of all existing Interests.

26

The Debtors do not anticipate that the holders of Class LP-14 Allowed Interests will receive any Distributions under the Plan.

Class LP-14 is Impaired.

Class Corp-1.  Allowed Priority Claims.  Each Allowed Priority Claim shall be paid in full on the later of: (i) the Effective Date; or (ii) the date of a Final Order allowing such Priority Claim.

The Debtors are not currently aware of any class Corp-1 Allowed Priority Claims.

Class Corp-1 is Unimpaired.

Class Corp-2.  Allowed Secured Claim of Komatsu.   The Allowed Class Corp-2 Secured Claim of Komatsu shall be satisfied in full by Amerigrow Corp's delivery, on the Effective Date, of a Restructured Loan Instrument.  The Restructured Loan Instrument shall provide to Komatsu: (i) a payment of Cash in the amount of $2,375.00 per month for 31 months; and (ii) a security interest in its Collateral in the same priority as Komatsu held against its Collateral as of the Petition Date. Under the Restructured Loan Instrument, Amerigrow LP, on behalf of Amerigrow Corp., proposes to make such payments to Komatsu until the Allowed Class Corp-2 Claim is paid in full, but not to exceed 31 months, at the various amortization and interest rates specified in the Restructured Debt Instrument.  Based on the 31 monthly payments, Komatsu's Restructured Loan Instrument will fully amortize over the loan period of 31 months.

The Debtors believe that treatment of the Allowed Class Corp-2 Secured Claim of Komatsu as provided herein shall constitute a full satisfaction of Komatsu's Allowed Claim and no portion of Komatsu's Allowed Claim shall be treated as a Class LP-13 or Corp-4 Allowed Unsecured Claim pursuant to the term of this Plan.

Class Corp-2 is Impaired.

Class Corp-3.  Allowed Other Secured Claims.  Allowed Other Secured Claims shall be satisfied by each holder of an Allowed Other Secured Claim receiving from Amerigrow Corp. one or more of the following: (i) the net proceeds of the liquidation of the collateral securing the Class Corp-3 Claim, including but not limited to, through a sale of such collateral pursuant to section 363 of the Bankruptcy Code or otherwise; (ii) realization of the indubitable equivalent of the Class Corp-4 Claim, including either in the form of Cash equal to the value of such collateral pursuant to section 506(a) of the Bankruptcy Code and/or the return of the collateral securing such Claim in accordance with 11 U.S.C. §1129(b)(2)(A)(iii); or (iii) satisfaction of such Class Corp-3 Claim as otherwise authorized by the Code or agreed to by the holder of such Class Corp-3 Claim.  Such satisfaction shall occur on the later of the Effective Date or the date each respective Class Corp-3 Other Secured Claim is Allowed by a Final Order.

The Debtors are not currently aware of any Class Corp-3 Allowed Other Secured Claims.

Class Corp-3 is Impaired.

Class Corp-4.  Allowed Unsecured Claims.  Allowed Unsecured Claims shall be satisfied by periodic Distributions to the holders of each such Allowed Unsecured Claim on a *pro rata* basis with

the holders of all Allowed Unsecured Claims in this Class Corp-4. The initial Distribution to holders of Allowed Unsecured Claims hereunder shall be made from the Available Cash generated from and constituting property of the Amerigrow Corp Estate within ten (10) days after the Effective Date by Reorganized Debtors and all future Distributions shall be made from the Reorganized Debtors on the respective Distribution Dates. No Distribution shall be made to holders of Allowed Unsecured Claims in this Class Corp-4 unless and until all Allowed Administrative Claims, all Allowed Post-Confirmation Administrative Claims, all Allowed Priority Tax Claims and all Allowed Claims in Classes Corp-1, Corp-2 and Corp-3 have been paid in full, reserved or otherwise resolved, and/or included in or accounted for in the Distribution at issue.

The Debtors are not currently aware of any Class Corp-4 Allowed Unsecured Claims.

Class Corp-4 is Impaired.

Class Corp-5. Allowed Interests. The holders of Allowed Interests in Amerigrow Corp. shall receive from the Reorganized Amerigrow Corp. periodic Distributions, on a pro rata basis, from any remaining Available Cash, provided that, no Distribution shall be made to the holders of Allowed Interests unless and until all Allowed Administrative Claims, all Allowed Post-Confirmation Administrative Claims, all Allowed Priority Tax Claims and all Allowed Claims in Classes Corp-1 through Corp-4 have been paid in full, reserved or otherwise resolved and/or included in or accounted for in the Distribution at issue. Subject to the right to receive Distributions hereunder, all Interests in Amerigrow Corp. shall be extinguished and canceled as of the Effective Date and new equity interests in Amerigrow Corp. shall be issued on the Effective Date, or as soon thereafter as is practicable. The Reorganized Amerigrow Corp. will be composed of Janet Tomlinson (50%) and Silvia Kearney (50%)(collectively, the "New Equity Interests"). The corporate documentation of Amerigrow Corp. will be amended to (i) authorize the issuance of New Equity Interests; and (ii) provide for the cancellation of all existing Interests.

The Debtors do not anticipate that the holders of Class Corp-5 Allowed Interests will receive any Distributions under the Plan.

Class Corp-5 is Impaired.

**E.**     **Implementation of the Plan**

    **1.**     **Generally**

On the Effective Date of the Plan, all Assets of the Estates under Section 541 of the Bankruptcy Code or otherwise, including Available Cash, the Litigation Claims and assets that were acquired by the Debtors after the Petition Date, shall: (i) be transferred to, be deemed transferred to, and vested in the respective Reorganized Debtor under the sole control of the respective Reorganized Debtor, free and clear of all liens, claims, encumbrances and interests of any kind except as provided under the Plan; and (ii) continue to be subject to the jurisdiction of the Bankruptcy Court following Confirmation of the Plan until distributed to holders of Allowed Claims and Allowed Interests or otherwise disbursed in accordance with the provisions of the Plan and the Confirmation Order, provided however, that any and all Litigation Claims shall be retained and enforced by the Reorganized Debtors, through the Reorganized Debtors, as a representative of the

Estates appointed for such purpose, as provided in and pursuant to Section 1123(b)(3) of the Bankruptcy Code solely for the benefit of holders of Allowed Claims and Allowed Interests hereunder. **Notwithstanding anything herein to the contrary, confirmation of the Plan shall divest the Debtors of any and all interest in the Assets of the Estates, such that the Debtors shall have no rights or authority in respect of any Assets remaining in the Estates as of the Effective Date, or thereafter vested in the Reorganized Debtors pursuant hereto, including the Available Cash, and Litigation Claims.**

The distributions required under the Plan shall be funded by the Debtors' Cash on hand as of the Effective Date and the Reorganized Debtors' business operations. In addition, the Debtors shall be authorized to commence or continue litigation on behalf of the estate to recover, *inter alia*, voidable transfers and other claims, if any.

a.    MANAGEMENT

After the Effective Date, it is contemplated that the Reorganized Debtors shall continue to be managed by Janet Tomlinson and their consultants. Reorganized Amerigrow LP shall enter into new management agreement (collectively, the "New Management Agreements") with: (i) Floragem Investments Corp., whose President is Charles W. Tomlinson, III; and (ii) M & S Fin. Corp., whose President is Michael G. Kearney (the "Consultants"), substantially in the form of the management contracts with the Debtors entered into pre-petition. Pursuant to each New Management Agreement, the Consultants will review the ordinary and usual business affairs of the Reorganized Debtors pertaining to the operation, maintenance and management of the various aspects of the Reorganized Debtors' business, interact with the officers and employees of the Reorganized Debtors and provide, on a regular basis, observations and make such recommendations as are appropriate and necessary in respect of the Reorganized Debtors' business operations. Under their respective New Management Agreements, in consideration of the management and consulting services rendered, Floragem will be entitled to receive a consulting fee equal to 2.35% of the Reorganized Amerigrow LP's Gross Revenues, and M & S Fin. Corp. will be entitled to receive a consulting fee equal to 1.65% of the Reorganized Amerigrow LP's gross revenues.

b.    ISSUANCE OF NEW MEMBERSHIP INTERESTS

On the Effective Date, the Reorganized Amerigrow LP shall issue Janet Tomlinson, Mulchmaker and Amerigrow Corp., or other entities organized by them, the New Partnership Interests. The corporate documentation of Amerigrow LP will be amended, if necessary, to (i) authorize the issuance of New Membership Interests; and (ii) provide for the cancellation of all existing Partnership Interests.

On the Effective Date, the Reorganized Amerigrow Corp shall issue Janet Tomlinson and Silvia Kearney or other entities organized by them, the New Equity Interests. The corporate documentation of Amerigrow Corp will be amended, if necessary, to (i) authorize the issuance of New Equity Interests; and (ii) provide for the cancellation of all existing Equity Interests.

c.    DELIVERY OF THE RESTUCTURED LOAN INSTRUMENTS

29

On the Effective Date, the Reorganized Debtors shall deliver the Restructured Loan Instruments to holders of Claims in Classes LP-2, LP-3, LP-4, LP-5, LP-6, LP-7, LP-8, LP-9, LP-10 and Corp-2 in full satisfaction of their respective Allowed Secured Claims.

d.    PLAN FUNDING

The Plan will be funded with the Available Cash upon and following the Effective Date, the Reorganized Debtors' operations and such other assets as may be recovered by the Reorganized Debtors under the Plan.

e.    MISCELLANEOUS

Except to the extent otherwise provided under the Plan or the Confirmation Order, upon the Effective Date, all pre-Petition Date agreements (other than assumed contracts and third party guaranties and indemnities of the Debtors' obligations), credit agreements, pre-Petition Date loan documents and post-Petition Date loan documents to which the Debtors is a party, and all lien claims and other evidence of liens against the Debtors, shall be deemed to be cancelled and of no further force and effect, without any further action on the part of the Debtors. The holders of, or parties to, such cancelled instruments, agreements, securities and other documentation will have no remaining rights arising from or relating to such documents or the cancellation thereof, except the rights provided pursuant to the Plan and the Confirmation Order and any rights that, by the terms of the applicable agreement, survive the termination of such agreement.

Notwithstanding anything to the contrary in the Bankruptcy Rules providing for earlier closure of the Chapter 11 Case, when all Disputed Claims against the Debtors have become Allowed Claims or have been disallowed by Final Order, and all remaining assets of the Reorganized Debtors have been liquidated and converted into Cash (other than those assets abandoned), and such Cash has been distributed in accordance with the Plan, or at such earlier time as the Reorganized Debtors deem appropriate, the Reorganized Debtors shall file a final accounting with the Bankruptcy Court, together with a final report, and shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

2.    **The Reorganized Debtors.**

In addition, the Reorganized Debtors will have authority to take all actions necessary to: (a) investigate, hold, manage, protect, administer, collect, sell, liquidate, prosecute, transfer, resolve, settle, adjust, invest, distribute, or otherwise dispose of any Reorganized Debtor Assets, including but not limited to the Litigation Claims; (b) investigate and reconcile Claims and contest objectionable Claims and Disputed Claims; (c) make all Distributions to be funded under the Plan; (d) pay all necessary expenses incurred in connection with the duties and responsibilities of the Reorganized Debtors under the Plan; (e) administer, implement and enforce all provisions of the Plan; (f) file tax returns and make other related corporate filings; (g) administer the Plan and the assets of the Reorganized Debtors; (h) abandon any Reorganized Debtor Assets or Assets of the Estates, and (i) to invest Cash in accordance with Section 345 of the Bankruptcy Code or otherwise as permitted by order of the Bankruptcy Court, (j) to purchase and carry all insurance policies and pay all premiums and costs deemed necessary and advisable, and (k) undertake such other responsibilities as are reasonable and appropriate in connection with the Plan.

On behalf of the Reorganized Debtors and pursuant to Section 1123(b)(3)(B) of the Code, the Reorganized Debtors are and shall be appointed a representative of the Estates for the benefit of the holders of Allowed Claims and Allowed Interests and shall have the exclusive right to prepare, file, assert, commence and prosecute, or continue to prosecute in the case of existing actions, any and all Litigation Claims, and shall be substituted as the real party in interest in any actions commenced by or against the Debtors. The Reorganized Debtors shall prosecute or defend, as appropriate, such Litigation Claims through final judgment, any appeals deemed necessary and appropriate by the Reorganized Debtors and the Reorganized Debtors shall have the power and authority (A) to enter into such settlements as the Reorganized Debtors deem to be in the best interest of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (B) to abandon, dismiss and/or decide not to prosecute any such Litigation Claims if the Reorganized Debtors deem such action to be in the best interest of creditors.

On the Effective Date of the Plan, or as soon thereafter as possible, the Reorganized Debtors shall establish a Disputed Claims Fund for the Reorganized Debtors. The Reorganized Debtors shall be authorized to make Distributions to the holders of Allowed Claims and Allowed Interests pursuant to the terms of the Plan, provided that the Reorganized Debtors maintain the Disputed Claims Fund, if applicable.

To the extent there exist as of the Effective Date Disputed Claims in any Class, the Reorganized Debtors shall reserve on the books and records of the Reorganized Debtors from any Distribution an amount equal to the pro rata portion of such Distribution to which such Disputed Claim would be entitled if allowed in the amount asserted by the holder of such Disputed Claim. If a Disputed Claim is allowed, in part or in full, then the Reorganized Debtors shall distribute to the holder of any such Claim an amount equal to such Claimant's pro rata share, based on such Allowed Claim, of all Distributions previously made to holders of Allowed Claims in the Class of Claims at issue. The balance, if any, of the reserve for such Disputed Claim, including in the event the Disputed Claim is disallowed in its entirety, shall be deemed Available Cash for use by the Reorganized Debtors under the Plan. Notwithstanding anything herein to the contrary, no interest shall accrue or be payable on the reserve in respect of any Disputed Claims.

Notwithstanding anything to the contrary in the Plan or in the Disclosure Statement, the provisions of the Disclosure Statement and the Plan that permit the Reorganized Debtors to enter into settlements and compromises of any Litigation Claims shall not have, and are not intended to have, any *res judicata* effect with respect to any Litigation Claims that are not otherwise treated under the Plan and shall not be deemed a bar to asserting such Litigation Claims, regardless of whether or to what extent such Litigation Claims are specifically described in the Plan or Disclosure Statement relating hereto. Unless any of the Litigation Claims are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or by Final Order of the Bankruptcy Court, all such Litigation Claims are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to the Litigation Claims upon or after confirmation or consummation of the Plan.

Furthermore, notwithstanding any provision or interpretation to the contrary, nothing in the Plan or the Confirmation Order, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment or bar, in whole or in part, of or to any recovery rights or any

31

other claim, right or cause of action, including Litigation Claims, possessed by the Debtors or the Debtors' Estates prior to the Effective Date.

In the event that the Bankruptcy Court, or any other court of competent jurisdiction, determines that the assignment of any claim, right or cause of action, including without limitation, the Litigation Claims to the Reorganized Debtors pursuant to this Plan is invalid or does not grant to the Reorganized Debtors the standing and all other rights necessary to pursue such claim, right or cause of action, then in such case the Reorganized Debtors shall be deemed appointed as the representative of the Estates for purposes of enforcing and pursuing such claim, right or cause of action, including without limitation, the Litigation Claims, and the proceeds thereof shall be distributed in accordance with term of the Plan.

## F.    Preservation of Claims and Causes of Action.

The Plan provides that, the Reorganized Debtors shall have the right to prepare, file, pursue, prosecute and settle the Litigation Claims, whether or not such Litigation Claims have been asserted or commenced as of the Effective Date, as a representative of the estate pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code appointed for such purpose for the benefit of holders of Allowed Claims and Allowed Interests.

To the extent that certain Litigation Claims are filed by the Debtors, including the Wachovia Litigation, and are not resolved prior to the Effective Date, such Litigation Claims will be transferred to and vest in the Reorganized Debtors pursuant to the terms of the Plan. The Litigation Claims that will be transferred to and vest in the Reorganized Debtors pursuant to the terms of the Plan include specifically the following:[2]

a.    Any and all claims and causes of action, including Litigation Claims, under state or federal law, including federal or state securities laws, against those persons or entities, who participated or had any involvement in, as transferor, transferee, recipient or otherwise, related to the sale, transfer, exchange or disposition of any property of the Debtors or any of their affiliates, any preferred stock, common stock, or equity or similar interests or securities in the Debtors or their affiliates or the products or proceeds thereof, including without limitation, under and pursuant to state preference and fraudulent conveyance laws and Sections 542 through 550 of the Bankruptcy Code.

b.    Any and all claims and causes of action involving or in any way related to the collection of accounts receivables, notes receivables, loans receivables or other receivables owed to the Debtors.

c.    Any and all claims and causes of action seeking to subordinate, equitably or otherwise Claims filed against the Estates, or to re-characterize such Claims as equity Interests in the Debtors.

---

[2] Notwithstanding the specificity of the claims and causes of action described in this Disclosure Statement, nothing in the Plan or herein will limit or restrict in any way the rights of the Reorganized Debtors in connection with pursuing any and all Litigation Claims pursuant to the terms of the Plan.

IN ADDITION TO THE ABOVE, THE DEBTORS MADE CERTAIN PAYMENTS TO PERSONS AND ENTITIES BOTH WITHIN NINETY (90) DAYS PRIOR TO THE PETITION DATE AND WITHIN ONE (1) YEAR PRIOR TO THE PETITION DATE. ATTACHED HERETO AS EXHIBITS E AND F ARE LISTS OF THE PAYMENTS MADE WITHIN NINETY (90) DAYS AND ONE (1) YEAR PRIOR TO THE PETITION DATE, RESPECTIVELY. ALL SUCH PERSONS AND ENTITIES MAY BE SUBJECT TO CLAIMS AND CAUSES OF ACTION RELATED TO THE RECOVERY OF SUCH PAYMENTS, INCLUDING CLAIMS AND CAUSES OF ACTIONS UNDER AND PURSUANT TO SECTIONS 542 THROUGH 550 OF THE BANKRUPTCY CODE OR OTHERWISE.

Lastly, there may be claims and causes of action which currently exist or may subsequently arise that are not set forth specifically herein because the facts upon which such claims and causes of action rest are not fully or currently known by the Debtors. The failure to list any such claims or causes of action is not intended to limit the rights of the Reorganized Debtors to pursue such claims and causes of action at such time as the facts giving rise thereto become fully known.

Unless any of the above described claims and causes of action are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or by Final Order of the Bankruptcy Court, all such claims and causes of action are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims and causes of action upon or after confirmation or consummation of the Plan.

Furthermore, notwithstanding any provision or interpretation to the contrary, nothing in the Plan or the Confirmation Order, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment or bar, in whole or in part, of or to any recovery rights or any other claim, right or cause of action, including Litigation Claims, possessed by the Debtors or the Debtors' Estates prior to the Effective Date.

ANY CREDITOR OR PARTY IN INTEREST VOTING ON THE PLAN SHOULD ASSUME IN CONNECTION WITH SUCH VOTE THAT LITIGATION CLAIMS EXIST AGAINST SUCH CREDITOR OR PARTY IN INTEREST AND THAT THE DEBTORS AND/OR REORGANIZED DEBTORS INTEND TO AND SHALL PURSUE SUCH LITIGATION CLAIMS.

## G.  Injunction and Other Limitations of Liability

### 1.  Applicability of Injunction/Stay as to Assets of Estates/Exculpation

Unless otherwise provided herein, all injunctions or stays applicable to the Assets of the Estates, whether pursuant to Section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect with respect to the Reorganized Debtors and assets of the Reorganized Debtors. In addition, the Reorganized Debtors shall have the right to invoke the provisions of the Bankruptcy Code made applicable by the Plan to the Reorganized Debtors and all of the Bankruptcy Rules until the entry of a final decree closing this Chapter 11 Case.

Except as otherwise specifically provided in the Plan or the Confirmation Order, all Persons who have held, hold or may hold Claims, rights, causes of action, liabilities or any equity Interests with respect to the Debtors or their Assets based upon any act or omission, transaction or other activity of any kind or nature that occurred or arose prior to the Effective Date, regardless of the filing, lack of filing, allowance or disallowance of such a Claim or Interest and regardless of whether such Person has voted to accept the Plan and any successors, assigns or representatives of the foregoing, will be precluded and permanently enjoined on and after the Effective Date from, on account of such Claims, rights, causes of action, liabilities or any equity Interests, (a) commencing or continuing in any manner any action or other proceedings against the Reorganized Debtors or any Reorganized Debtor Assets, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Reorganized Debtors or any Reorganized Debtor Assets, (c) creating, perfecting or enforcing any encumbrance of any kind against the Reorganized Debtors or any Reorganized Debtor Assets, and (d) asserting any Claims that are released hereby.

Neither the Debtors nor any Professionals engaged by the Debtors shall have or incur liability to any Person, including the holder of any Claim or Interest, for any act taken or omissions made in connection with the filing of this Chapter 11 Case, this Chapter 11 Case or the filing, negotiating, prosecuting, administering, formulating, implementing, confirming or consummating the Plan or the Assets to be distributed under the Plan, except to the extent that such act or failure to act constitutes gross negligence, willful misconduct or fraud. Further, the Reorganized Debtors shall not incur any liability to the Debtors, the holders of Claims and/or Interests, or to any person or entity for any act or failure to act in furtherance of the rights and obligations under the Plan, except to the extent that such act or failure to act constitutes gross negligence, willful misconduct or fraud.

## H.  **Alternatives to the Plan**.

If the Plan is not confirmed, then one alternative would be the conversion of this Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, which would require the appointment of a Chapter 7 trustee to control the liquidation and distribution of all Assets of the Debtors and the Debtors' Estates. The Debtors believe that the conversion of this case to a Chapter 7 would materially adversely affect the timing and amount of the Distributions that would ultimately be made to holders of Allowed Claims and Allowed Interests, if applicable. Specifically, the Debtors believe that a Chapter 7 trustee, and any professionals engaged by the Chapter 7 trustee, will add additional and unnecessary administrative expense to the Estates, thereby reducing the amounts that could be distributed to holders of Allowed Claims and Allowed Interests. In addition, under the Plan, holder of Class LP-12 Convenience Claims and LP-13 Unsecured Claims will receive 100% on account of their Allowed Claims, which would otherwise be unavailable in a Chapter 7 or under a Chapter 11 Plan of Liquidation, particularly because the Debtors anticipate that holders of Allowed Secured Claims will have significant deficiency claims in a Chapter 7 scenario, which are not present under the Plan.   In connection therewith, the Debtors refer all creditors and parties in interest to the Liquidation Analysis attached hereto as Exhibit C.  As set forth in such Liquidation Analysis, the Debtors assert that there will be a distribution to general unsecured claims of approximately 7.6% in a Chapter 7 liquidation.  In addition, holders of Secured Claims in Classes LP-2, LP-4, LP-5, LP-6, LP-7, LP-8, LP-9, LP-10, LP-11, Corp-2 and Corp-3 would only receive the liquidation value of their collateral plus a portion of their deficiency claim, instead of Restructured Debt Instruments providing for full payment of their Allowed Secured Claims.

The second alternative to the proposed Plan is the dismissal of this Chapter 11 Case. In that event, however, unsecured creditors of the Debtors would quickly file suit or continue with their pre-petition suits against the Debtors in various courts and PNC would continue the PNC Foreclosure Litigation. The Debtors submits that if PNC were permitted to foreclose on the Property, there would be no monies available for Distributions to holders of Claims in Classes LP-12 and LP-13. The court presiding over any particular court proceeding would not have jurisdiction over any other proceeding, and as a consequence each creditor would be free to undertake such collection activity, including lawsuits, as such creditor deemed appropriate, all in what would amount to a "race to the courthouse." These consequences are exactly the types of activities that the bankruptcy process is designed to avoid. It is only through the bankruptcy process that the Debtors' creditors can be treated in accordance with each creditor's respective rights.

A third alternative in the event the Plan is not confirmed is that the Debtors, a creditor or another party in interest could attempt to formulate and propose a different plan of reorganization or liquidation. Initially, in order for another party in interest to file an alternate plan, the Bankruptcy Court would have to terminate the Debtors' exclusive right to file a plan under Section 1121 of the Bankruptcy Code. The Debtors do not believe that an alternate plan under Chapter 11 of the Bankruptcy Code can be formulated that will provide for greater distributions to creditors than provided for under the Plan. Further, the Debtors believe that resolution of the issues in this Chapter 11 Case must be accomplished as soon as reasonably possible in order to preserve value for creditors. Any alternate plan would likely take significant time to formulate and propose, would likely substantially increase the administrative expenses in the Estates as well as jeopardize any value that is being preserved for the benefit of creditors.

Collectively, these factors clearly evidence that the Debtors' proposed Plan is superior to a liquidation under Chapter 7 of the Bankruptcy Code, dismissal of the bankruptcy case or the filing of an alternate plan of reorganization or liquidation. The Debtors firmly believe that the Plan results in a fair balancing of all parties' rights, and again urges creditors to vote to accept the Plan.

## I.    **Discharge**

Commencing on the Effective Date, except as otherwise provided, all holders of Claims and Interests shall be precluded forever from asserting against the Debtors' Estates, the Reorganized Debtors or their respective assets, any other or further liabilities, lien obligations, claims or equity interest, arising or existing prior to the Effective Date, that was or could have been the subject of any Claim or Interest, whether or not allowed. As of the Effective Date, the Reorganized Debtors shall be discharged, released from and shall hold the assets received or retained by and pursuant to the Plan, free and clear of all liabilities, liens, claims or obligations or other claims of any nature of the Debtors or their Estates except as otherwise provided in the Plan.

## J.    **Revesting of the Reorganized Debtor Assets**

Except as otherwise provided in the Plan or the Confirmation Order, title to all of the Reorganized Debtor Assets will vest in the Reorganized Debtors, free and clear of all claims and interests on the Effective Date. After the Effective Date, the Reorganized Debtors may operate their business and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, except as otherwise provided in the Plan or Confirmation Order. As

of the Effective Date, the Debtors' Estates will be free and clear of all claims and interest, except as otherwise provided n the Plan or Confirmation Order.

## K.    Tax Analysis

### 1.    In General

THE FOLLOWING DISCUSSION IS A SUMMARY OF CERTAIN MATERIAL FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN TO HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS, BUT IS NOT A COMPLETE DISCUSSION OF ALL SUCH CONSEQUENCES.  CERTAIN OF THE CONSEQUENCES DESCRIBED BELOW ARE SUBJECT TO SUBSTANTIAL UNCERTAINTY DUE TO THE UNSETTLED STATE OF THE TAX LAW GOVERNING BANKRUPTCY REORGANIZATIONS.   NO RULINGS HAVE BEEN OR WILL BE REQUESTED FROM THE INTERNAL REVENUE SERVICE ("IRS") WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN. FURTHER, THE TAX CONSEQUENCES OF THE PLAN TO THE HOLDERS OF CLAIMS AND INTERESTS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OR EACH HOLDER, AND MAY BE AFFECTED BY MATTERS NOT DISCUSSED BELOW, SUCH AS THE SPECIAL RULES APPLICABLE TO CERTAIN TYPES OF HOLDERS (INCLUDING PERSONS SUBJECT TO SPECIAL RULES, SUCH AS, FOR EXAMPLE, NONRESIDENT ALIENS, LIFE INSURANCE COMPANIES AND TAX-EXEMPT ORGANIZATIONS).  IN ADDITION, THERE MAY BE STATE, LOCAL, FOREIGN AND OTHER TAX CONSEQUENCES OF THE PLAN APPLICABLE TO PARTICULAR HOLDERS OF CLAIMS OR INTERESTS, NONE OF WHICH ARE DISCUSSED BELOW.  THEREFORE, THE FOLLOWING SUMMARY IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST, AND EACH HOLDER OF A CLAIM AGAINST OR INTEREST IN THE DEBTOR IS URGED TO CONSULT HIS, HER OR ITS TAX ADVISORS CONCERNING THE INDIVIDUAL TAX CONSEQUENCES OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING STATE, LOCAL AND FOREIGN TAX CONSEQUNCES.

### 2.    Tax Consequences To Holders Of Claims

A portion of the consideration received pursuant to the Plan in payment of a Claim may be allocated to unpaid interest, and the remainder of the consideration will be allocated to the principal amount of the Claim.  The tax consequences of the consideration allocable to the portion of a Claim related to interest differs from the tax consequences of the consideration allocable to the portion of a Claim related to principal.

### 3.    Consideration Allocable To Interest

Holders of Claims will recognize ordinary income to the extent that any consideration pursuant to the Plan is allocable to interest, and such income has not already been included in such Claim holder's taxable income.  The determination as to what portion of the consideration received will be allocated to interest is unclear, and may be affected by, among other things, rules in the Internal Revenue Code relating to original issue discount and accrued market discount.  Holders

of Claims should consult their own tax advisors as to the amount of any consideration received under the Plan that will be allocated to interest.

If amounts allocable to interest are less than amounts previously included in the Claim holder's taxable income, the difference will result in a loss. Any amount not allocable to interest will be allocated to the principal amount of the Claim paid and discharged pursuant to the Plan, and will be treated as discussed below.

### 4.    Consideration Allocable to Principal

Holders of Claims receiving cash generally will recognize gain or loss on the exchange equal to the difference between the holder's basis in the Claim and the amount of cash received that is not allocable to interest. The character of any recognized gain or loss will depend upon the status of the Creditor, the nature of the Claim in its hands and the holding period of such claim.

If a Creditor has treated a Claim as wholly or partially worthless and been allowed and received a tax benefit due to a bad debt deduction, the Claim holder will include the amount of cash received in income to the extent such cash exceeds the holder's remaining tax basis in the Claim.

Holders of Claims may be entitled to installment sales treatment or other deferral with respect to the distribution they receive subsequent to the Effective Date. Holders of Claims may already have claimed partial bad debt deductions with respect to their Claims. The IRS may take the position that holders of Allowed Claims cannot claim an otherwise allowable further loss in the year in which their Claim is allowed because such claimants could receive further distributions. Thus, a holder of a Claim could be prevented from recognizing a loss until the time when its Claim has been liquidated and distributions have been completed. If a holder of a Claim is permitted to recognize a loss in the year of the Effective Date by treating the transaction as a "closed transaction" at such time, such holder may recognize income on any subsequent distribution.

### 5.    Importance of Obtaining Independent Professional Tax Assistance.

THE FOREGOING IS INTENDED AS A SUMMARY ONLY, AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FEDERAL, STATE AND LOCAL INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN. SUCH CONSEQUENCES MAY ALSO VARY BASED ON THE PARTICULAR CIRCUMSTANCES OF EACH HOLDER OF AN ALLOWED CLAIM OR AN ALLOWED INTEREST. ACCORDINGLY, EACH HOLDER OF AN ALLOWED CLAIM AND ALLOWED INTEREST IS STRONGLY URGED TO CONSULT WITH HIS, HER OR ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE AND LOCAL INCOME TAX AND OTHER TAX CONSEQUENCES UNDER THE PLAN.

### L.    Best Interest of Creditors Test

As noted above, even if a plan is accepted by each class of claims and interests, the Bankruptcy Code requires a bankruptcy court to determine that the plan is in the best interests of all holders of claims or interests that are impaired by the plan and that have not accepted the plan. The

37

"best interests" test, as set forth in Section 1129(a)(7) of the Bankruptcy Code, requires a bankruptcy court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under Chapter 7 of the Bankruptcy Code.

To calculate the probable distribution to holders of each impaired class of claims and interests if the debtor were liquidated under Chapter 7, a bankruptcy court must first determine the aggregate dollar amount that would be generated from the debtor's assets if its Chapter 11 case were converted to a Chapter 7 case under the Bankruptcy Code. This "liquidation value" would consist primarily of the proceeds from a forced sale of the debtor's assets by a Chapter 7 trustee.

The amount of liquidation value available to unsecured creditors would be reduced by, in this case, first, the claims of secured creditors to the extent of the value of their collateral and, second, by the costs and expenses of liquidation, as well as by other administrative expenses and costs of both the Chapter 7 case and the Chapter 11 case. Costs of liquidation under Chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as of counsel and other professionals retained by the trustee, asset disposition expenses, all unpaid expenses incurred by the debtors in its Chapter 11 case (such as compensation of attorneys, financial advisors, and accountants) that are allowed in the Chapter 7 cases, litigation costs, and claims arising from the operations of the debtor during the pendency of the Chapter 11 case. The liquidation itself would trigger certain priority payments that otherwise would be due in the ordinary course of business. Those priority claims would be paid in full from the liquidation proceeds before the balance would be made available to pay general unsecured claims or to make any distribution in respect of equity security interests. Once the bankruptcy court ascertains the recoveries in liquidation of secured creditors and priority claimants, it must determine the probable distribution to general unsecured creditors and equity security holders from the remaining available proceeds in liquidation. If such probable distribution has a value greater than the distributions to be received by such creditors and equity security holders under the plan, then the plan is not in the best interests of creditors and equity security holders.

## M.    <u>Liquidation Analysis</u>

For purposes of the Best Interest Test, in order to determine the amount of liquidation value available to Creditors, the Debtors, prepared a consolidated liquidation analysis (the "Liquidation Analysis"), which concludes that in a Chapter 7 liquidation, holders of pre-petition unsecured Claims would receive less of a recovery than the recovery they would receive under the Plan. This conclusion is premised upon the assumptions set forth in the Liquidation Analysis, which the Debtors believes are reasonable. A liquidation analysis for the Estates is attached hereto as Exhibit C.

The Debtors filed a single liquidation analysis for ease of illustration. As stated above, there are no material assets of the Amerigrow Corp. Estate other than the Komatsu Excavator, which is subject to Komatsu's lien. Also, there are no members of Class Corp-1, Corp-3 or Corp-4 and the Interests in Class Corp-5 will be cancelled and extinguished as of the Effective Date. As such, the inclusion of Class Corp-2 treatment in the consolidated Liquidation Analysis makes a de minimis impact on the fact that creditors of both Debtors are severely disadvantaged in a Chapter 7 scenario as opposed to their proposed treatment under the Plan.

**N.**    **Feasibility of the Plan**

In connection with confirmation of the Plan, the Bankruptcy Court will be required to determine that the Plan is feasible pursuant to Section 1129(a)(11) of the Bankruptcy Code, which means that the confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors.  To support their belief in the feasibility of the Plan, the Debtors have relied upon the Projections, which are annexed to this Disclosure Statement as Exhibit D.  The Projections indicate that the Reorganized Debtors should have sufficient cash flow to pay and service their debt obligations and to fund their operations. Accordingly, the Debtors believe that the Plan complies with the financial feasibility standard of Section 1129(a)(11) of the Bankruptcy Code.

The Projections are based on numerous assumptions, including confirmation and consummation of the Plan in accordance with its terms; realization of the operating strategy of the Reorganized Debtors; industry performance; no material adverse changes in applicable legislation or regulations, or the administration thereof, or generally accepted accounting principles; no material equipment purchases necessary; no material adverse changes in general business and economic conditions; no material adverse changes in competition; the Reorganized Debtors' retention of key management and other key employees; adequate financing; the absence of material contingent or unliquidated litigation, indemnity, or other claims; and other matters, many of which will be beyond the control of the Reorganized Debtors and some or all of which may not materialize.

To the extent that the assumptions inherent in the Projections are based upon future business decisions and objectives, they are subject to change. In addition, although they are presented with numerical specificity and are based on assumptions considered reasonable by the Debtors, the assumptions and estimates underlying the Projections are subject to significant business, economic, and competitive uncertainties and contingencies, many of which will be beyond the control of the Reorganized Debtors. Accordingly, the Projections are only estimates and are necessarily speculative in nature. It can be expected that some or all of the assumptions in the Projections will not be realized and that actual results will vary from the Projections, which variations may be material and are likely to increase over time. In light of the foregoing, readers are cautioned not to place undue reliance on the Projections.  The Projections should be read together with section of this Disclosure Statement below entitled "Risk Factors," which sets forth important factors that could cause actual results to differ from those in the Projections.

**O.**    **Risk Factors**

**1.**    **Introduction**

This section summarizes some of the risks associated with the Plan and the Debtors' ability to comply with the terms of the Plan.  However, this analysis is not exhaustive and must be supplemented by an evaluation of the Plan and this Disclosure Statement as a whole by each holder of a Claim or Interest with such holder's own advisors.

AS SUCH, HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT,

PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN, ITS IMPLEMENTATION OR ITS SUCCESS.

### 2. Operational Risks of Reorganization

The Debtors face a number of risks with respect to their continuing business operations, including but not limited to the following: (i) their ability to improve profitability and generate positive operating cash flow; (ii) their ability to sustain occupancy volume; (iii) their ability to increase capital expenditures in the future to invest in the Property and other capital projects; (iv) their response to the entry of new competitors into their markets; (v) their ability to implement effective pricing and promotional programs; (vi) general economic conditions in their operating region, which may result in changes in consumer spending on housing; (vii) stability of product costs; (viii) increases in labor and employee benefit costs, such as health care expenses; and (ix) their ability to maintain access to sufficient capital.

Additionally, because the Debtors' operations are in Florida, it faces a number of risks related to possible hurricane and windstorm activity in their operating region. These risks include, but are not limited to, the Debtors' ability to (1) collect on the Debtors' insurance coverage for damage which may result, which is subject to, among other things, the solvency of the Debtors' insurance carriers, their approval of the Debtors' claims and the timing of claims processing and payment; (2) the Debtors' ability to fund losses and other costs in advance of receipt of insurance; and (3) the Debtors' ability to operate from a location that may become inhabitable as a result of damage to the building and/or the surrounding area.

The Reorganized Debtors will face competition, which could harm their financial condition and results of operations. The Reorganized Debtors must compete based on product quality, variety and price, as well as location, service, convenience, and property condition. The Reorganized Debtors' ability to respond to the entry of new competitors into their markets represents an additional risk factor.

### 3. Bankruptcy Risks

#### (a) *Risks Relating to Confirmation*

For the Plan to be confirmed, each impaired Class of creditors and holders of Interests is given the opportunity to vote to accept or reject the Plan, except for those Classes which will not receive any distribution under the Plan and which are, therefore, presumed to have rejected the Plan. There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan.

If one or more of the impaired Classes vote to reject the Plan, then the Debtors may request that the Bankruptcy Court confirm the Plan by application of the "cramdown" procedures available under Section 1129(b) of the Bankruptcy Code. There can be no assurance, however, that the Debtors will be able to use the cramdown provisions of the Bankruptcy Code to achieve Confirmation of the Plan.

If the Plan were not to be confirmed, it is unclear what Distribution holders of Claims and Interests ultimately would receive with respect to their Claims and Interests.  If an alternative plan could not be agreed to, it is likely that, pursuant to the liquidation analysis attached hereto as Exhibit C,  that holders of Claims and Interests would receive less than they would have received pursuant to this Plan.

Any objection to the Plan by a member of a class of Claims or Interests could also either prevent Confirmation of the Plan or delay such Confirmation for a significant period of time.

(b)    ***Other Bankruptcy Risks***

If Administrative Claims or Priority Claims are determined to be Allowed in amounts greatly exceeding the Debtors' estimates, then there may be inadequate Cash or other property available on the Effective Date to pay such Claims under the Plan, and the Plan would not become effective.  The Debtors believe, however, that they will have sufficient Cash to satisfy such Administrative and Priority Claims.

**P.**    **Exemption from Stamp or Similar Taxes.**

Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security or the making or delivery of any instrument of transfer under this Plan may not be taxed under any law imposing a stamp tax, use tax, sales tax or similar tax.  Any sale of any Asset occurring before, after or upon the Effective Date, be deemed to be in furtherance of this Plan.

**Q.**    **CONCLUSION**

THE DEBTORS URGE ALL CREDITORS AND PARTIES IN INTEREST TO STUDY THE DISCLOSURE STATEMENT AND TO REVIEW THE PLAN CAREFULLY, TO VOTE ON THE PLAN AND FILE THE BALLOT IN ACCORDANCE WITH THE INSTRUCTIONS ON THE ENCLOSED BALLOT.

Respectfully submitted this 2nd day of March 2010.


AMERIGROW RECYCLING – DELRAY, LIMITED PARTNERSHIP

By: _____

Janet Tomlinson, President of Amerigrow Corp., General Partner

AMERIGROW RECYCLING CORP.

By: _____

Janet Tomlinson, President


GENOVESE JOBLOVE & BATTISTA, P.A.


By: _____/s/   Heather L. Harmon_____

        Heather L. Harmon, Esq.

        Fla. Bar No. 013192

        hharmon@gjb-law.com

        Michael L. Schuster, Esq.

        Florida Bar No. 57119

        mschuster@gjb-law.com

        100 S.E. 2nd Street, 44th Floor

        Miami, FL 33131

        Tel. (305) 349-2300

        Fax. (305) 349-2310

Attorneys for the Debtors and
Debtors in Possession

Exhibit A
(Plan of Reorganization)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

In re:

AMERIGROW RECYCLING – DELRAY,
LIMITED PARTNERSHIP, et al.[1].

_____/

Case No. 09-34122-BKC-EPK

Chapter 11
(Jointly Administered)

## **DEBTORS' JOINT PLAN OF REORGANIZATION**

Dated: March 2, 2010

GENOVESE JOBLOVE & BATTISTA, P.A.
Heather L. Harmon, Esq.
Fla. Bar No. 013192
hharmon@gjb-law.com
Michael L. Schuster, Esq.
Florida Bar No. 57119
mschuster@gjb-law.com
100 S.E. 2nd Street, 44th Floor
Miami, FL 33131
Tel. (305) 349-2300
Fax. (305) 349-2310

Attorneys for Debtors and Debtors-in-Possession

---

[1]    The jointly administered debtors are: Amerigrow Recycling – Delray, Limited Partnership and its general partner, Amerigrow Recycling Corp.

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................... 1

ARTICLE I          DEFINITIONS.................................................................... 1
ARTICLE II         TREATMENT OF UNCLASSIFIED CLAIMS........................................ 10
ARTICLE III        CLASSIFICATION OF CLAIMS AND INTERESTS ............................ 11
ARTICLE IV         TREATMENT OF CLASSES OF CLAIMS AND INTERESTS ........... 13
ARTICLE V          EFFECTUATION AND IMPLEMENTATION OF PLAN .................... 19
ARTICLE VI         THE REORGANIZED DEBTORS ..................................................... 21
ARTICLE VII        INJUNCTION AND OTHER LIMITATIONS OF LIABILITY .............23
ARTICLE VIII       OBJECTIONS TO CLAIMS ...................................................... 24
ARTICLE IX         EXECUTORY CONTRACTS AND LEASES ........................................ 24
ARTICLE X          DISTRIBUTIONS ..................................................................... 25
ARTICLE XI         PROVISIONS TO INVOKE CRAMDOWN PROCEEDINGS IF
                   NECESSARY ............................................................................ 29
ARTICLE XII        EFFECT OF CONFIRMATION ................................................... 29
ARTICLE XIII       AMENDMENT AND MODIFICATION................................................. 29
ARTICLE XIV        REVOCATION.......................................................................... 30
ARTICLE XV         RETENTION OF JURISDICTION ................................................ 30
ARTICLE XVI        MISCELLANEOUS PROVISIONS........................................................ 33
ARTICLE XVII       CONFIRMATION REQUEST................................................... 36
ARTICLE XVIII      CONCLUSION......................................................................... 36

## INTRODUCTION

Amerigrow Recycling – Delray, Limited Partnership and its general partner, Amerigrow Recycling Corp., the debtors and debtors in possession (the "Debtors"), hereby propose their Joint Plan of Reorganization (the "Plan") pursuant to Section 1121 of the United States Bankruptcy Code.

Reference is made to the Disclosure Statement (the "Disclosure Statement") accompanying this Plan for a discussion of, among other things, the Debtors' history, business, events leading up to these Chapter 11 Cases, treatment of Claims against and Interests in the Debtors, preservation of Claims and causes of action, risk factors, liquidation analysis, tax implications, alternatives to the Plan, a summary and analysis of this Plan and certain related matters.

**ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE HEREON ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.**

**SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3018 AND IN THIS PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN PRIOR TO CONFIRMATION OF THE PLAN OR ITS SUBSTANTIAL CONSUMMATION.**

## ARTICLE I

## DEFINITIONS

**A.**    **Scope of Definitions.**    For purposes of this Plan and to the extent not otherwise provided herein, the terms below shall have the respective meanings hereinafter set forth and designated with the initial letter of each word being capitalized and, unless otherwise indicated, the singular shall include the plural, the plural shall include the singular and capitalized terms shall refer to the terms as defined in this Article.

1.    **"Administrative Claim"** shall mean a Claim against the Estates of either Debtors allowed by order of the Bankruptcy Court pursuant to Section 503(b) and entitled to priority under Section 507(a)(1) or 507(b) of the Bankruptcy Code, including, without limitation: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtors' Estates and of operating the business of the Debtors; (ii) any payment to be made under this Plan to cure a default on an executory contract or unexpired lease that is assumed pursuant to Section 365 of the Bankruptcy Code, (iii) any post-Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtors in the ordinary course of business, (iv) compensation or reimbursement of expenses of Professionals to the extent allowed by the Bankruptcy Court under Section 330(a) or Section 331 of the Bankruptcy Code, (v) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court, including

1

under Section 546(c)(2)(A) of the Bankruptcy Code, and (vi) all fees and charges assessed against the Debtors' Estates pursuant to 28 U.S.C. §1930(a).

2.      **"Administrative Claims Bar Date"** shall mean the last date to request payment of Administrative Claims, as set by order of the Bankruptcy Court, other than with respect to (a) Claims of Professionals or other Persons requesting compensation or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered on or before the Effective Date (including any compensation requested by any professional or any other Person for making a substantial contribution in the Chapter 11 Case), and (b) liabilities incurred by the Debtors after the Administrative Claims Bar Date but before the Effective Date.

3.      **"Allowed Administrative Claim"** shall mean all or that portion of an Administrative Claim which has been allowed by a Final Order of the Bankruptcy Court.

4.      **"Allowed Claim"** shall mean a Claim: (a) (i) proof of which was timely and properly filed on or before the Bar Date or the Administrative Claims Bar Date, as applicable, (ii) proof of which was deemed filed pursuant to Section 1111(a) of the Bankruptcy Code, or (iii) if no such proof was filed or deemed filed, such Claim has been or hereafter is listed by the Debtors on their Schedules filed under Section 521(1) of the Bankruptcy Code as liquidated in amount and not disputed or contingent and, in any case, as to which (A) no objection to the allowance thereof has been or is interposed, or (B) any such objection has been settled, withdrawn or determined by a Final Order, (b) based on an application of a Professional under Section 330, Section 331, or Section 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Case, to the extent such application is approved by a Final Order; or (c) expressly allowed under this Plan or the Confirmation Order.  Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Claim" shall not include interest on such Claim for the period from and after the Petition Date.

5.      **"Allowed Interest"** shall mean an Interest which has been allowed by a Final Order of the Bankruptcy Court.

6.      **"Allowed Priority Claim"** shall mean a Priority Claim which has been allowed by a Final Order of the Bankruptcy Court.

7.      **"Allowed Secured Claim"** shall mean a Secured Claim which has been allowed by a Final Order of the Bankruptcy Court.

8.      **"Allowed Unsecured Claim"** shall mean an Unsecured Claim which has been allowed by a Final Order of the Bankruptcy Court.

9.      **"Amerigrow Corp."** shall mean Amerigrow Recycling Corp., a New York corporation with its principal place of business in Delray Beach, Florida.  Amerigrow Corp. is owned 50% by Janet Tomlinson and 50% by Silvia Kearney.  Amerigrow Corp. is the general partner of Amerigrow LP and owns 15% of the Interests therein.

2

10.    **"Amerigrow LP"** shall mean Amerigrow Recycling – Delray, Limited Partnership, a New York limited partnership with its principal place of business in Delray Beach, Florida. Amerigrow LP has two limited partners: Janet Tomlinson, who owns a 37.5% interest in the limited partnership, and Mulchmaker, LLC, which owns a 47.5% interest.  The general partner of Amerigrow LP is Amerigrow Corp., which owns the remaining 15% interest in Amerigrow LP.

11.    "**Assets**" shall mean all property of the Estates under Section 541 of the Bankruptcy Code, including, without limitation, all legal or equitable interests of the Debtors in any and all real or personal property of any nature, including any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, inventory, materials, supplies, furniture, fixtures equipment, work in process, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Litigation Claims and any other general intangibles, and the proceeds, product, offspring, rents or profits thereof.

12.    **"Available Cash"** shall mean: (i) with respect to the initial Distribution to holders of Allowed Claims under the Plan, that portion of the amount of Cash then on deposit in the Reorganized Debtors determined by the Reorganized Debtors, in the exercise of their reasonable business judgment after accounting for the Disputed Claims Fund, to be available for Distribution to such holders of Allowed Claims under the terms of the Plan; and (ii) with respect to each subsequent Distribution under the Plan to holders of Allowed Claims, that portion of the amount of Cash then on deposit in the Reorganized Debtors and determined by the Reorganized Debtors, in the exercise of their reasonable business judgment after accounting for the Disputed Claims Fund, to be available for Distribution to the holders of Allowed Claims on each Distribution Date pursuant to the terms of the Plan.

13.    "**Ballot**" shall mean the ballot accompanying the Disclosure Statement upon which holders of impaired Claims entitled to vote on this Plan shall indicate their acceptance or rejection of this Plan in accordance with the instructions regarding voting.

14.    **"Bankruptcy Code"** shall mean Title 11 of the United States Code, 11 U.S.C. § 101, *et. seq.*, in effect as of the Petition Date, together with all amendments and modifications thereto to the extent applicable to this Chapter 11 Case.

15.    **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the Southern District of Florida, or such other court as may hereafter have jurisdiction over this proceeding.

16.    **"Bankruptcy Rules"** shall mean (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under Section 2075 of title 28 of the United States Code, (b) the Federal Rules of Civil Procedure, as amended and promulgated under Section 2072 of title 28 of the United States Code, (c) the Local Rules of the United States Bankruptcy Court for the Southern District of Florida, and (d) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto to the extent applicable to this Chapter 11 Case or proceedings herein, as the case may be.

17.    **"Bar Date"** shall mean January 31, 2010, the last date for creditors and holders of Interests to file proofs of Claims or Interests in this Chapter 11 Case, provided however that with respect to governmental units, the Bar Date shall be 180 days after the Petition Date.

18.    **"Business Day"** shall mean any other day other than a Saturday, Sunday, or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

19.    **"Cash"** shall mean money, currency and coins, negotiable checks, balances in bank accounts and other lawful currency of the United States of America and its equivalents.

20.    **"Cash Collateral Motion"** shall mean that certain Motion, dated November 2, 2009, for the Entry of an Order (A) Authorizing the Debtors (1) to Use Cash Collateral on an Interim Basis Pursuant to 11 U.S.C. § 363, and (2) to Provide Adequate Protection in Connection Therewith and Pursuant to 11 U.S.C. § 363, and (B) Setting a Final Hearing Pursuant to Bankruptcy Rule 4001 [D.E. #9].

21.    **"Cash Collateral Order"** shall mean, collectively, the Interim Order (1) Authorizing The Debtors To Use Cash Collateral, (2) Granting Adequate Protection, (3) Setting Further Hearing dated November 5, 2009 [D.E. #37]; the Agreed Interim Order (1) Authorizing The Debtors To Use Cash Collateral, (2) Granting Adequate Protection, (3) Setting Further Hearing dated December 7, 2009 [D.E. #76], the Agreed Interim Order (1) Authorizing The Debtors To Use Cash Collateral, (2) Granting Adequate Protection, (3) Setting Further Hearing dated January 15, 2010 [D.E. #115], and the Final Order (1) Authorizing The Debtors To Use Cash Collateral, (2) Granting Adequate Protection, (3) Setting Further Hearing dated February 12, 2010 [D.E. #130].

22.    **"Chapter 11 Case"** shall mean, collectively, the proceedings under Chapter 11 of the Bankruptcy Code for the reorganization of the Debtors, each of which were commenced in the Bankruptcy Court in the Southern District of Florida on November 2, 2010 and jointly administered under the lead case number 09-34122-BKC-EPK.

23.    **"Claim"** shall mean any claim, as that term is defined in Section 101(5) of the Bankruptcy Code, including, without limitation, any claim of right to payment, liquidated, unliquidated, contingent, matured, unmatured, disputed or undisputed, legal, equitable, secured or unsecured.

24.    **"Claimant"** shall mean any Person who asserts a Claim in this Chapter 11 Case.

25.    **"Claim Objection Deadline"** shall mean the date set by order of the Bankruptcy Court (without notice or hearing) for objecting to Claims against the Estates.

26.    **"Class or Classes"** shall mean each class or classes of creditors or holders of Interests classified under the Plan pursuant to Section 1122 of the Bankruptcy Code.

27.    **"Confirmation"** shall mean the entry of an order of the Bankruptcy Court confirming the Plan in accordance with Section 1129 of the Bankruptcy Code.

28. **"Confirmation Date"** shall mean the date on which the Confirmation Order is entered on the computerized docket maintained by the clerk of the Bankruptcy Court.

29. **"Confirmation Hearing"** shall mean the hearing conducted by the Bankruptcy Court under Section 1128 of the Bankruptcy Code wherein the Bankruptcy Court shall consider confirmation of this Plan, in accordance with Section 1129 of the Bankruptcy Code, as the same may be continued from time to time.

30. **"Confirmation Order"** shall mean the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

31. **"Convenience Claim"** means any Unsecured Claim (a) in an amount equal to or less than $2,200 or (b) with respect to which the Person holding such Unsecured Claim has made the Convenience Class Election.

32. **"Convenience Class Election"** means the election by a Person holding an Unsecured Claim to reduce its Allowed Claim, in its entirety, to $2,200, and to thereby receive treatment in Class LP-12. The Convenience Class Election may be made by submitting a properly completed ballot to the Debtors on or before the Voting Deadline.

33. **"Debtors"** shall mean, collectively, Amerigrow Recycling – Delray, Limited Partnership and Amerigrow Recycling Corp.

34. **"Disclosure Statement"** shall mean the Disclosure Statement and exhibits thereto that relate to this Plan and prepared pursuant to Section 1125 of the Bankruptcy Code, as amended, modified or supplemented from time to time, which has been approved by the Bankruptcy Court and which is distributed to holders of Claims and Interests with this Plan.

35. **"Disputed Claim"** shall mean all Claims: (a) which are listed in the Schedules as disputed, contingent or unliquidated or (b) as to which (i) a proof of Claim has been filed, (ii) an objection, or request for estimation, has been timely filed (and not withdrawn) by any party in interest, and (iii) no Final Order has been entered thereon. In the event that any part of a Claim is disputed, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under this Plan unless a Final Order has been entered allowing such Claim. Without limiting any of the above, a Claim that is the subject of a pending objection, motion, complaint, counterclaim, setoff, avoidance action, Litigation Claim or other defense, or any other proceeding seeking to disallow, subordinate or estimate such Claim, shall be deemed to constitute a Disputed Claim.

36. **"Disputed Claims Fund"** shall mean the reserve created and established by the Reorganized Debtors on the books and records of the Reorganized Debtors in accordance with the provisions of this Plan for the purposes of accounting for Distributions to holders of Disputed Claims in the Estates pending the determination and allowance, if applicable, thereof by Final Order of the Bankruptcy Court. Any unused amounts accounted for in the Disputed Claims Fund shall

5

become Available Cash under the Plan, including for Distribution to holders of Allowed Claims in accordance with the terms of the Plan.

37.     **"Distribution"** shall mean each distribution of Available Cash to holders of Allowed Claims (including to the Disputed Claims Fund) pursuant to and under the terms of this Plan by the Reorganized Debtors on each Distribution Date, the first of which shall occur as provided herein on or before ten (10) days after the Effective Date.

38.     **"Distribution Date"** shall mean: (i) with respect to the initial Distribution pursuant to the Plan by the Reorganized Debtors, on or before ten (10) days after the Effective Date, provided that with respect to Disputed Claims, the initial Distribution thereon shall be made to the Disputed Claims Fund; and (ii) with respect to each subsequent Distribution by the Reorganized Debtors, the dates determined in the reasonable business judgment of the Reorganized Debtors, provided however that no Distribution shall be made unless Available Cash exists in excess of any reserves determined to be appropriate by the Reorganized Debtors, and those amounts reserved for Distributions on Disputed Claims in the Disputed Claims Fund.

39.     **"Effective Date"** shall mean the date which is fourteen (14) days after the date the Confirmation Order is entered on the Bankruptcy Court's computerized docket by the clerk of the Bankruptcy Court, or the first Business Day thereafter.

40.     **"Estates"** shall mean the estate of the Debtors created under and pursuant to Section 541 of the Bankruptcy Code on the Petition Date.

41.     **"Executory Contracts"** shall mean all contracts, oral or written, to which the Debtors is a party and which are executory within the meaning of Section 365 of the Bankruptcy Code.

42.     **"Final Order"** shall mean an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended and: (i) as to which the time to appeal or seek reconsideration or rehearing thereof has expired; (ii) in the event of a motion for reconsideration or rehearing is filed, such motion shall have been denied by an order or judgment of the Bankruptcy Court; or (iii) in the event of an appeal is filed and pending, a stay pending appeal has not been entered, provided however that with respect to an order or judgment of the Bankruptcy Court allowing or disallowing a Claim, such order or judgment shall have become final and non-appealable.  Provided further that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

43.     **"GJB"** shall mean Genovese Joblove & Battista, P.A., the Debtors' court-approved general bankruptcy counsel.

44.     **"Impairment"** or **"Impaired"** shall have the meaning under Section 1124 of the Bankruptcy Code.

45.    **"Insider"** shall have the meaning set forth in Section 101(31) of the Bankruptcy Code.

46.    **"Interest"** shall mean any "equity security" interest in the Debtors, as the term is defined in Section 101(16) of the Bankruptcy Code, exclusive of any such interests held in treasury by the Debtors, which Interests are identified in the Schedules filed by the Debtors in this Chapter 11 Case and/or registered in the stock registers maintained by or on behalf of the Debtors, and as to which Interest no objection has been made or which Interest has been allowed by a Final Order.

47.    **"Janet Tomlinson"** is the President and Secretary of Amerigrow Recycling Corp. Ms. Tomlinson is a limited partner of Amerigrow LP, owning a 37.5% interest.  Ms. Tomlinson also owns 50% of the Interests of Amerigrow Corp.

48.    **"Lien"** shall mean any valid and undisputed mortgage, lien, charge, security interest, encumbrance or other security device of any kind affecting any Asset of the Debtors or the Debtors' Estates.

49.    **"Litigation Claims"** shall mean any and all Claims, choses in action, causes of action suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payments and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assertable directly or derivatively, in law, equity or otherwise, which are owned or held by, or have accrued to, the Debtors or the Estates, whether arising before or after the Petition Date, including without limitation, those which are: (i) property of the Estates of the Debtors under and pursuant to Section 541 of the Bankruptcy Code; (ii) for subrogation and contribution; (iii) for turnover; (iv) for avoidable transfers and preferences under and pursuant to Sections 542 through 550 and 553 of the Bankruptcy Code and applicable state law; (v) to determine the extent, validity and priority of liens and encumbrances; (vi) for surcharge under Section 506(c) of the Bankruptcy Code; (vii) for subordination under Section 510 of the Bankruptcy Code; (viii) related to federal or state securities laws; (ix) direct or derivative claims or causes of action of any type or kind; (x) for professional malpractice against professionals employed by the Debtors; (xi) against any and all current and/or former officers and directors of the Debtors, including for breach of fiduciary duty; (xii) under and pursuant to any policies of insurance maintained by the Debtors, including without limitation, the directors' and officers' liability insurance policy; (xiii) for theft of corporate opportunity; (xiv) for collection on accounts, accounts receivables, loans, notes receivables or other rights to payment; (xv) for the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under Section 505 of the Bankruptcy Code; (xvi) which arise under or as a result of any section of the Bankruptcy Code, including Section 362; (xvii) for lender liability against any lender of the Debtors, including but not limited to claims against any such lender for exerting excessive or unreasonable control over the Debtors, for, charging, taking, reserving, collecting or receiving interest in excess of the highest lawful rate, for any breach of fiduciary duty, breach of any duty of fair dealing, breach of confidence, or any cause of action or defense based on the negligence of such lender, for any "lender liability" theories, breach of funding commitment, undue influence, duress, economic coercion, conflict of interest, negligence, bad faith, malpractice, violations of the

7

Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of mental distress, tortious interference with contractual relations, tortious interference with corporate governance or prospective business advantage, breach of contract, fraud, mistake, deceptive trade practices, libel, slander, conspiracy, fraudulent conveyance, or any claim for wrongfully taking any action in connection with the foregoing; and (xviii) to the extent not otherwise set forth above, as described in the Disclosure Statement.

50.      **"Monthly Operating Reports"** shall mean the monthly financial reports filed by the Debtors during this Chapter 11 Case.

51.      **"Mulchmaker, LLC"** is a limited partner of Amerigrow LP owning a 47.5% interest. Mulchmaker is owned by: (i) BPK Trust (55.78%); (ii) Michael Kearney Roth IRA (17.8%); (iii) Silvia Kearney Roth IRA (14.58%); William Kearney Roth IRA (5%); Paul Kearney Roth IRA (4.29%); and Kathryn Kearney Roth IRA (3.17%).

52.      **"New Equity Interests"** shall mean one hundred percent (100%) of the ownership interests in Amerigrow Corp. to be issued to Janet Tomlinson (50%) and Silvia Kearney (50%), or their designees, on the Effective Date.

53.      **"New Partnership Interests"** shall mean one hundred percent (100%) of the ownership interests in Amerigrow LP to be issued to Janet Tomlinson (37.5%) and Mulchmaker (47.5%), as limited partners, and Amerigrow Corp (15%) as general partner, or their designees, on the Effective Date.

54.      **"Objection**" shall mean any objection, application, motion, complaint or any other legal proceeding, including, with respect to the terms of this Plan, seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Claim) or Interest other than an Allowed Claim or an Interest.

55.      **"Person"** shall mean an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

56.      **"Petition Date"** shall mean November 2, 2009, the date this Chapter 11 Case was commenced.

57.      **"Plan"** shall mean this plan of reorganization in its entirety, together with all addenda, exhibits and schedules in its present form or as it may be modified, amended or supplemented from time to time.

58.      **"PNC Foreclosure Litigation" shall mean the state litigation commence in Palm Beach County Circuit Court by National City to foreclosure on the Property.**

8

59.     **"Priority Claim"** shall mean a Claim entitled to priority under Section 507(a)(3)-(7) and (9) of the Bankruptcy Code.

60.     **"Priority Tax Claim"** shall mean a Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

61.     **"Professionals"** shall mean a Person (a) employed in the Chapter 11 Case pursuant to a Final Order in accordance with Sections 327, 363 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330, 331 and 363 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

62.     **"Property"** shall mean its Delray Beach, Florida facility, which is located at 10320 West Atlantic Avenue, Delray Beach, Florida 33446. Amerigrow LP owns the Property, which consists of three parcels of land totaling 59.94 acres, located within a special land use and zoning district known as the Agricultural Reserve.

63.     **"Rejection Claim"** shall mean a Claim arising under Section 502(g) of the Bankruptcy Code from the rejection under Section 365 of the Bankruptcy Code, or under this Plan, of an Executory Contract or unexpired lease which the Debtors have not assumed.

64.     **"Reorganized Debtors"** means the reorganized Debtors on or after the Effective Date.

65.     **"Reorganized Debtor Assets"** shall mean all property of the Estates under Section 541 of the Bankruptcy Code, including, without limitation, all legal or equitable interests of the Debtors in any and all real or personal property of any nature, including any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, inventory, consigned inventory acquired by the Debtors pre-petition, materials, supplies, furniture, fixtures equipment, work in process, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Litigation Claims, and any other general intangibles, and the proceeds, product, offspring, rents or profits thereof. For avoidance of doubt, the Debtors are not seeking substantive consolidated under this Joint Plan. Where appropriate, the term Reorganized Debtor Assets, shall only mean the respective Reorganized Debtor's Assets and shall not be aggregate so as to imply substantive consolidation.

66.     **"Restructured Loan Instrument"** shall mean shall mean those certain debt instruments to be delivered in satisfaction of Allowed Secured Claims.

67.     **"Schedules"** shall mean the Schedules and Statement of Financial Affairs filed by the Debtors pursuant to Sections 521(1) and 1106(a)(2) of the Bankruptcy Code, as amended and supplemented.

68.     **"Secured Claim"** shall mean a Claim which, as of the Effective Date of the Plan and, if necessary, pursuant to a valuation by the Bankruptcy Court pursuant to Section 506(a) of the

9

Bankruptcy Code, is secured by a valid, enforceable and perfected mortgage, lien, security interest or other encumbrance of any kind against Assets of the Estates, and which is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, provided however, that the amount of any Secured Claim shall not exceed the value of the Assets securing such Secured Claim pursuant to section 506(a) of the Bankruptcy Code.

69.    **"Silvia Kearney"** is the Vice-President, Assistant Secretary and Treasurer of Amerigrow Corp.  Ms. Kearney owns 50% of the Interests of Amerigrow Corp.

70.    **"Unsecured Claim"** shall mean any Claim against the Debtors' Estates, but not including an Administrative Claim, a Post-Confirmation Administrative Claim, a Priority Claim, a Secured Claim or a Priority Tax Claim.

71.    **"Unclaimed Property"** shall mean any distribution of Cash or any other property made to the holder of an Allowed Claim pursuant to this Plan that (a) is returned to the Reorganized Debtors as undeliverable and no appropriate forwarding address is received within the later of (i) 90 days after the Effective Date and (ii) 90 days after such attempted Distribution by the Reorganized Debtors is made to such holder or (b) in the case of a distribution made in the form of a check, is not negotiated within 90 days and no request for re-issuance is made.  Except as provided in the Plan, Unclaimed Property shall remain with the Reorganized Debtors and not be redistributed to holders of Allowed Claims.

**B.  Rules of Interpretation.**  Any term used but not defined herein shall have the meaning given to it by the Bankruptcy Code or the Bankruptcy Rules, if used therein.  The words "herein," "hereof", "hereunder" and other words of similar import refer to this Plan as a whole, not to a particular section, subsection, paragraph, subparagraph or clause, unless the context requires otherwise.  Whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and the neuter.  All captions and headings to articles and paragraphs of the Plan are inserted for convenience and reference only and are not intended to be a part or to affect the interpretation of the Plan.  Any rules of construction set forth in Section 102 of the Bankruptcy Code shall apply, unless superceded herein or in the Confirmation Order.  In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of the Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## TREATMENT OF ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS AND UNITED STATES TRUSTEE'S FEES

The following Administrative Claims, Priority Tax Claims and United States Trustee's Fees are not Impaired under the Plan and will be treated as follows:

1.    **Administrative Claims**.  The holders of Allowed Administrative Claims against the Estates (with the exception of the Professionals employed pursuant to Sections 327, 503(b)(3) and

(4) and 1102 of the Code, who will be paid 100% of the amount allowed of such Administrative Claims by the Bankruptcy Court upon application to the Bankruptcy Court prior to the bar date for filing such applications and entry of an order(s) thereon) shall be paid 100% of their Allowed Administrative Claims in Cash, unless otherwise ordered by the Bankruptcy Court, upon the earlier to occur of:  (i) the later of the Effective Date or the date of a Final Order allowing such Administrative Claim; (ii) for Allowed Administrative Claims that represent liabilities incurred by the Debtors in the ordinary course of business during this Chapter 11 Case, the date on which each such Claim becomes due in the ordinary course of the Debtors' business and in accordance with the terms and conditions of any agreement relating thereto; or (iii) upon such other dates and terms as may be agreed upon by the holder of any such Allowed Administrative Claim and the Debtors or the Reorganized Debtors.

       **2.**       **Priority Tax Claims**.  Each holder of an Allowed Priority Tax Claim under Section 507(a)(8) of the Code shall be paid 100% of such Allowed Priority Tax Claim in Cash on the later to occur of: (i) the Effective Date; (ii) the date such Allowed Priority Tax Claim is allowed by a Final Order of the Bankruptcy Court, or (iii) such other dates and upon such other terms as determined by the Bankruptcy Court or agreed to by the Debtors or the Reorganized Debtors (as the case may be) and the holder of such Allowed Priority Tax Claim.

       **3.**       **United States Trustee's Fees** .  The Debtors shall pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) on the Effective Date, and simultaneously provide to the U.S. Trustee an appropriate affidavit indicating Cash disbursements for all relevant periods; notwithstanding anything contained in the Plan to the contrary, the Reorganized Debtors shall further pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6) until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon entry of an order of this Bankruptcy Court dismissing the case, or converting this case to another chapter under the United States Bankruptcy Code, and the Reorganized Debtors shall provide to the U.S. Trustee, upon the payment of each post-confirmation payment, a quarterly report and appropriate affidavit indicating income and disbursements for the relevant periods.  To date, the Debtors have paid all fees due and owing to the Office of the United States Trustee, and the Debtors or Reorganized Debtors, as applicable, anticipates paying all such fees through confirmation of the Plan and thereafter as provided herein.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

**A.**       **Generally**.

       Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of the Classes of Claims and Interests in each of the Debtors.  A Claim or Interest is placed in a particular Class only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled or paid prior to the Effective Date.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and

Priority Tax Claims of the kinds specified in Sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified, are deemed not to be Impaired and are treated as set forth in Article II above.

**B.**   **Classification**.

For purposes of this Plan, the Classes of Claims and Interests for Amerigrow LP shall be classified as follows:

| | | |
|---|---|---|
| a. | Class LP-1: | Allowed Priority Claims. |
| b. | Class LP-2: | Allowed Secured Claim of PNC. |
| c. | Class LP-3: | Allowed Secured Claim of Fifth Third Bank. |
| d. | Class LP-4: | Allowed Secured Claims of Wells Fargo. |
| e. | Class LP-5: | Allowed Secured Claims of Alter Moneta. |
| f. | Class LP-6: | Allowed Secured Claims of Colonial Pacific. |
| g. | Class LP-7: | Allowed Secured Claims of GECC. |
| h. | Class LP-8: | Allowed Secured Claims of Turner. |
| i. | Class LP-9: | Allowed Secured Claims of Ford Motor Credit. |
| j. | Class LP-10: | Allowed Secured Claims of Kubota. |
| k. | Class LP-11: | Allowed Other Secured Claims. |
| l. | Class LP-12: | Allowed Convenience Claims. |
| m. | Class LP-13: | Allowed Unsecured Claims. |
| n. | Class LP-14: | Allowed Interests. |

Classes LP-2, LP-3, LP-4, LP-5, LP-6, LP-7, LP-8, LP-9, LP-10, LP-11, LP-13 and LP-14 are Impaired under the Plan.  Classes LP-1 and LP-12 are not Impaired under the Plan.  As such, Classes LP-1 and LP-12 are deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Class LP-14 is not expected to receive or retain any property under the Plan and therefore is deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

For purposes of this Plan, the Classes of Claims and Interests of Amerigrow Corp. shall be classified as follows:

| | | |
|---|---|---|
| a. | Class Corp-1: | Allowed Priority Claims. |

      b.        <u>Class Corp-2</u>:  Allowed Secured Claim of Komatsu.

      c.        <u>Class Corp-3</u>:  Allowed Unsecured Claims.

      d.        <u>Class Corp-4</u>:  Allowed Other Secured Claims

      e.        <u>Class Corp-5</u>:  Allowed Interests.

Classes Corp-2, Corp-3, Corp-4 and Corp-5 are Impaired under the Plan.  Class Corp-1 is not Impaired under the Plan.  As such, Class Corp-1 is deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Class Corp-5 is not expected to receive or retain any property under the Plan and therefore is deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

## ARTICLE IV

## <u>TREATMENT OF CLASSES OF CLAIMS AND INTERESTS</u>

### A.    <u>Generally</u>.

The treatment of and consideration to be received by holders of Allowed Claims and the treatment of Interests pursuant to this Article IV shall be in full satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims against, or Interests in the Debtors and the Debtors' Estates, except as otherwise expressly provided for in this Plan or the Confirmation Order.

### B.    <u>Treatment</u>.

<u>Class LP-1.  Allowed Priority Claims</u>.  Each Allowed Priority Claim shall be paid in full on the later of: (i) the Effective Date; or (ii) the date of a Final Order allowing such Priority Claim.

<u>Class LP-2.  Allowed Secured Claim of PNC</u>.  The Allowed Class LP-2 Secured Claim of PNC shall be satisfied in full by Amerigrow LP's delivery, on the Effective Date, of a Restructured Loan Instrument. For purposes of illustration of PNC's Restructured Loan Instrument under this Plan, Amerigrow LP assumes an Allowed Class 2 Secured Claim in the amount of $6,880,957.85. The Restructured Loan Instrument shall provide to PNC: (i) a payment of Cash in the amount of $ 18,635.93 per month for 36 months (interest only with an interest rate at the current prime rate at 3.25%); (ii) payment of Cash in the amount of $41,697.25 per month for the following period of 36 months (principal and interest with 20 year amortization and an interest rate of 4%); (iii) a monthly payment of Cash for the following period of 36 months of principal and interest with 7 year amortization and an interest rate of 7%; (iv) a monthly payment of Cash for the following period of 36 months of principal and interest with 4 year amortization and an interest rate of 8%; (v) a balloon payment at the end of year 12 in the approximate amount of $1,090,424; and (vi) a security interest in its Collateral in the same priority as PNC held against its Collateral as of the Petition Date.  Under the Restructured Loan Instrument, Amerigrow LP proposes to make such payments to PNC until the Allowed Class 2 Claim is paid in full, but not to exceed 12 years, at the various amortization and

13

interest rates specified in the Restructured Debt Instrument. Based on the 144 monthly payments and a balloon payment at the end of Year 12, PNC's Restructured Loan Instrument will fully amortize over the loan period of 12 years.

Class LP-3. Allowed Secured Claim of Fifth Third Bank. The Allowed Class LP-3 Secured Claim of Fifth Third Bank shall be satisfied in full by Amerigrow LP's delivery, on the Effective Date, of a Restructured Loan Instrument. For purposes of illustration of Fifth Third Bank's Restructured Loan Instrument under this Plan, Amerigrow LP assumes an Allowed Class 3 Secured Claim in the amount of $1,000,000. The Restructured Loan Instrument shall provide to Fifth Third Bank: (i) a payment of Cash in the amount of $5,167.00 per month for 12 months; (ii) a payment of Cash in the amount of $10,167 per month for the following period of 12 months; (iii) a payment of Cash in the amount of $12,417 per month for the following period of 12 months; (iv) a payment of Cash in the amount of $10,167 per month for the following period of 36 months; and (v) a balloon payment at the end of year 6 in the approximate amount of $400,000; and (vi) a security interest in its Collateral in the same priority as Fifth Third held against its Collateral as of the Petition Date. Under the Restructured Loan Instrument, Amerigrow LP proposes to make such payments to Fifth Third until the Allowed Class LP-3 Claim is paid in full, but not to exceed 6 years, at the various amortization and interest rates specified in the Restructured Debt Instrument. Based on the 72 monthly payments and a balloon payment at the end of Year 6, Fifth Third Bank's Restructured Loan Instrument will fully amortize over the loan period of 6 years.

Class LP-4. Allowed Secured Claim of Wells Fargo. The Allowed Class LP-4 Secured Claim of Wells Fargo shall be satisfied in full by Amerigrow LP's delivery, on the Effective Date, of a Restructured Loan Instrument. For purposes of illustration of Wells Fargo's Restructured Loan Instrument under this Plan, Amerigrow LP assumes an Allowed Class LP-4 Secured Claim in the amount of $2,160,782.73. The Restructured Loan Instrument shall provide to Wells Fargo: (i) a payment of Cash in the amount of $24,442 per month for 36 months; (ii) a payment of Cash in the amount of $33,333 per month for the following period of 24 months; (iii) a payment of Cash in the amount of $60,000 per month for the following period of 12 months; and (iv) a security interest in its Collateral in the same priority as Wells Fargo held against its Collateral as of the Petition Date. Under the Restructured Loan Instrument, Amerigrow LP proposes to make such payments to Wells Fargo until the Allowed Class LP-4 Claim is paid in full, but not to exceed 6 years, at the various amortization and interest rates specified in the Restructured Debt Instrument. Based on the 72 monthly payments, Wells Fargo's Restructured Loan Instrument will fully amortize over the loan period of 6 years.

Class LP-5. Allowed Secured Claim of Alter Moneta. The Allowed Class LP-5 Secured Claim of Alter Moneta shall be satisfied in full by Amerigrow LP's delivery, on the Effective Date, of three (3) Restructured Loan Instruments, as follows.

For purposes of illustration of Alter Moneta's Restructured Loan Instrument No. 1 under this Plan, Amerigrow LP assumes an Allowed Class LP-5 Secured Claim in the amount of $734,689.71. The Restructured Loan Instrument No. 1 shall provide to Alter Moneta: (i) a payment of Cash in the amount of $22,605 per month for 36 months; and (ii) a security interest in its Collateral in the same priority as Alter Moneta held against its Collateral as of the Petition Date. Under the Restructured

Loan Instrument No. 1, Amerigrow LP proposes to make such payments to Alter Moneta until such portion of the Allowed Class LP-5 Claim is paid in full, but not to exceed 3 years, at the various amortization and interest rates specified in the Restructured Debt Instrument.  Based on the 36 monthly payments, Wells Fargo's Restructured Loan Instrument No. 1 will fully amortize over the loan period of 3 years.

For purposes of illustration of Alter Moneta's Restructured Loan Instrument No. 2 under this Plan, Amerigrow LP assumes an Allowed Class LP-5 Secured Claim in the amount of $309,420.61. The Restructured Loan Instrument No. 2 shall provide to Alter Moneta: (i) a payment of Cash in the amount of $6,062 per month for 60 months; and (ii) a security interest in its Collateral in the same priority as Alter Moneta held against its Collateral as of the Petition Date.  Under the Restructured Loan Instrument No. 2, Amerigrow LP proposes to make such payments to Alter Moneta until such portion of the Allowed Class LP-5 Claim is paid in full, but not to exceed 5 years, at the various amortization and interest rates specified in the Restructured Debt Instrument.  Based on the 60 monthly payments, Wells Fargo's Restructured Loan Instrument No. 2 will fully amortize over the loan period of 5 years.

For purposes of illustration of Alter Moneta's Restructured Loan Instrument No. 3 under this Plan, Amerigrow LP assumes an Allowed Class LP-5 Secured Claim in the amount of $181,164. The Restructured Loan Instrument No. 3 shall provide to Alter Moneta: (i) a payment of Cash in the amount of $3,057.00 per month for 72 months; and (ii) a security interest in the Property of the Reorganized Debtors in the same priority as Alter Moneta held against its Collateral as of the Petition Date.  Under the Restructured Loan Instrument No. 3, Amerigrow LP proposes to make such payments to Alter Moneta until such portion of the Allowed Class LP-5 Claim is paid in full, but not to exceed 6 years, at the various amortization and interest rates specified in the Restructured Debt Instrument.  Based on the 72 monthly payments, Wells Fargo's Restructured Loan Instrument No. 3 will fully amortize over the loan period of 6 years.

Class LP-6.  Allowed Secured Claim of Colonial Pacific.  The Allowed Class LP-6 Secured Claim of Colonial Pacific shall be satisfied in full by Amerigrow LP's delivery, on the Effective Date, of a Restructured Loan Instrument.  For purposes of illustration of Colonial Pacific's Restructured Loan Instrument under this Plan, Amerigrow LP assumes an Allowed Class LP-6 Secured Claim in the amount of $193,905.70.  The Restructured Loan Instrument shall provide to Colonial Pacific: (i) a payment of Cash in the amount of $6,062 per month for 36 months; and (ii) a security interest in its Collateral in the same priority as Colonial Pacific held against its Collateral as of the Petition Date.  Under the Restructured Loan Instrument, Amerigrow LP proposes to make such payments to Colonial Pacific until the Allowed Class LP-6 Claim is paid in full, but not to exceed 3 years, at the various amortization and interest rates specified in the Restructured Debt Instrument.  Based on the 36 monthly payments, Colonial Pacific's Restructured Loan Instrument will fully amortize over the loan period of 3 years.

Class LP-7.  Allowed Secured Claim of GECC.  The Allowed Class LP-7 Secured Claim of GECC shall be satisfied in full by Amerigrow LP's delivery, on the Effective Date, of a Restructured Loan Instrument.  For purposes of illustration of GECC's Restructured Loan Instrument under this Plan, Amerigrow LP assumes an Allowed Class LP-7 Secured Claim in the amount of $15,612.48.

The Restructured Loan Instrument shall provide to GECC: (i) a payment of Cash in the amount of $1,952.00 per month for 8 months; and (ii) a security interest in its Collateral in the same priority as GECC held against its Collateral as of the Petition Date. Under the Restructured Loan Instrument, Amerigrow LP proposes to make such payments to GECC until the Allowed Class LP-7 Claim is paid in full, but not to exceed 9 months, at the various amortization and interest rates specified in the Restructured Debt Instrument. Based on the 8 monthly payments, GECC's Restructured Loan Instrument will fully amortize over the loan period of 8 months.

Class LP-8.  Allowed Secured Claim of Turner.  The Allowed Class LP-8 Secured Claim of Turner shall be satisfied in full by Amerigrow LP's delivery, on the Effective Date, of a Restructured Loan Instrument. The Restructured Loan Instrument shall provide to Turner: (i) a payment of Cash in the amount of $2,344.00 per month for 48 months; and (ii) a security interest in its Collateral in the same priority as Turner held against its Collateral as of the Petition Date. Under the Restructured Loan Instrument, Amerigrow LP proposes to make such payments to Turner until the Allowed Class LP-8 Claim is paid in full, but not to exceed 4 years, at the various amortization and interest rates specified in the Restructured Debt Instrument. Based on the 48 monthly payments, GECC's Restructured Loan Instrument will fully amortize over the loan period of 4 years.

Class LP-9.  Allowed Secured Claim of Ford Motor Credit.  The Allowed Class LP-9 Secured Claim of Ford Motor Credit shall be satisfied in full by Amerigrow LP's delivery, on the Effective Date, of a Restructured Loan Instrument. The Restructured Loan Instrument shall provide to Ford Motor Credit: (i) a payment of Cash in the amount of $435.00 per month for 37 months; and (ii) a security interest in its Collateral in the same priority as Ford Motor Credit held against its Collateral as of the Petition Date. Under the Restructured Loan Instrument, Amerigrow LP proposes to make such payments to Ford Motor Credit until the Allowed Class LP-9 Claim is paid in full, but not to exceed 37 months, at the various amortization and interest rates specified in the Restructured Debt Instrument. Based on the 37 monthly payments, Ford Motor Credit's Restructured Loan Instrument will fully amortize over the loan period of 37 months.

Class LP-10.  Allowed Secured Claim of Kubota.  The Allowed Class LP-10 Secured Claim of Kubota shall be satisfied in full by Amerigrow LP's delivery, on the Effective Date, of a Restructured Loan Instrument. The Restructured Loan Instrument shall provide to Kubota: (i) a payment of Cash in the amount of $353.00 per month for 18 months; and (ii) a security interest in its Collateral in the same priority as Kubota held against its Collateral as of the Petition Date. Under the Restructured Loan Instrument, Amerigrow LP proposes to make such payments to Kubota until the Allowed Class LP-10 Claim is paid in full, but not to exceed 18 months, at the various amortization and interest rates specified in the Restructured Debt Instrument. Based on the 18 monthly payments, Kubota's Restructured Loan Instrument will fully amortize over the loan period of 18 months.

Class LP-11.  Allowed Other Secured Claims.  Allowed Other Secured Claims shall be satisfied by each holder of an Allowed Other Secured Claim receiving from Amerigrow LP one or more of the following: (i) the net proceeds of the liquidation of the collateral securing the Class LP-11 Claim, including but not limited to, through a sale of such collateral pursuant to section 363 of the Bankruptcy Code or otherwise; (ii) realization of the indubitable equivalent of the Class LP-11

Claim, including either in the form of Cash equal to the value of such collateral pursuant to section 506(a) of the Bankruptcy Code and/or the return of the collateral securing such Claim in accordance with 11 U.S.C. §1129(b)(2)(A)(iii); or (iii) satisfaction of such Class LP-11 Claim as otherwise authorized by the Code or agreed to by the holder of such Class LP-11 Claim. Such satisfaction shall occur on the later of the Effective Date or the date each respective Class LP-11 Other Secured Claim is Allowed by a Final Order.

Class LP-12.  Allowed Convenience Claims.    Allowed Convenience Claims shall be satisfied in full from the Available Cash within ten (10) days after the Effective Date by Reorganized Debtors.  No Distribution shall be made to holders of Allowed Convenience Claims in this Class LP-12 unless and until all Allowed Administrative Claims, all Allowed Post-Confirmation Administrative Claims, all Allowed Priority Tax Claims and all Allowed Claims in Classes LP-1 through LP-11 have been paid in full, reserved or otherwise resolved, and/or included in or accounted for in the Distribution at issue.

Class LP-13.  Allowed General Unsecured Claims.     Under the terms of the Plan, each holder of an Allowed General Unsecured Claim in Class LP-13 casting a ballot accepting the Plan shall have the option to select Plan Treatment Option No. 1, Plan Treatment Option No. 2 or Plan Treatment Option No. 3, as described below, with regard to the treatment of their Allowed General Unsecured Claim.  Any unsecured creditor who does not make such an election or does not file an accepting ballot or vote on the Plan will be deemed to have elected to receive a distribution under Plan Treatment Option No. 1.  In addition, no Insider of any of the Debtors shall have the option to choose Plan Treatment Option No. 2 or Plan Treatment Option No. 3 with regard to the treatment of its Allowed General Unsecured Claim.

Plan Treatment Option No. 1 - The Plan provides that each holder of an Allowed Unsecured Claim may elect to receive, after payment of Administrative and Priority Claims, a pro rata distribution equal to 100% payable over a period of sixty (60) months beginning ten (10) days from the Effective Date. The pro rata distributions from Reorganized Amerigrow LP shall be in full satisfaction, settlement, release and discharge of such Class LP-13 claimant's respective Allowed Unsecured Claim; or

Plan Treatment Option No. 2 - The Plan provides that each holder of an Allowed Unsecured Claim may elect to receive, after payment of Administrative and Priority Claims, a pro rata distribution equal to 66% payable over a period of thirty (30) months beginning ten (10) days from the Effective Date. The pro rata distributions from Reorganized Amerigrow LP shall be in full satisfaction, settlement, release and discharge of such Class LP-13 claimant's respective Allowed Unsecured Claim; or

Plan Treatment Option No. 3 - The Plan provides that each holder of an Allowed Unsecured Claim may elect to receive, after payment of Administrative and Priority Claims, a pro rata distribution equal to 33% payable over a period of twelve (12) months beginning ten (10) days from the Effective Date. The pro rata distributions from Reorganized Amerigrow LP shall be in full satisfaction, settlement, release and discharge of such Class LP-13 claimant's respective Allowed Unsecured Claim.

No Distribution shall be made to holders of Allowed Unsecured Claims in this Class LP-13 unless and until all Allowed Administrative Claims, all Allowed Post-Confirmation Administrative Claims, all Allowed Priority Tax Claims and all Allowed Claims in Classes LP-1 through LP-11 have been paid in full, reserved or otherwise resolved, and/or included in or accounted for in the Distribution at issue.

Class LP-14.  Allowed Interests.  The holders of Allowed Interests in Amerigrow LP shall receive from the Reorganized Amerigrow LP periodic Distributions, on a pro rata basis, from any remaining Available Cash, provided that, no Distribution shall be made to the holders of Allowed Interests unless and until all Allowed Administrative Claims, all Allowed Post-Confirmation Administrative Claims, all Allowed Priority Tax Claims and all Allowed Claims in Classes LP-1 through LP-13 have been paid in full, reserved or otherwise resolved and/or included in or accounted for in the Distribution at issue.  Subject to the right to receive Distributions hereunder, all Interests in Amerigrow LP shall be extinguished and canceled as of the Effective Date.

Class Corp-1.  Allowed Priority Claims.  Each Allowed Priority Claim shall be paid in full on the later of: (i) the Effective Date; or (ii) the date of a Final Order allowing such Priority Claim.

Class Corp-2.  Allowed Secured Claim of Komatsu.   The Allowed Class Corp-2 Secured Claim of Komatsu shall be satisfied in full by Amerigrow Corp's delivery, on the Effective Date, of a Restructured Loan Instrument.  The Restructured Loan Instrument shall provide to Komatsu: (i) a payment of Cash in the amount of $2,375.00 per month for 31 months; and (ii) a security interest in its Collateral in the same priority as Komatsu held against its Collateral as of the Petition Date.  Under the Restructured Loan Instrument, Amerigrow LP, on behalf of Amerigrow Corp., proposes to make such payments to Komatsu until the Allowed Class Corp-2 Claim is paid in full, but not to exceed 31 months, at the various amortization and interest rates specified in the Restructured Debt Instrument.  Based on the 31 monthly payments, Komatsu's Restructured Loan Instrument will fully amortize over the loan period of 31 months.

Class Corp-3.  Allowed Unsecured Claims.  Allowed Unsecured Claims shall be satisfied by periodic Distributions to the holders of each such Allowed Unsecured Claim on a *pro rata* basis with the holders of all Allowed Unsecured Claims in this Class 3.  The initial Distribution to holders of Allowed Unsecured Claims hereunder shall be made from the Available Cash generated from and constituting property of the Amerigrow Corp Estate within ten (10) days after the Effective Date by Reorganized Debtors and all future Distributions shall be made from the Reorganized Debtors on the respective Distribution Dates.  No Distribution shall be made to holders of Allowed Unsecured Claims in this Class Corp-3 unless and until all Allowed Administrative Claims, all Allowed Post-Confirmation Administrative Claims, all Allowed Priority Tax Claims and all Allowed Claims in Classes Corp-1 and Corp-2 have been paid in full, reserved or otherwise resolved, and/or included in or accounted for in the Distribution at issue.

Class Corp-4.  Allowed Other Secured Claims.  Allowed Other Secured Claims shall be satisfied by each holder of an Allowed Other Secured Claim receiving from Amerigrow Corp. one or more of the following: (i) the net proceeds of the liquidation of the collateral securing the Class Corp-4 Claim, including but not limited to, through a sale of such collateral pursuant to section 363

of the Bankruptcy Code or otherwise; (ii) realization of the indubitable equivalent of the Class Corp-4 Claim, including either in the form of Cash equal to the value of such collateral pursuant to section 506(a) of the Bankruptcy Code and/or the return of the collateral securing such Claim in accordance with 11 U.S.C. §1129(b)(2)(A)(iii); or (iii) satisfaction of such Class Corp-4 Claim as otherwise authorized by the Code or agreed to by the holder of such Class Corp-4 Claim.  Such satisfaction shall occur on the later of the Effective Date or the date each respective Class Corp-4 Other Secured Claim is Allowed by a Final Order.

Class Corp-5.  Allowed Interests.  The holders of Allowed Interests in Amerigrow Corp. shall receive from the Reorganized Amerigrow Corp. periodic Distributions, on a pro rata basis, from any remaining Available Cash, provided that, no Distribution shall be made to the holders of Allowed Interests unless and until all Allowed Administrative Claims, all Allowed Post-Confirmation Administrative Claims, all Allowed Priority Tax Claims and all Allowed Claims in Classes Corp-1 through Corp-4 have been paid in full, reserved or otherwise resolved and/or included in or accounted for in the Distribution at issue.  Subject to the right to receive Distributions hereunder, all Interests in Amerigrow Corp. shall be extinguished and canceled as of the Effective Date.

## ARTICLE V

## EFFECTUATION AND IMPLEMENTATION OF PLAN

On the Effective Date of the Plan, all Assets of the Estates under Section 541 of the Bankruptcy Code or otherwise, including Available Cash, the Litigation Claims and assets that were acquired by the Debtors after the Petition Date, shall: (i) be transferred to, be deemed transferred to, and vested in the respective Reorganized Debtor under the sole control of the respective Reorganized Debtor, free and clear of all liens, claims, encumbrances and interests of any kind except as provided under the Plan; and (ii) continue to be subject to the jurisdiction of the Bankruptcy Court following Confirmation of the Plan until distributed to holders of Allowed Claims and Allowed Interests or otherwise disbursed in accordance with the provisions of the Plan and the Confirmation Order, provided however, that any and all Litigation Claims shall be retained and enforced by the Reorganized Debtors, through the Reorganized Debtors, as a representative of the Estates appointed for such purpose, as provided in and pursuant to Section 1123(b)(3) of the Bankruptcy Code solely for the benefit of holders of Allowed Claims and Allowed Interests hereunder.  **Notwithstanding anything herein to the contrary, confirmation of the Plan shall divest the Debtors of any and all interest in the Assets of the Estates, such that the Debtors shall have no rights or authority in respect of any Assets remaining in the Estates as of the Effective Date, or thereafter vested in the Reorganized Debtors pursuant hereto, including the Available Cash, and Litigation Claims.**

The distributions required under the Plan shall be funded by the Debtors' Cash on hand as of the Effective Date and the Reorganized Debtors' business operations.  In addition, the Debtors shall be authorized to commence or continue litigation on behalf of the estate to recover, *inter alia*, voidable transfers and other claims, if any.

19

1.      MANAGEMENT

After the Effective Date, it is contemplated that the Reorganized Debtors shall continue to be managed by Janet Tomlinson and its consultants.  Reorganized Amerigrow LP shall enter into new management agreement (collectively, the "New Management Agreements") with: (i) Floragem Investments Corp., whose President is Charles W. Tomlinson, III; and (ii) M & S Fin. Corp., whose President is Michael G. Kearney (the "Consultants"), substantially in the form of the management contracts with the Debtors entered into pre-petition.  Pursuant to each New Management Agreement, the Consultants will review the ordinary and usual business affairs of the Reorganized Debtors pertaining to the operation, maintenance and management of the various aspects of the Reorganized Debtors' business, interact with the officers and employees of the Reorganized Debtors and provide, on a regular basis, observations and make such recommendations as are appropriate and necessary in respect of the Reorganized Debtors' business operations.  Under their respective New Management Agreements, in consideration of the management and consulting services rendered, Floragem will be entitled to receive a consulting fee equal to 2.35% of the Reorganized Amerigrow LP's Gross Revenues, and M & S Fin. Corp. will be entitled to receive a consulting fee equal to 1.65% of the Reorganized Amerigrow LP's gross revenues.

2.      ISSUANCE OF NEW MEMBERSHIP INTERESTS

On the Effective Date, the Reorganized Amerigrow LP shall issue Janet Tomlinson, Mulchmaker and Amerigrow Corp., or other entities organized by them, the New Partnership Interests.  The corporate documentation of Amerigrow LP will be amended, if necessary, to (i) authorize the issuance of New Membership Interests; and (ii) provide for the cancellation of all existing Partnership Interests.

On the Effective Date, the Reorganized Amerigrow Corp shall issue Janet Tomlinson and Silvia Kearney or other entities organized by them, the New Equity Interests.  The corporate documentation of Amerigrow Corp will be amended, if necessary, to (i) authorize the issuance of New Equity Interests; and (ii) provide for the cancellation of all existing Equity Interests.

3.      DELIVERY OF THE RESTUCTURED LOAN INSTRUMENTS

On the Effective Date, the Reorganized Debtors shall deliver the Restructured Loan Instruments to holders of Claims in Classes LP-2, LP-3, LP-4, LP-5, LP-6, LP-7, LP-8, LP-9, LP-10 and Corp-2 in full satisfaction of their respective Allowed Secured Claims.

4.      PLAN FUNDING

The Plan will be funded with the Available Cash upon and following the Effective Date, the Reorganized Debtors' operations and such other assets as may be recovered by the Reorganized Debtors under the Plan.

5.      MISCELLANEOUS

Except to the extent otherwise provided under the Plan or the Confirmation Order, upon the Effective Date, all pre-Petition Date agreements (other than assumed contracts and third party guaranties and indemnities of the Debtors' obligations), credit agreements, pre-Petition Date loan documents and post-Petition Date loan documents to which the Debtors is a party, and all lien claims and other evidence of liens against the Debtors, shall be deemed to be cancelled and of no further force and effect, without any further action on the part of the Debtors. The holders of, or parties to, such cancelled instruments, agreements, securities and other documentation will have no remaining rights arising from or relating to such documents or the cancellation thereof, except the rights provided pursuant to the Plan and the Confirmation Order and any rights that, by the terms of the applicable agreement, survive the termination of such agreement.

Notwithstanding anything to the contrary in the Bankruptcy Rules providing for earlier closure of the Chapter 11 Case, when all Disputed Claims against the Debtors have become Allowed Claims or have been disallowed by Final Order, and all remaining assets of the Reorganized Debtors have been liquidated and converted into Cash (other than those assets abandoned), and such Cash has been distributed in accordance with the Plan, or at such earlier time as the Reorganized Debtors deem appropriate, the Reorganized Debtors shall file a final accounting with the Bankruptcy Court, together with a final report, and shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE VI

## THE REORGANIZED DEBTORS

In addition, the Reorganized Debtors will have authority to take all actions necessary to: (a) investigate, hold, manage, protect, administer, collect, sell, liquidate, prosecute, transfer, resolve, settle, adjust, invest, distribute, or otherwise dispose of any Reorganized Debtor Assets, including but not limited to the Litigation Claims; (b) investigate and reconcile Claims and contest objectionable Claims and Disputed Claims; (c) make all Distributions to be funded under the Plan; (d) pay all necessary expenses incurred in connection with the duties and responsibilities of the Reorganized Debtors under the Plan; (e) administer, implement and enforce all provisions of the Plan; (f) file tax returns and make other related corporate filings; (g) administer the Plan and the assets of the Reorganized Debtors; (h) abandon any Reorganized Debtor Assets or Assets of the Estates, and (i) to invest Cash in accordance with Section 345 of the Bankruptcy Code or otherwise as permitted by order of the Bankruptcy Court, (j) to purchase and carry all insurance policies and pay all premiums and costs deemed necessary and advisable, and (k) undertake such other responsibilities as are reasonable and appropriate in connection with the Plan.

On behalf of the Reorganized Debtors and pursuant to Section 1123(b)(3)(B) of the Code, the Reorganized Debtors are and shall be appointed a representative of the Estates for the benefit of the holders of Allowed Claims and Allowed Interests and shall have the exclusive right to prepare, file, assert, commence and prosecute, or continue to prosecute in the case of existing actions, any and all Litigation Claims, and shall be substituted as the real party in interest in any actions commenced by or against the Debtors. The Reorganized Debtors shall prosecute or defend, as appropriate, such Litigation Claims through final judgment, any appeals deemed necessary and appropriate by the

21

Reorganized Debtors and the Reorganized Debtors shall have the power and authority (A) to enter into such settlements as the Reorganized Debtors deem to be in the best interest of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (B) to abandon, dismiss and/or decide not to prosecute any such Litigation Claims if the Reorganized Debtors deem such action to be in the best interest of creditors.

On the Effective Date of the Plan, or as soon thereafter as possible, the Reorganized Debtors shall establish a Disputed Claims Fund for the Reorganized Debtors. The Reorganized Debtors shall be authorized to make Distributions to the holders of Allowed Claims and Allowed Interests pursuant to the terms of the Plan, provided that the Reorganized Debtors maintain the Disputed Claims Fund, if applicable.

To the extent there exist as of the Effective Date Disputed Claims in any Class, the Reorganized Debtors shall reserve on the books and records of the Reorganized Debtors from any Distribution an amount equal to the pro rata portion of such Distribution to which such Disputed Claim would be entitled if allowed in the amount asserted by the holder of such Disputed Claim. If a Disputed Claim is allowed, in part or in full, then the Reorganized Debtors shall distribute to the holder of any such Claim an amount equal to such Claimant's pro rata share, based on such Allowed Claim, of all Distributions previously made to holders of Allowed Claims in the Class of Claims at issue. The balance, if any, of the reserve for such Disputed Claim, including in the event the Disputed Claim is disallowed in its entirety, shall be deemed Available Cash for use by the Reorganized Debtors under the Plan. Notwithstanding anything herein to the contrary, no interest shall accrue or be payable on the reserve in respect of any Disputed Claims.

Notwithstanding anything to the contrary in the Plan or in the Disclosure Statement, the provisions of the Disclosure Statement and the Plan that permit the Reorganized Debtors to enter into settlements and compromises of any Litigation Claims shall not have, and are not intended to have, any *res judicata* effect with respect to any Litigation Claims that are not otherwise treated under the Plan and shall not be deemed a bar to asserting such Litigation Claims, regardless of whether or to what extent such Litigation Claims are specifically described in the Plan or Disclosure Statement relating hereto. Unless any of the Litigation Claims are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or by Final Order of the Bankruptcy Court, all such Litigation Claims are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to the Litigation Claims upon or after confirmation or consummation of the Plan.

Furthermore, notwithstanding any provision or interpretation to the contrary, nothing in the Plan or the Confirmation Order, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment or bar, in whole or in part, of or to any recovery rights or any other claim, right or cause of action, including Litigation Claims, possessed by the Debtors or the Debtors' Estates prior to the Effective Date.

In the event that the Bankruptcy Court, or any other court of competent jurisdiction, determines that the assignment of any claim, right or cause of action, including without limitation,

the Litigation Claims to the Reorganized Debtors pursuant to this Plan is invalid or does not grant to the Reorganized Debtors the standing and all other rights necessary to pursue such claim, right or cause of action, then in such case the Reorganized Debtors shall be deemed appointed as the representative of the Estates for purposes of enforcing and pursuing such claim, right or cause of action, including without limitation, the Litigation Claims, and the proceeds thereof shall be distributed in accordance with term of the Plan.

## ARTICLE VII

## INJUNCTION AND OTHER LIMITATIONS OF LIABILITY

1.      **Applicability of Injunction/Stay as to Assets of the Estates/Exculpation**

Unless otherwise provided herein, all injunctions or stays applicable to the Assets of the Estates, whether pursuant to Section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect with respect to the Reorganized Debtors and assets of the Reorganized Debtors.  In addition, the Reorganized Debtors shall have the right to invoke the provisions of the Bankruptcy Code made applicable by the Plan to the Reorganized Debtors and all of the Bankruptcy Rules until the entry of a final decree closing this Chapter 11 Case.

Except as otherwise specifically provided in the Plan or the Confirmation Order, all Persons who have held, hold or may hold Claims, rights, causes of action, liabilities or any equity Interests with respect to the Debtors or their Assets based upon any act or omission, transaction or other activity of any kind or nature that occurred or arose prior to the Effective Date, regardless of the filing, lack of filing, allowance or disallowance of such a Claim or Interest and regardless of whether such Person has voted to accept the Plan and any successors, assigns or representatives of the foregoing, will be precluded and permanently enjoined on and after the Effective Date from, on account of such Claims, rights, causes of action, liabilities or any equity Interests, (a) commencing or continuing in any manner any action or other proceedings against the Reorganized Debtors or any Reorganized Debtor Assets, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Reorganized Debtors or any Reorganized Debtor Assets, (c) creating, perfecting or enforcing any encumbrance of any kind against the Reorganized Debtors or any Reorganized Debtor Assets, and (d) asserting any Claims that are released hereby.

Neither the Debtors nor any Professionals engaged by the Debtors shall have or incur liability to any Person, including the holder of any Claim or Interest, for any act taken or omissions made in connection with the filing of this Chapter 11 Case, this Chapter 11 Case or the filing, negotiating, prosecuting, administering, formulating, implementing, confirming or consummating the Plan or the Assets to be distributed under the Plan, except to the extent that such act or failure to act constitutes gross negligence, willful misconduct or fraud.  Further, neither the Reorganized Debtors shall incur any liability to the Debtors, the holders of Claims and/or Interests, or to any person or entity for any act or failure to act in furtherance of the rights and obligations under the

23

Plan, except to the extent that such act or failure to act constitutes gross negligence, willful misconduct or fraud.

In addition, except as set forth in this Article VII above, the Plan does not release or waive any claims or causes of action, including Litigation Claims, as described in the Disclosure Statement.

## ARTICLE VIII

## <u>OBJECTIONS TO CLAIMS</u>

The Debtors and/or the Reorganized Debtors, as applicable, shall have the authority to file, settle, compromise, withdraw, arbitrate or litigate to judgment Objections to Claims pursuant to applicable procedures established by the Bankruptcy Code, the Bankruptcy Rules and this Plan. Except with respect to Administrative Claims and Rejection Claims, Objections to Claims must be filed by the Claim Objection Deadline, as may be extended by the Bankruptcy Court from time to time.

An Objection to the allowance of a Claim or Interest shall be in writing and may be filed with the Bankruptcy Court by the Debtors and/or the Reorganized Debtors, as applicable, at any time on or before the Claim Objection Deadline, unless another date is established by the Bankruptcy Court or this Plan. The failure by the Debtors to object to any Claim or Interest for voting purposes shall not be deemed a waiver of the Debtors' right to object to, or re-examine, any such Claim in whole or in part.

To the extent that an Objection to a Claim is filed and remains unresolved as of the Effective Date, distribution on such Disputed Claim shall not be made unless and until a Final Order is entered allowing such Disputed Claim. The Reorganized Debtors shall account for all Disputed Claims at such time as he makes a Distribution under this Plan through the Disputed Claims Fund. On the Effective Date, the Reorganized Debtors shall prosecute in the place of the Debtors any and all outstanding Objections to Claims.

## ARTICLE IX

## <u>EXECUTORY CONTRACTS AND LEASES</u>

### A.      <u>Assumption of Executory Contracts and Unexpired Leases.</u>

All executory contracts and unexpired leases set forth on Exhibit A shall be deemed assumed and assigned as of the Effective Date, except for any executory contract or unexpired lease: (i) that has been rejected in accordance with a Final Order entered before the Confirmation Date; or (ii) as to which a motion to reject has been filed with the Bankruptcy Court before the Confirmation Date.

### B.      <u>Rejection of Executory Contracts and Unexpired Leases.</u>

All executory contracts and unexpired leases not previously assumed or rejected by the Debtors under this Plan or Section 365 of the Bankruptcy Code with the approval of the Bankruptcy Court are hereby rejected by the Debtors as of the Confirmation Date. The Confirmation Order shall constitute an Order of the Bankruptcy Court approving all such rejections hereunder as of the Effective Date. Any Claim for damages arising from any such rejection must be filed within 30 days after the mailing of notice of the entry of the Confirmation Order or such Claim shall be forever barred, shall not be enforceable against the Debtors, their Estates, or the Reorganized Debtors, and the holder of such Claims shall receive no distribution under this Plan or otherwise on account of such Claims.

## ARTICLE X

### DISTRIBUTIONS

**A.      Distributions by the Reorganized Debtors**.

Subject to the terms of the Plan, all Distributions under this Plan shall be made by the Reorganized Debtors. The Reorganized Debtors may employ or contract with other entities to assist in or make the Distributions required by this Plan without further order of the Bankruptcy Court. Distributions to any holder of an Allowed Claim shall be allocated first to the principal portion of any such Allowed Claim, and, only after the principal portion of any such Allowed Claim is satisfied in full, to any portion of such Allowed Claim comprising interest (but solely to the extent that interest is an allowable portion of such Allowed Claim pursuant to this Plan or otherwise). All payments shall be made in accordance with the priorities established in the Bankruptcy Code unless otherwise provided in this Plan or agreed to with the payee.

**B.      Delivery of Distributions in General**.

Distributions to holders of Allowed Claims shall be made: (a) at the addresses set forth in the proofs of Claim filed by such holders; (b) at the addresses set forth in any written notices of address change delivered to the Debtors prior to the Effective Date or the Reorganized Debtors after the Effective Date; or (c) at the addresses reflected in the Schedules relating to the applicable Allowed Claim if no proof of Claim has been filed and the Debtors or Reorganized Debtors has not received a written notice of a change of address. The Reorganized Debtors may require any creditor entitled to a Distribution under the Plan to furnish to the Reorganized Debtors their, his or her employer or taxpayer identification number (the "TIN") assigned by the Internal Revenue Service. The Reorganized Debtors may condition any Distribution under the Plan on the receipt of such TIN. If any creditor entitled to a Distribution hereunder fails to provide the Reorganized Debtors with a requested TIN within forty-five (45) days after the request thereof by the Reorganized Debtors, then such failure shall be deemed to be a waiver of any future Distributions, including the right to receive any future Distributions, and such waived Distributions shall constitute and be treated as Unclaimed Property.

**C.**     **Cash Payments**.

Cash payments to be made pursuant to this Plan shall be made by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Reorganized Debtors.

**D.**     **Interest on Claims**.

Unless otherwise specifically provided for in this Plan or the Confirmation Order or required by applicable bankruptcy law, post-Petition Date interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

**E.**     **No De Minimus Distributions**.

Other than in the final Distribution, no payment of Cash in an amount of less than $10 shall be made on account of any Allowed Claim. Such undistributed amount will instead be made part of the Available Cash for use in accordance with this Plan.

**F.**     **Face Amount**.

Unless otherwise expressly set forth herein with respect to a specific Claim or Class of Claims, for the purpose of the provisions of this Article X, the "Face Amount" of a Disputed Claim means the amount set forth on the proof of Claim unless the Disputed Claim has been estimated for distribution purposes or, in the alternative, if no proof of Claim has been timely filed or deemed filed, zero (0).

**G.**     **Failure to Negotiate Checks**.

Checks issued in respect of Distributions under this Plan shall be null and void if not negotiated within 90 days after the date of issuance. Any amounts returned to the Reorganized Debtors in respect of such non-negotiated checks shall be held by the Reorganized Debtors, until such time as it qualifies for Unclaimed Property or if earlier a request for reissuance is received by the Reorganized Debtors. Requests for reissuance of any such check shall be made in writing, directly to the Reorganized Debtors by the holder of the Allowed Claim with respect to which such check originally was issued. All such amounts that become Unclaimed Property and all Claims in respect of void checks and the underlying distributions shall be forever barred, estopped and enjoined from assertion in any manner against the Reorganized Debtors.

**H.**     **Unclaimed Property**.

If any Distribution of funds pursuant to the Plan remains unclaimed for a period of ninety (90) days after it has been delivered to the holder entitled thereto, then the amount of such Distribution unclaimed shall be deemed waived and remain with the Reorganized Debtors.

A distribution of funds is unclaimed, if, without limitation, the holder of a Claim entitled thereto does not cash a check or returns a check or if the check mailed to the holder at the address set forth in the Debtors' Schedules or set forth in a proof of Claim filed by such holder is returned by the United States Postal Service or any other country's postal service as undeliverable.  Any funds unclaimed for the period described herein shall be deemed waived by the holder of the Claim and shall remain with the Reorganized Debtors.  Except as otherwise expressly provided in the Plan, the Reorganized Debtors may setoff or recoup against any Claim and the payments made pursuant to this Plan in respect of such Claim, Claims of any nature whatsoever that the Reorganized Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any Claim that the Reorganized Debtors may have against the holder of such Claim.

Unless the holder of a Claim advises the Reorganized Debtors or their attorneys in writing of a change of address, all distributions or notices shall be sent to the holder at his address as stated in the Debtors' Schedules, as stated in a properly filed proof of Claim or to such creditor's attorney of record in this Chapter 11 Case.  The Reorganized Debtors shall have no obligation to locate the holder of a Claim whose distribution or notice is properly mailed but nevertheless returned.

**I.**     **No Payment or Distribution Pending Allowance**.

All references to Claims and Interests and amounts of Claims and Interests refer to the amount of the Claim or Interest allowed by operation of law, Final Order of the Bankruptcy Court or this Plan.  Accordingly, notwithstanding any other provision in this Plan, no payment or distribution shall be made on account of or with respect to any Claim or Interest to the extent it is a Disputed Claim or Disputed Interest, unless and until the Disputed Claim or Disputed Interest becomes an Allowed Claim or an Allowed Interest, as applicable.  No partial distributions will be made while an Objection is pending to part or all of a Claim or Interest.

**J.**     **Disputed Distributions**.

If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Reorganized Debtors may, in lieu of making such Distribution to such holder, make such Distribution (or any amount estimated pursuant to Section 502(c) of the Bankruptcy Code) into the Disputed Claims Fund until the disposition thereof shall be determined by Final Order of the Bankruptcy Court or by written agreement among the interested parties to such dispute.

**K.**     **Estimation of Disputed Claims**.

In order to effectuate Distributions pursuant to this Plan and avoid undue delay in the administration of the Estates, the Reorganized Debtors shall have the right, at any time, to seek an order of the Bankruptcy Court, after notice and a hearing (which notice may be limited to the holder of such Disputed Claim and which hearing may be held on an expedited basis), estimating a Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code, irrespective of whether the Reorganized Debtors has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  All of these objection and resolution procedures are cumulative and not

27

necessarily exclusive of one another.  In addition to seeking estimation of Claims as provided herein, the Reorganized Debtors may resolve or adjudicate any Disputed Claim in the manner in which the amount of such Claim and the rights of the holder of such Claim would have been resolved or adjudicated if the Chapter 11 Case had not been commenced, subject only to the terms of this Plan.

**L.    Resolution of Disputed Claims and Interests**.

Subject to the terms of the Plan, the Debtors and/or the Reorganized Debtors, as applicable, shall have the right (a) to initiate and prosecute any objections to Claims against the Debtors or the Estates, (b) to request estimation of each such Claim, (c) to litigate any objection to Final Order, (d) to settle or to compromise any Claim, or (e) to withdraw any objection to any Claim (other than an Allowed Claim or a Claim that is deemed to be allowed pursuant to this Plan or a Final Order).

**M.    Distributions in Complete Satisfaction**.

The Distributions and rights provided under this Plan shall be in complete satisfaction, discharge and release, effective as of the Effective Date, of all Claims against and Interests in the Debtors' Estates and all liens upon any Reorganized Debtor Assets.  The holders of liens satisfied, discharged and released under this Plan shall execute and deliver, or cause to be executed and delivered, any and all documentation reasonably requested by the Reorganized Debtors evidencing the satisfaction, discharge and release of such liens.

**N.    Discharge.**

Commencing on the Effective Date, except as otherwise provided, all holders of Claims and Interests shall be precluded forever from asserting against the Debtors' Estates, the Reorganized Debtors or their respective assets, any other or further liabilities, lien obligations, claims or equity interest, arising or existing prior to the Effective Date, that was or could have been the subject of any Claim or Interest, whether or not allowed. As of the Effective Date, the Reorganized Debtors shall be discharged, released from and shall hold the assets received or retained by and pursuant to this Plan, free and clear of all liabilities, liens, claims or obligations or other claims of any nature of the Debtors or their Estates except as otherwise provided herein.

**O.    Compliance with Tax Requirements**.

In connection with this Plan and the distributions made in accordance thereto, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit and all distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  The Reorganized Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

28

## ARTICLE XI

### PROVISIONS TO INVOKE CRAMDOWN PROCEEDINGS IF NECESSARY

If all of the applicable requirements of Section 1129(a) of the Bankruptcy Code are met other than Paragraph 8 of said such section which requires that all Impaired Classes accept the Plan, the Debtors will then seek confirmation pursuant to Section 1129(b) of the Bankruptcy Code, which is commonly referred to as the "cram down" provision. For the purposes of seeking Confirmation under the cram down provision of the Bankruptcy Code, should that alternative means of Confirmation prove to be necessary, the Debtors reserve the right to modify or vary the terms of the Plan with regard to the Allowed Claims of any rejecting classes, so as to comply with the requirements of Section 1129(b).

## ARTICLE XII

### EFFECT OF CONFIRMATION

This Plan, when approved and confirmed by the Bankruptcy Court, shall be deemed binding on the Debtors and all creditors and all parties in interest and their successors and assigns in accordance with Section 1141 of the Bankruptcy Code.

In addition, except as otherwise expressly provided in the Plan, all persons, entities and parties in interest who have held, hold or may hold Claims are permanently enjoined, from and after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of such Claim against the Debtors, Estates or the Reorganized Debtors; (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtors, the Estates, or the Reorganized Debtors; (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtors, the Estates, the Reorganized Debtors, or against the Assets, the Reorganized Debtor Assets, property or interests in property of the Debtors, the Estates, or the Reorganized Debtors, with respect to any such Claims; and (iv) asserting any defense or right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors, the Estates, or the Reorganized Debtors or against the Assets, the Reorganized Debtor Assets, property or interests in property of the Debtors, the Estates, or the Reorganized Debtors, with respect to any such Claim.

## ARTICLE XIII

### AMENDMENT AND MODIFICATION

The Debtors may alter, amend, or modify this Plan under Section 1127 of the Bankruptcy Code or as otherwise permitted at any time before the Effective Date. After the Effective Date and before the substantial consummation of this Plan, and in accordance with the provisions of Section 1127(b) of the Bankruptcy Code and the Bankruptcy Rules, the Reorganized Debtors may, so long as the treatment of holders of Claims under this Plan is not adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in this

Plan, the Disclosure Statement, or the Confirmation Order and any other matters as may be necessary to carry out the purposes and effects of this Plan; provided, however, that prior notice of such proceedings shall be served in accordance with Bankruptcy Rule 2002.

## ARTICLE XIV

## REVOCATION

The Debtors reserve the right, at any time prior to the substantial consummation (as that term is defined in Section 1101(2) of the Bankruptcy Code) of this Plan, to revoke or withdraw this Plan. If this Plan is revoked or withdrawn or if the Confirmation Date or the Effective Date does not occur, this Plan shall be null and void and have no force and effect.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims or interests by or against the Debtors or any other Person, constitute an admission of any fact or legal conclusion by the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

## ARTICLE XV

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain after the Effective Date exclusive jurisdiction of all matters arising out of, arising in or related to, the Chapter 11 Case to the fullest extent permitted by applicable law, including, without limitation, jurisdiction to:

(a)     determine all controversies and disputes arising under or in connection with the Plan and all agreements referred to in the Plan, including but not limited to, all Litigation Claims brought by the Debtors or the Reorganized Debtors.

(b)     allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest (whether filed before or after the Effective Date and whether or not contingent, disputed or unliquidated), including the compromise, settlement and resolution of any request for payment of any Administrative Claim or Priority Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the resolution of any dispute as to the treatment necessary to reinstate a Claim pursuant to this Plan, and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any objection to such Claim or Interest (to the extent permitted under applicable law);

(c)     grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for services provided on or before the Effective Date;

30

(d)     hear and determine motions, applications, adversary proceedings, contested matters and other litigated matters pending on, filed or commenced after the Effective Date, including proceedings with respect to the rights and Claims of the Reorganized Debtors to recover property under Sections 542, 543 or 553 of the Bankruptcy Code, or to bring or continue prosecuting any Litigation Claims, or otherwise to collect or recover on account of any claim or Litigation Claim that the Reorganized Debtors may have;

(e)     determine and resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtors is a party or with respect to which the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(f)     ensure that all payments due under this Plan and performance of the provisions of this Plan are accomplished as provided herein, and resolve any issues relating to distributions to holders of Allowed Claims pursuant to the provisions of this Plan;

(g)     construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with Section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and consummation of this Plan and all contracts, instruments, releases, indentures and other agreements or documents that are part of the Reorganized Debtors;

(h)     determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of this Plan (and all Exhibits to this Plan) or the Confirmation Order, including the indemnification and injunction provisions set forth in and contemplated by this Plan or the Confirmation Order, or any Person's rights arising under or obligations incurred in connection therewith;

(j)     consider any modification of the Plan under Section 1127 of the Bankruptcy Code;

(k)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of this Plan or the Confirmation Order;

(l)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(m)     determine any other matters that may arise in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection

with this Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in this Plan;

(n)    hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code;

(o)    continue to enforce the automatic stay through the date of the final Distribution hereunder;

(p)    hear and determine: (i) disputes arising in connection with the interpretation, implementation or enforcement of this Plan and the Confirmation Order; or (ii) issues presented or arising under this Plan and Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with this Plan or the Confirmation Order;

(q)    shorten or extend, for cause, the time fixed for performance of any act or thing under this Plan or the Confirmation Order, on notice or ex-parte, as the Bankruptcy Court shall determine to be appropriate;

(r)    enter any order, including injunctions, necessary to enforce the title, rights and powers of the Reorganized Debtors, and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Bankruptcy Court may deem necessary;

(s)    review any action taken or not taken by the Reorganized Debtors and to appoint a successor to the Reorganized Debtors, if necessary;

(t)    adjudicate any settlements pursuant to Bankruptcy Rule 9019, if required under this Plan or the Confirmation Order and all other matters contained herein;

(u)    enter a Final Decree closing the Chapter 11 Case or converting this case to a chapter 7 case; and

(v)    enter any orders necessary to effectuate the Confirmation Order and the Plan.

Failure of Bankruptcy Court to Exercise Jurisdiction.  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Reorganized Debtors, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## ARTICLE XVI

## MISCELLANEOUS PROVISIONS

1.      <u>Substantial Consummation of Plan</u>.  For purposes of any future analysis regarding, *inter alia*, appellate issues, modification of Plan, administration of the Plan and jurisdiction of the Bankruptcy Court, this Plan shall be deemed substantially consummated upon the completion of the initial Distribution required under the Plan to be made on or before ten (10) days after the Effective Date.

2.      <u>Confirmation Order Controls.</u>  To the extent the Disclosure Statement or any agreement entered into between or among the Debtors, the Reorganized Debtors or any third party, is inconsistent with the Plan, the Plan shall control.  To the extent that the Plan, the Disclosure Statement or any agreement entered into between or among the Debtors, the Reorganized Debtors or any third party, is inconsistent with the Confirmation Order, the Confirmation Order shall control.

3.      <u>Headings</u>.  The headings of the Articles, paragraphs and subparagraphs herein are inserted for convenience only and shall not affect the interpretation of the Plan.

4.      <u>Successors and Assigns</u>.  This Plan and all of the provisions thereof shall be binding upon and inure to the benefit of the Debtors, all creditors and interested parties and their respective heirs, executors, administrators, successors and assigns.

5.      <u>Notices</u>.  Any notice required or permitted to be provided under this Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid.

6.      <u>Exemption from Taxes</u>.  Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security or the making or delivery of any instrument of transfer under this Plan may not be taxed under any law imposing a stamp tax, use tax, sales tax or similar tax.  Any sale of any Asset occurring before, after or upon the Effective Date shall be deemed to be in furtherance of this Plan.

7.      <u>Binding Effect of Plan</u>.  The provisions of this Plan, Confirmation Order and Plan Documents shall be binding upon and inure to the benefit of the Debtors, the Estates, any holder of any Claim or Interest treated herein or any Person named or referred to in this Plan, and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agent, officers and directors, and, as to the binding effect, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by this Plan or Confirmation Order.

8.      <u>Final Order</u>.  Except as otherwise expressly provided in this Plan, any requirement in this Plan for a Final Order may be waived by the Debtors or, after the Effective Date, the Reorganized Debtors upon written notice to the Bankruptcy Court.  No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

33

9.    <u>Business Days</u>.  If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

10.    <u>Severability of Plan Provisions</u>.  If prior to Confirmation any term or provision of this Plan that does not govern on appeal the treatment of Claims or Interests is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

11.    <u>Governing Law</u>.  EXCEPT TO THE EXTENT THAT THE BANKRUPTCY CODE OR BANKRUPTCY RULES OR OTHER FEDERAL LAWS ARE APPLICABLE, AND SUBJECT TO THE PROVISIONS OF ANY CONTRACT, INSTRUMENT, RELEASE, INDENTURE OR OTHER AGREEMENT OR DOCUMENT ENTERED INTO IN CONNECTION WITH THIS PLAN,  THE CONSTRUCTION, IMPLEMENTATION AND ENFORCEMENT OF THIS PLAN AND ALL RIGHTS AND OBLIGATIONS ARISING UNDER THIS PLAN SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF FLORIDA, WITHOUT GIVING EFFECT TO CONFLICTS OF LAW PRINCIPLES WHICH WOULD APPLY THE LAW OF A JURISDICTION OTHER THAN THE STATE OF FLORIDA OR THE UNITED STATES OF AMERICA.

12.    <u>Filing of Additional Documents</u>.  On or before substantial consummation of this Plan, the Debtors shall issue, execute, deliver, and file with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of this Plan or any Plan Document, including by making such supplemental disclosures or notices as any proponent deems useful.

13.    <u>Time</u>.  Unless otherwise specified herein, in computing any period of time prescribed or allowed by this Plan, the day of the act or event from which the designated period begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of next succeeding day that is a Business Day.  Otherwise, the provisions of Bankruptcy Rule 9006 shall apply.

14.    <u>Saturday, Sunday or Legal Holiday</u>.  If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or

34

the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

15.   <u>No Attorneys' Fees</u>.  No attorneys' fees will be paid by the Debtors with respect to any Claim or Interest, except as expressly specified herein or allowed by a Final Order of the Bankruptcy Court.

16.   <u>Preservation of Rights of Setoff</u>.  The Debtors or the Reorganized Debtors, as the case may be, may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtors may have had against the holder of such Claims; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claim that the Debtors or the Reorganized Debtors may have against such holder.

17.   <u>Defenses with Respect to Unimpaired Claims</u>.  Except as otherwise provided in this Plan, nothing shall affect the rights and legal and equitable defenses of the Debtors with respect to any unimpaired Claim, including all rights in respect of legal and equitable defenses to setoffs or recoupments against unimpaired Claims.

18.   <u>No Injunctive Relief</u>.  No Claim or Interest shall under any circumstances be entitled to specific performance or other injunctive, equitable, or other prospective relief.

19.   <u>No Admissions</u>.  Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtors with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of any classification of any Claim or Interest.

20.   <u>Entire Agreement</u>.  This Plan sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents.  The Reorganized Debtors shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

21.   <u>No Pre-Payment from Insurance Proceeds.</u>  If and to the extent the Reorganized Debtors incur a loss relating to the Reorganized Debtor Assets and such losses are covered by insurance, such insurance proceeds shall be utilized to purchase replacement equipment and shall not be utilized to pre-pay any portion of any Claims in Classes LP-3, LP-4, LP-5, LP-6, LP-7, LP-8, LP-9, LP-10, LP-11, Corp-2 and Corp-3 hereunder.  The holder of any such Allowed Secured Claim shall receive a replacement lien on the replacement equipment in lieu any insurance proceeds arising from such Collateral.

## ARTICLE XVII

## <u>CONFIRMATION REQUEST</u>

Classes LP-14 and Corp-5 are not expected to receive any Distribution on account of their Claims and Interests under the Plan and are therefore deemed to have rejected this Plan.  The Debtors therefore request that the Bankruptcy Court confirm this Plan under the cramdown provisions of Section 1129(b) of the Bankruptcy Code with respect to Classes LP-14 and Corp-5, as well as with respect to any other Class that does not vote to accept this Plan on the basis that this Plan is fair and equitable, and does not discriminate unfairly, with respect to each Class of Claims or Interests that is Impaired under, and has not accepted, this Plan.

## ARTICLE XVIII

## <u>CONCLUSION</u>

The aforesaid provisions shall constitute the Joint Plan of Reorganization of the Debtors. This Plan, when approved and confirmed by the Bankruptcy Court, shall be deemed binding on the Debtors and all creditors and all parties in interest and their successors and assigns in accordance with Section 1141 of the Bankruptcy Code.

Respectfully submitted this 2nd day of March 2010.


AMERIGROW RECYCLING – DELRAY, LIMITED PARTNERSHIP

By: _____
      Janet Tomlinson, President of Amerigrow Corp., General Partner

AMERIGROW RECYCLING CORP.

By: _____
      Janet Tomlinson, President


GENOVESE JOBLOVE & BATTISTA, P.A.



By: _____/s/   Heather L. Harmon_____
        Heather L. Harmon, Esq.
        Fla. Bar No. 013192
        hharmon@gjb-law.com
        Michael L. Schuster, Esq.
        Florida Bar No. 57119
        mschuster@gjb-law.com
        100 S.E. 2nd Street, 44th Floor
        Miami, FL 33131
        Tel. (305) 349-2300
        Fax. (305) 349-2310

Attorneys for the Debtors and
Debtors in Possession

In re Amerigrow Recycling - Delray, Limited Partnership, et al.

List of Executory Contracts and Unexpired Leases to be Assumed

| LEASES/CONTRACTS | Address | City | State | Zip | Property/Service | Proposed Cure |
|---|---|---|---|---|---|---|
| James Schry | 10300 W. Atlantic Ave | Delray Beach | FL | 33446 | Real Property lease for 5 adjacent acres | $ - |
| Konica Minolta | 21146 Network Place | Chicago | IL | 30376 | C250 Printer | $ - |
| Qquest | PO Box 860 | Sandy | UT | 94091 | Timeclock | $ - |
| CompuPay | 415 Duke Dr., Suite 345 | Franklin | TN | 37067 | Payroll Processing | $ - |
| First Data | PO Box 660 | Hagerstown | MD | 21740 | Credit Card Processing Fees | $ - |
| Secure Net Systems | 356 SW 12 Avenue | Deerfield Beach | FL | 33442 | Domain Pointer | $ - |
| Dolphin Capital | 2061 N. Morley Street | Moberly | MO | 65270 | Water Machines | $ - |
| Sprint/Nextel | PO Box 105243 | Atlanta | GA | 30348 | Nextel Phones | $ 3,806.00 |
| GE Commercial Finance Fleet Services | Three Capital Drive | Eden Prairie | MN | 55344 | Electronic Fuel Cards | $ 2,936.75 |
| Sunn Security | 1025 NW 17th Avenue A-1 | Delray Beach | FL | 33445 | Security/Fire Monitoring | $ - |
| Pitney Bowes | PO Box 856042 | Louisville | KY | 40285 | Postage Machine | $ 10.00 |
| Nuvox | PO Box 580541 | Charlotte | NC | 28258 | Telephone Lines | $ - |
| PC Lan Techs | 1622 Latham Road | West Palm Beach | FL | 33409 | Computer Networks | $ - |
| Go Green Products and Services | 1818 Hammock Drive | Coconut Creek | FL | 33063 | Sales | $ - |
| FIRST Insurance Funding Corp. | 450 Skokie Blvdm Suite 100 | Northbrook | IL | 60065 | Insurance | $ - |
| Blue Cross Blue Shield | PO Box 105358 | Atlanta | GA | 30348 | Health Insurance | $ - |
| Florida Combined Life-Blue Dental | PO Box 769569 | Roswell | GA | 30076 | Dental Insurance | $ - |
| Palm Beach Sheriff's Office | PO Box 24681 | West Palm Beach | FL | 33409 | Permit | $ - |
| Euler Hermes ACI | 800 Red Brook Blvd. | Owings Mills | MD | 21117 | Accounts Receivable Insurance | $ - |
| Discrete Wireless, Inc. | 1327 Northmeadow Pkwy, Suit | Roswell | GA | 30076 | Telecommunications | $ - |
| Cardinal Scale Manufacturing, Inc. | 3215 NW 10th Terrace, Suite 2 | Oakland Park | FL | 33309 | Scale Service Agreement | $ - |
| Monison and VMG Truck and Trailer Leasing Corp. | 5420 NW 37th Avenue | Miami | FL | 33142 | Purchase Agreement | $ - |
| Palm Beach County - Purchasing Department | 50 S Military Trail, Suite 110 | West Palm Beach | FL | 33415 | Purchase Agreement | $ - |
| Broward Community College Procurement Services | 111 East Las Olas Blvd. | Fort Lauderdale | FL | 33301 | Purchase Agreement | $ - |
| City of Boca Raton | 201 West Palmetto Park Rd | Boca Raton | FL | 33432 | Purchase Agreement | $ - |
| Village of Wellington | 1400 Greenbriar Blvd. | Wellington | FL | 33414 | Purchase Agreement | $ - |
| Collier County School Board | 5775 Osceola Trail | Naples | FL | 34109 | Purchase Agreement | $ - |

Exhibit A to Joint Plan of Reorganization

Exhibit B
(Schedule of Equipment Lenders)

AMERIGROW RECYCLING
SCHEDULE OF INSTALLMENT DEBTS, NOTES AND MORTGAGE PAYMENTS
AS OF SEPTEMBER 30, 2009

| LENDER | ORG LOAN AMOUNT | LOAN BALANCE | LOAN DATE | INTEREST RATE | MATURITY DATE | MONTHLY PAYMENT | SECURITY | GUARANTORS *4 |
|---|---|---|---|---|---|---|---|---|
| REGIONS | $165,630 | $16,522 | 03/14/05 | LEASE | 03/14/10 | $2,761 | 03 VOLVO GRAPPLE | A, S, M, J |
| HUNTINGTON NAT. | $105,080 | $15,000 | 05/17/05 | 7.43% | 05/17/10 | $2,103 | 2006 KENWORTH T800 | S, J |
| RANDY TURNER | $250,000 | $116,667 | 01/16/07 | * | 1/16/12 | $4,167 | 2-2002 BGTX TRAILERS, 2 VOLVO GRAPPLES, 2000 PACE TRAILER 2002 BGTX TRAILERS | NONE |
| WELLS FARGO *1 | $2,500,000 | $2,149,523 | 06/25/07 | Prime | 9/10/11 | *2 | EQUIP APPRAISAL ATTACHED | S, J |
| GE CAPITAL | $300,094 | $189,111 | 09/11/07 | 7.84% | 10/11/12 | $6,062 | 2 - 2007 KENWORTH TRUCKS AND 1 - CAT ENGINE | S, J |
| ALTER MONETA*1 | $1,050,830 | $713,278 | 03/26/08 | 6.34% | 10/15/2011 | $31,188 | EQUIP APPRAISAL ATTACHED | A, AJ, S, J |
| ALTER MONETA*1 | $356,535 | $295,818 | 08/11/08 | 7.50% | 8/15/2013 | $7,543 | EQUIP APPRAISAL ATTACHED | A, AJ, S, J |
| ALTER MONETA | $215,959 | $177,521 | 05/07/08 | 6.67% | 5/7/2013 | $4,579 | SCREEN, CONVEYOR,STACKER | A, AJ, S, J |
| KOMATSU | $99,649 | $81,041 | 12/04/08 | 6.75% | 12/16/2012 | $2,375 | KOMATSU EXCAVATOR | A IS BORROWER |
| KUBOTA CREDIT CORP | $12,720 | $8,833 | 11/01/08 | 0.00% | 10/1/2011 | $353 | KUBOTA TRACTOR | A |
| FORD MOTOR CREDIT | $16,839 | $16,266 | 03/31/09 | 10.69% | 5/13/2013 | $435 | FORD ESCAPE | NONE |
| | | | | | | | | |
| **EQUIP SUB-TOTAL** | **$5,073,337** | **$3,779,579** | | | | | | |
| | | | | | | | | |
| NATIONAL CITY -land loan | $6,600,000 | *3 $6,019,981 | 10/26/06 | 6.95% | 10/26/21 | $59,494 | LAND | A, S, M, J, MM |
| WACHOVIA LOC | $50,000 | $38,226 | 09/27/99 | P +1 | Demand | IO | L/C - PERSONAL | J |
| FIFTH THIRD-LOC | $1,000,000 | $1,000,000 | 08/12/08 | ** | Demand | IO | A/R, INV, UNEMCUMBERED EQUIP & 2ND POSITION IN BALANCE | S, J |
| | | | | | | | | |
| **LAND & L/C SUB-TOTAL** | **$7,650,000** | **$7,058,207** | | | | | | |
| | | | | | | | | |
| **GRAND TOTAL** | **$12,723,337** | **$10,837,786** | | | | | | |

| |
|---|
| * 10% Interest payable only from profits from storm cleanup referred by Turner, otherwise 0% |
| ** 30 days LIBOR + 300bp |
| *1 consolidated refinanced loan amounts, not original purchase prices |
| *2 Pmts 10/09 - 1/10 = Interest + $20,668 principal; 2/10 - 10/11 - Interest + $41,337 principal; 11/11 - Balloon $1,116,095 (original = $41,337 + interest; Balloon $992,088) |
| *3 Balance does not include accrued interest from 2/1/09 |
| *4 A = Amerigrow Recycling Corp; AJ = Amerigrow of Jupiter Corp.; S = Silvia Kearney; M = Michael G. Kearney; J = Janet Tomlinson; MM = Mulch Maker, LLC |

Exhibit C
(Liquidation Analysis)

Amerigrow Recycling - Delray, Limited Parntership, et al.
Case No. 09-34122-BKC-EPK
Liquidation Analysis

## CHAPTER 7 LIQUIDATION

| | | | |
|---|---|---:|---|
| **CASH AND CASH EQUIVALENTS** | $ | 1,012,000.00 | Note 1 |
| **REAL ESTATE (ASSUME FIRE SALE VALUE IN CHAPTER 7)** | $ | 4,000,000.00 | |
| **LIQUIDATION VALUE OF ACCOUNTS RECEIVABLE (60% of $1,200,000 value) (approx.)** | $ | 720,000.00 | |
| **LIQUIDATION VALUE OF INVENTORY (25% of $752,000 cost value) (approx.)** | $ | 188,000.00 | |
| **LIQUIDATION VALUE OF EQUIPMENT (30% of $5,340,181)** | $ | 1,602,054.30 | |
| **RECOVERY FROM AVOIDANCE ACTIONS** | | Unknown | Note 2 |
| | | | |
| **TOTAL LIQUIDATION PROCEEDS** | $ | 7,522,054.30 | |
| **TOTAL UNENCUMBERED LIQUIDATION PROCEEDS** | $ | 920,000.00 | |
| | | | |
| **PRE-CONFIRMATION PROFESSIONAL FEES (est.)** | $ | 100,000.00 | |
| | | | |
| **PRE-CONFIRMATION ADMINISTRATIVE CLAIMS (only those administrative claims not included in approved cash collateral budget)** | $ | - | |
| **CHAPTER 7 TRUSTEE STATUTORY FEES (est.)** | $ | 248,911.63 | |
| **ADDITIONAL PROFESSIONAL FEES IN CHAPTER 7 (est.)** | $ | 100,000.00 | |
| **UNITED STATES TRUSTEE'S FEES (1Q AND 2Q 2010)** | $ | 10,000.00 | |
| | | | |
| **AMOUNT AVAILABLE FOR DISTRIBUTION** | $ | 461,088.37 | |
| | | | |
| | | | |
| | | | |
| **CLASS LP-1 PRIORITY CLAIMS** | $ | - | |
| **CLASS LP-2 SECURED CLAIM OF PNC (assume $4,000,000 recovery from liquidation proceeds of collateral, remainder to become Class LP-13 Unsecured Claim )** | $ | 4,000,000.00 | Note 3 |
| **CLASS LP-3 SECURED CLAIM OF FIFTH THIRD BANK (satisfied with liquidation proceeds of collateral, estimated that there is no remainder that would become a Class LP-13 Unsecured Claim)** | $ | 1,000,000.00 | |
| **CLASS LP-4 SECURED CLAIM OF WELLS FARGO (assume 30% recovery with liquidation proceeds of collateral, remainder to become Class LP-13 Unsecured Claim )** | $ | 967,350.30 | Note 3 |
| **CLASS LP-5 SECURED CLAIM OF ALTER MONETA (assume 30% recovery with liquidation proceeds of collateral, remainder to become Class LP-13 Unsecured Claim )** | $ | 458,694.90 | Note 3 |
| **CLASS LP-6 SECURED CLAIM OF COLONIAL PACIFIC (assume 30% recovery with liquidation proceeds of collateral, remainder to become Class LP-13 Unsecured Claim )** | $ | 71,820.00 | Note 3 |
| **CLASS LP-7 SECURED CLAIM OF GECC (assume 30% recovery with liquidation proceeds of collateral, remainder to become Class LP-13 Unsecured Claim )** | $ | 17,220.00 | Note 3 |
| **CLASS LP-8 SECURED CLAIM OF TURNER (assume 30% recovery with liquidation proceeds of collateral, remainder to become Class LP-13 Unsecured Claim )** | $ | 55,104.00 | Note 3 |
| **CLASS LP-9 SECURED CLAIM OF FORD MOTOR CREDIT (assume 60% recovery with liquidation proceeds of collateral, remainder to become Class LP-13 Unsecured Claim )** | $ | 14,400.00 | Note 3 |
| **CLASS LP-10 SECURED CLAIM OF KUBOTA (assume 30% recovery with liquidation proceeds of collateral, remainder to become Class LP-13 Unsecured Claim )** | $ | 2,952.00 | Note 3 |

Amerigrow Recycling - Delray, Limited Parntership, et al.
Case No. 09-34122-BKC-EPK
Liquidation Analysis

| | | |
|---|---|---|
| **CLASS LP-11 OTHER SECURED CLAIMS (satisfied with liquidation proceeds of collateral, estimated that there is no remainder that would become Class LP-13 Unsecured Claim )** | $                     - | Note 3 |
| **CLASS Corp-2 SECURED CLAIM OF KOMATSU (assume no recovery with liquidation proceeds of collateral, entire amounts to become Class Corp-4 Unsecured Claim )** | $          23,370.00 | Note 3 |
| **CLASS Corp-3 OTHER SECURED CLAIMS (assume no recovery with liquidation proceeds of collateral, entire amounts to become Class LP-13 Unsecured Claim )** | $                     - | Note 3 |
| **AMOUNT AVAILABLE FOR DISTRIBUTION ON GENERAL UNSECURED CLAIMS ON EFFECTIVE DATE** | $        461,088.37 | |
| | | |
| | | |
| **GENERAL UNSECURED CLAIMS (approx.) ($940,000 of general unsecured claims plus approximately $5,100,000 in deficiency claims for all Allowed Secured Claims)** | $     6,040,000.00 | |
| | | |
| **ESTIMATED RECOVERY PERCENTAGE ON EFFECTIVE DATE** | | |
| **(if General Unsecured Claims equal $6,008,000.00)** | **7.63%** | |
| | | |
| | | |

Amerigrow Recycling - Delray, Limited Partnership, et al.
Case No. 09-34122-BKC-EPK
Liquidation Analysis

## PURPOSE

The plan of reorganization proposed by the Debtors (the "Plan") requires the filing of a Disclosure Statement (the "Disclosure Statement") with respect to the Plan. This liquidation analysis (the "Analysis") was prepared solely for the inclusion in the Disclosure Statement in compliance with the United States Bankruptcy Code. The Analysis involves estimating the proceeds that are expected to be generated in the liquidation of the assets of the estate of Amerigrow Recycling - Delray, Limited Partnership and reducing such amount by the secured claim, costs of liquidation, post-confirmation administrative claims, administrative expenses and priority claims, to arrive at estimated net proceeds available for distribution to unsecured creditors.  The Analysis is based on the assumptions discussed in the notes below.

## ESTIMATES OF LIQUIDATION VALUE

The Analysis is an estimate of the proceeds that the Debtors believe will be generated as a result of the liquidation of the Debtors' assets at March 2, 2010 (the "Analysis Date") and is based on the information available as of the date hereof.  The information presented is not prepared in accordance with generally accepted accounting principles and has not been subject to any compilation, review or audit procedures by an independent accounting firm.  No independent evaluation or appraisal of the Debtors' assets has occurred.  The various estimate of value presented in this Analysis apply to this purpose only and may not be used out of the context presented herein.

Principally, values are based on financial information included in the Disclosure Statement, the petition for relief, bankruptcy schedules and statement of financial affairs (the "Schedules"), the Debtors' monthly financial reports filed with the Bankruptcy Court, certain of the Debtors' financial records and pleadings and other filings with the Bankruptcy Court.

The estimates of liquidation value do not purport to reflect appraisals, or necessarily reflect the actual market value which may be realized if assets are sold.  The Analysis is premised on various estimates and assumptions that are inherently subject to significant economic, competitive and operational uncertainties and contingencies that are difficult to predict and are beyond the control of the Debtors.  The validity of the assumptions may be affected by the occurrence of events or the existence of conditions not now comtemplated or by other factors, and there can be no assurance that the assumptions and estimates employed in determining the liquidation value of the Debtors' assets will result in an accurate estimate of the proceeds that would be realized in an actual liquidation. Additional infomation may becomes available after the date of this Analysis that could result in materially different values for certain assets and liabilties. Consequently, the estimates of value presented herein should not be regarded as a representation of warranty that the estimated liquidation values will be realized and actual liquidation values of the Debtors' assets could vary materially from the estimates included in the Analysis.

## RESERVATION OF RIGHTS

The Debtors reserve all of their rights in connection with the estimated values of recoveries as set forth herein, the ability to pursue additional claims and causes of action and objections to claims.  This analysis shall not be deemed a waiver of or estoppel in connection with such rights.

Amerigrow Recycling - Delray, Limited Partnership, et al.
Case No. 09-34122-BKC-EPK
Liquidation Analysis

**THE ACCOMPANYING NOTES AND ASSUMPTIONS ARE AN INTEGRAL PART OF THE LIQUIDATION ANALYSIS**

| | |
|---|---|
| **Note 1** | The cash balance reflects the approximate cash and cash equivalents as of March 2, 2010. |
| **Note 2** | The Debtors have analyzed their potential preference lawsuits and do not believe there to be any, however the Debtors reserve all rights in the Plan to bring avoidance actions if appropriate upon further review. |
| **Note 3** | Please see attached Deficiency Claim Analysis. |

Amerigrow Recycling - Delray, Limited Partnership
Case No. 09-34122-BKC-EPK
Liquidation Analysis (Deficiency Claim Detail)

| Class | Asserted Secured Claim | Estimated Going Concern Value of Collateral (per schedules) | Estimated Liquidation Value of Collateral | Estimated Deficiency Claim in Chapter 7 |
|---|---|---|---|---|
| CLASS LP-2 SECURED CLAIM OF PNC (assume $4,000,000 recovery from liquidation proceeds of collateral, remainder to become Class LP-13 Unsecured Claim ) | $ 6,880,957.85 | $ 9,000,000.00 | $ 4,000,000.00 | $ 2,880,957.85 |
| CLASS LP-3 SECURED CLAIM OF FIFTH THIRD BANK (satisfied with liquidation proceeds of collateral, estimated that there is no remainder that would become a Class LP-13 Unsecured Claim) | $ 1,000,000.00 | $ 3,209,000.00 | $ 2,529,500.00 | $ - |
| CLASS LP-4 SECURED CLAIM OF WELLS FARGO (assume 30% recovery with liquidation proceeds of collateral, remainder to become Class LP-13 Unsecured Claim ) | $ 2,160,782.73 | $ 3,224,501.00 | $ 967,350.30 | $ 1,193,432.43 |
| CLASS LP-5 SECURED CLAIM OF ALTER MONETA (assume 30% recovery with liquidation proceeds of collateral, remainder to become Class LP-13 Unsecured Claim ) | $ 1,255,034.79 | $ 1,528,983.00 | $ 458,694.90 | $ 796,339.89 |
| CLASS LP-6 SECURED CLAIM OF COLONIAL PACIFIC (assume 30% recovery with liquidation proceeds of collateral, remainder to become Class LP-13 Unsecured Claim ) | $ 200,747.49 | $ 239,400.00 | $ 71,820.00 | $ 128,927.49 |
| CLASS LP-7 SECURED CLAIM OF GECC (assume 30% recovery with liquidation proceeds of collateral, remainder to become Class LP-13 Unsecured Claim ) | $ 17,026.96 | $ 57,400.00 | $ 17,220.00 | $ - |
| CLASS LP-8 SECURED CLAIM OF TURNER (assume 30% recovery with liquidation proceeds of collateral, remainder to become Class LP-13 Unsecured Claim ) | $ 116,667.00 | $ 183,680.00 | $ 55,104.00 | $ 61,563.00 |
| CLASS LP-9 SECURED CLAIM OF FORD MOTOR CREDIT (assume 60% recovery with liquidation proceeds of collateral, remainder to become Class LP-13 Unsecured Claim ) | $ 15,711.51 | $ 24,000.00 | $ 14,400.00 | $ 1,311.51 |
| CLASS LP-10 SECURED CLAIM OF KUBOTA (assume 30% recovery with liquidation proceeds of collateral, remainder to become Class LP-13 Unsecured Claim ) | $ 8,480.04 | $ 9,840.00 | $ 2,952.00 | $ 5,528.04 |
| CLASS LP-11 OTHER SECURED CLAIMS (assume no recovery with liquidation proceeds of collateral, entire amounts to become Class LP-13 Unsecured Claim ) | $ - | $ - | $ - | $ - |
| Estimated Total Deficiency Claims - Amerigrow LP | | | | $ 5,068,060.21 |
| CLASS Corp-2 SECURED CLAIM OF KOMATSU (assume no recovery with liquidation proceeds of collateral, entire amounts to become Class Corp-4 Unsecured Claim ) | $ 81,041.00 | $ 77,900.00 | $ 23,370.00 | $ 54,530.00 |
| CLASS Corp-3 OTHER SECURED CLAIMS (assume no recovery with liquidation proceeds of collateral, entire amounts to become Class LP-13 Unsecured Claim ) | $ - | $ - | $ - | $ - |
| Estimated Total Deficiency Claims - Amerigrow Corp | | | | $ 54,530.00 |

Exhibit D
(Consolidated Financial Projections)

In re Amergrow Recycling - Delray, Limited Partnership, et al.
Case No. 09-34122-BKC-EPK
Consolidated Projections

*Consolidated 6Yr Projections*

| | 5/1/10-4/30/11 | 5/1/11-4/30/12 | 5/1/12-4/30/13 | 5/1/13-4/30/14 | 5/1/14-4/30/15 | 5/1/15-4/30/16 |
|---|---|---|---|---|---|---|
| **Income (in millions)** | | | | | | |
| Mulch | $5.500 | $5.610 | $5.722 | $5.837 | $5.953 | $6.072 |
| Soil/Compost | $3.000 | $3.060 | $3.121 | $3.184 | $3.247 | $3.312 |
| Tipping | $1.250 | $1.275 | $1.301 | $1.327 | $1.353 | $1.380 |
| Del/Inst | $1.800 | $1.836 | $1.873 | $1.910 | $1.948 | $1.987 |
| **Total Income** | $11.550 | $11.781 | $12.017 | $12.257 | $12.502 | $12.752 |
| | | | | | | |
| **Expenditures (in millions)** | | | | | | |
| Soil Line | $1.650 | $1.683 | $1.717 | $1.751 | $1.786 | $1.822 |
| Wood/Mulch | $1.700 | $1.734 | $1.769 | $1.804 | $1.840 | $1.877 |
| Payroll/Benefits | $3.100 | $3.162 | $3.225 | $3.290 | $3.356 | $3.423 |
| Contract O/S | $0.055 | $0.056 | $0.057 | $0.058 | $0.060 | $0.061 |
| Commissons Outside | $0.155 | $0.158 | $0.161 | $0.164 | $0.168 | $0.171 |
| Insurance | $0.275 | $0.281 | $0.286 | $0.292 | $0.298 | $0.304 |
| Equip Maintanence | $0.480 | $0.490 | $0.499 | $0.509 | $0.520 | $0.530 |
| Fuel | $0.750 | $0.765 | $0.780 | $0.796 | $0.812 | $0.828 |
| Colorant | $0.360 | $0.367 | $0.375 | $0.382 | $0.390 | $0.397 |
| Bagging Supplies | $0.350 | $0.357 | $0.364 | $0.371 | $0.379 | $0.386 |
| Other | $0.450 | $0.459 | $0.468 | $0.478 | $0.487 | $0.497 |
| Licenses & Permits | $0.025 | $0.026 | $0.026 | $0.027 | $0.027 | $0.028 |
| RE & TPP Tax | $0.070 | $0.071 | $0.073 | $0.074 | $0.076 | $0.077 |
| Management Fees | $0.462 | $0.471 | $0.481 | $0.490 | $0.500 | $0.510 |
| Legal/Accounting Fees | $0.200 | $0.100 | $0.105 | $0.110 | $0.116 | $0.122 |
| Land Lease | $0.017 | $0.019 | $0.019 | $0.019 | $0.019 | $0.019 |
| **Total Expenses** | $10.099 | $10.199 | $10.405 | $10.616 | $10.832 | $11.051 |
| **Income before Debt** | $1.451 | $1.582 | $1.611 | $1.641 | $1.671 | $1.701 |
| **Debt Service/Plan Payments In dollars** | | | | | | |
| Cordero (Admin Claim) | 23,268 | 0 | 0 | | | |
| Amerimulch Reclamation (Admin) | 28,500 | 28,500 | 16,625 | 0 | | |
| Class LP-2/PNC (Nat City) | 223,920 | 223,920 | 223,920 | 501,024 | 501,024 | 501,024 |
| Class LP-3/Fifth Third Bank | 62,000 | 122,000 | 149,000 | 150,000 | 150,000 | 150,000 |
| Class LP-4/Wells Fargo | 293,300 | 293,300 | 293,300 | 400,000 | 400,000 | 720,000 |
| Class LP-5/Alter Moneta#1 | 271,254 | 271,254 | 271,254 | 0 | | |
| Class LP-5/Alter Moneta #2 | 72,741 | 72,741 | 72,741 | 72,741 | 72,741 | 0 |
| Class LP-5/Alter Moneta #3 | 36,680 | 36,680 | 36,680 | 36,680 | 36,680 | 36,680 |
| Class LP-6/Colonial Pacific (GE) | 72,744 | 72,744 | 72,744 | | | |
| Class LP-7/GECC (Huntington) | 15,612 | 0 | | | | |
| Class LP-8/Turner | 28,125 | 28,125 | 28,125 | 28,125 | | |
| Class LP-9/Ford | 5,220 | 5,220 | 5,220 | 435 | | |
| Class LP-10/Kubota | 4,236 | 2,118 | 6,354 | | | |
| Class LP-11/Other Secured | 0 | 0 | 0 | 0 | 0 | 0 |
| Class Corp-3/Komatsu | 22,637 | 22,637 | 22,637 | 0 | | |
| Class LP-13 Unsecured Option No. 1* | 121,491 | 121,491 | 121,491 | 121,491 | 121,491 | 0 |
| Class LP-13 Unsecured Option No. 2* | 44,000 | 44,000 | 22,000 | 0 | 0 | 0 |
| Class LP-13 Unsecured Option No. 3* | 55,000 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | |
| **Debt Srv/Plan Payments in millions** | $1,380.73 | $1,344.73 | $1,342.09 | $1,310.50 | $1,281.94 | $1,407.70 |

* See Attached Schedule for Separate Breakdown of Class LP-13 General Unsecured Claims

In re Amerigrow Recycling - Delray, Limited Partnership, et al.

Case No. 09-34122-BKC-EPK

Schedule of Estimated Unsecured Claim Payouts for Class LP-13

|  | Option No. 1 | Option No. 2 | Option No. 3 |
|---|---|---|---|
| Insider Unsecured Claims - Mandatory Option No. 1 | $ 440,788.00 | | |
| Non-Insider Unsecured Claims (Total $500,000 - Assume 1/3 will choose each Option) | $ 166,666.65 | $ 166,666.67 | $ 166,666.67 |
| Total Claims Per Option | $ 607,454.65 | $ 166,666.67 | $ 166,666.67 |

|  | 20% in Years 1, 2, 3, 4 and 5 | 2.25% per Month for 30 months (27% annualized) | 33% in Year 1 | Total Cash Payout Per Year |
|---|---|---|---|---|
| Year 1 Payout | $ 121,490.93 | $ 44,000.00 | $ 55,000.00 | $ 220,490.93 |
| Year 2 Payout | $ 121,490.93 | $ 44,000.00 | $ - | $ 165,490.93 |
| Year 3 Payout | $ 121,490.93 | $ 22,000.00 | $ - | $ 143,490.93 |
| Year 4 Payout | $ 121,490.93 | | $ - | $ 121,490.93 |
| Year 5 Payout | $ 121,490.93 | | $ - | $ 121,490.93 |
| Total Estimated Cash Payout | $ 607,454.65 | $ 110,000.00 | $ 55,000.00 | |
| Total Percentage Recovery | 100.00% | 66.00% | 33.00% | |

Exhibit E
(List of Payments Within 90 Days of Petition Date)

S.D.

# Amerigrow Recycling

11/18/2009 5:17 PM

Register: 1040 · Wachovia - Operating Acct
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 08/03/2009 | | | Operating Expense:Ba... | visa | 9.75 | X | | 2,081.33 |
| 08/03/2009 | | | Operating Expense:Ba... | comm service c... | 36.31 | X | | 2,045.02 |
| 08/03/2009 | | | 5915 · Interest Expense... | | 150.06 | X | | 1,894.96 |
| 08/31/2009 | | | Operating Expense:Ba... | Service Charge | 190.66 | X | | 1,704.30 |
| 09/03/2009 | 13571 | Santom Transport, Inc | 2001 · Accounts Payable | | 1,814.00 | X | | -109.70 |
| 09/25/2009 | | | Long Term Liabilities:... | Deposit | | X | 200.00 | 90.30 |
| 09/28/2009 | 13572 | American Heritage L... | 2001 · Accounts Payable | | 256.27 | X | | -165.97 |
| 09/28/2009 | 13573 | Aramatic Refreshme... | 2001 · Accounts Payable | | 663.25 | X | | -829.22 |
| 09/28/2009 | 13574 | Blaxberg Grayson K... | 2001 · Accounts Payable | | 5,107.90 | X | | -5,937.12 |
| 09/28/2009 | 13575 | Briggs Equipment. | 2001 · Accounts Payable | | 512.56 | X | | -6,449.68 |
| 09/28/2009 | 13576 | Carquest. | 2001 · Accounts Payable | | 295.53 | X | | -6,745.21 |
| 09/28/2009 | 13577 | Construction Hydrau... | 2001 · Accounts Payable | | 577.80 | X | | -7,323.01 |
| 09/28/2009 | 13578 | Fastenal Industries &... | 2001 · Accounts Payable | | 17.75 | X | | -7,340.76 |
| 09/28/2009 | 13579 | Federal Background ... | 2001 · Accounts Payable | | 130.00 | X | | -7,470.76 |
| 09/28/2009 | 13580 | Florida Combined Li... | 2001 · Accounts Payable | | 439.79 | X | | -7,910.55 |
| 09/28/2009 | 13581 | Grainger | 2001 · Accounts Payable | | 190.97 | X | | -8,101.52 |
| 09/28/2009 | 13582 | JP Miller | 2001 · Accounts Payable | | 380.67 | X | | -8,482.19 |
| 09/28/2009 | 13583 | Northern Safety Co. I... | 2001 · Accounts Payable | | 212.42 | X | | -8,694.61 |
| 09/28/2009 | 13584 | Office Depot | 2001 · Accounts Payable | | 373.35 | X | | -9,067.96 |
| 09/28/2009 | 13585 | Palm Beach Iron Wo... | 2001 · Accounts Payable | VOID: | | X | | -9,067.96 |
| 09/28/2009 | 13586 | Palm Beach Spring Co. | 2001 · Accounts Payable | | 341.72 | X | | -9,409.68 |
| 09/28/2009 | 13587 | Parkland Printing & ... | 2001 · Accounts Payable | | 295.83 | X | | -9,705.51 |
| 09/30/2009 | | | Long Term Liabilities:... | Deposit | | X | 6,800.00 | -2,905.51 |
| 10/01/2009 | | | Long Term Liabilities:... | Deposit | | X | 1,900.00 | -1,005.51 |
| 10/01/2009 | | | Operating Expense:Ba... | visa monthly | 9.75 | X | | -1,015.26 |
| 10/06/2009 | | | Long Term Liabilities:... | Funds Transfer | | X | 400.00 | -615.26 |
| 10/08/2009 | | | Long Term Liabilities:... | Funds Transfer | | X | 400.00 | -215.26 |
| 10/09/2009 | | | Operating Expense:Ba... | commercial svc... | 45.37 | X | | -260.63 |
| 10/20/2009 | | | Long Term Liabilities:... | Transfer | | X | 300.00 | 39.37 |

## Amerigrow Recycling

11/18/2009 5:19 PM

Register: 1046 · National City - #1
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 08/31/2009 | | | Operating Expense:Ba... | Service Charge | 25.91 | X | | 453.47 |
| 09/30/2009 | | | Operating Expense:Ba... | Service Charge | 25.90 | X | | 427.57 |
| 10/14/2009 | 15871 | Amerigrow | 1042 · Suntrust - Opera... | | 427.57 | X | | 0.00 |
| 10/14/2009 | EH783 | | 4000 · Reconciliation ... | Balance Adjust... | | X | 1,008.33 | 1,008.33 |
| 10/14/2009 | EH784 | | 4000 · Reconciliation ... | Balance Adjust... | | X | 1,008.33 | 2,016.66 |
| 10/14/2009 | EH785 | | 4000 · Reconciliation ... | Balance Adjust... | 2,444.23 | X | | -427.57 |
| 10/14/2009 | EH786 | | 4000 · Reconciliation ... | Balance Adjust... | 1,008.33 | X | | -1,435.90 |
| 10/14/2009 | EH787 | | 4000 · Reconciliation ... | Balance Adjust... | | X | 1,435.90 | 0.00 |

Amerigrow Recycling

11/18/2009 5:20 PM

Register: 1048 · Fifth Third Bank - Operating
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 08/03/2009 | | | -split- | Deposit | | X | 82,157.06 | 184,776.36 |
| 08/03/2009 | | | -split- | Deposit | | X | 788.33 | 185,564.69 |
| 08/03/2009 | NSF | | Operating Expense:Oth... | Brookview | 1,795.44 | X | | 183,769.25 |
| 08/03/2009 | 2632 | La Mousse Acadienne | 2001 · Accounts Payable | | 16,764.00 | X | | 167,005.25 |
| 08/03/2009 | 2633 | Elite Aluminum Corp. | 2001 · Accounts Payable | | 1,404.00 | X | | 165,601.25 |
| 08/03/2009 | 2634 | Santom Transport, Inc | 2001 · Accounts Payable | | 2,721.00 | X | | 162,880.25 |
| 08/03/2009 | 2635 | Fafard | 2001 · Accounts Payable | | 6,070.24 | X | | 156,810.01 |
| 08/03/2009 | 2636 | Florida Potting Soils ... | 2001 · Accounts Payable | | 8,754.40 | X | | 148,055.61 |
| 08/03/2009 | 2637 | Manuel Cordero | 2001 · Accounts Payable | | 17,100.00 | X | | 130,955.61 |
| 08/03/2009 | 2638 | White's Landscape S... | 2001 · Accounts Payable | | 1,453.50 | X | | 129,502.11 |
| 08/03/2009 | 2639 | Galvez Trucking, Inc. | 2001 · Accounts Payable | | 15,875.00 | X | | 113,627.11 |
| 08/03/2009 | 2640 | Tropical Soil LLC | 2001 · Accounts Payable | | 9,576.00 | X | | 104,051.11 |
| 08/03/2009 | 2641 | Kempfer Sawmill Inc. | 2001 · Accounts Payable | | 6,726.25 | X | | 97,324.86 |
| 08/03/2009 | 2642 | Y. G. Yovany Gonza... | 2001 · Accounts Payable | | 1,774.00 | X | | 95,550.86 |
| 08/04/2009 | | | -split- | Deposit | | X | 5,010.06 | 100,560.92 |
| 08/04/2009 | | | -split- | Deposit | | X | 1,973.87 | 102,534.79 |
| 08/04/2009 | 2643 | Nina Plastics. | 2001 · Accounts Payable | | 15,172.80 | X | | 87,361.99 |
| 08/05/2009 | | | -split- | Deposit | | X | 30,894.29 | 118,256.28 |
| 08/05/2009 | | | -split- | Deposit | | X | 740.87 | 118,997.15 |
| 08/05/2009 | 2644 | Unifirst Corporation. | 2001 · Accounts Payable | | 1,878.10 | X | | 117,119.05 |
| 08/05/2009 | 2645 | Anthony's Business ... | Operating Expense:Off... | | 285.00 | X | | 116,834.05 |
| 08/05/2009 | 2646 | Helena | 2001 · Accounts Payable | | 726.70 | X | | 116,107.35 |
| 08/05/2009 | 2647 | Flagler Construction | 2001 · Accounts Payable | | 764.88 | X | | 115,342.47 |
| 08/05/2009 | 2648 | Palm Beach Iron Wo... | 2001 · Accounts Payable | | 504.96 | X | | 114,837.51 |
| 08/05/2009 | 2649 | Wholesale Auto Radi... | 2001 · Accounts Payable | | 125.00 | X | | 114,712.51 |
| 08/05/2009 | 2650 | Florida Department o... | 2001 · Accounts Payable | Citation #6007... | 255.00 | X | | 114,457.51 |
| 08/05/2009 | 2651 | Atlantic - FEC Fertili... | 2001 · Accounts Payable | | 533.21 | X | | 113,924.30 |
| 08/06/2009 | | | -split- | Deposit | | X | 10,151.04 | 124,075.34 |
| 08/06/2009 | 2652 | Woodfuel com | 2001 · Accounts Payable | | 7,290.78 | X | | 116,784.56 |
| 08/06/2009 | 2653 | Sign Source. | 2001 · Accounts Payable | | 26.50 | X | | 116,758.06 |
| 08/06/2009 | 2654 | Smiley Gil, Inc. | 2001 · Accounts Payable | | 2,400.00 | X | | 114,358.06 |
| 08/06/2009 | 2655 | Air Compressor Works | Operating Expense:Re... | | 738.76 | X | | 113,619.30 |
| 08/07/2009 | | | -split- | Deposit | | X | 24,153.82 | 137,773.12 |
| 08/07/2009 | | | -split- | Deposit | | X | 795.89 | 138,569.01 |
| 08/07/2009 | | Compupay | Operating Expense:Lab... | agency | 185.71 | X | | 138,383.30 |
| 08/07/2009 | | Compupay | Operating Expense:Lab... | billing | 151.05 | X | | 138,232.25 |
| 08/07/2009 | | Compupay | Operating Expense:Lab... | dir dep | 20,315.91 | X | | 117,916.34 |
| 08/07/2009 | | Compupay | Operating Expense:Lab... | paychecks | 17,359.83 | X | | 100,556.51 |
| 08/07/2009 | | Compupay | Operating Expense:Lab... | tax | 9,482.35 | X | | 91,074.16 |
| 08/07/2009 | 2656 | Land And Sea Petrol... | 2001 · Accounts Payable | | 15,716.66 | X | | 75,357.50 |

Amerigrow Recycling

11/18/2009 5:20 PM

Register: 1048 · Fifth Third Bank - Operating
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 08/07/2009 | 2657 | Miami-Dade Depart... | Operating Expense:Oth... | | 1,090.00 | X | | 74,267.50 |
| 08/07/2009 | 2658 | James Schry | Operating Expense:Re... | | 1,400.00 | X | | 72,867.50 |
| 08/07/2009 | 2659 | Wells Fargo_1 | -split- | | 26,800.38 | X | | 46,067.12 |
| 08/07/2009 | 2660 | Atlantic Coast Envir... | 2001 · Accounts Payable | | 4,565.00 | X | | 41,502.12 |
| 08/07/2009 | 2661 | Atlantic Coast Envir... | 2001 · Accounts Payable | | 2,382.50 | X | | 39,119.62 |
| 08/10/2009 | | | -split- | Deposit | | X | 54,999.52 | 94,119.14 |
| 08/10/2009 | | | -split- | Deposit | | X | 18,338.22 | 112,457.36 |
| 08/10/2009 | | | Operating Expense:Ba... | Service Charge | 241.48 | X | | 112,215.88 |
| 08/10/2009 | 2662 | CBI. | 2001 · Accounts Payable | | 4,054.57 | X | | 108,161.31 |
| 08/10/2009 | 2663 | Galvez Trucking, Inc. | 2001 · Accounts Payable | | 1,200.00 | X | | 106,961.31 |
| 08/10/2009 | 2664 | Manuel Cordero | 2001 · Accounts Payable | | 12,600.00 | X | | 94,361.31 |
| 08/10/2009 | 2665 | Florida Potting Soils ... | 2001 · Accounts Payable | | 8,656.90 | X | | 85,704.41 |
| 08/10/2009 | 2666 | Galvez Trucking, Inc. | 2001 · Accounts Payable | | 6,000.00 | X | | 79,704.41 |
| 08/10/2009 | 2667 | La Mousse Acadienne | 2001 · Accounts Payable | | 20,450.00 | X | | 59,254.41 |
| 08/10/2009 | 2668 | Air Compressor Works | Operating Expense:Re... | | 413.91 | X | | 58,840.50 |
| 08/11/2009 | | | -split- | Deposit | | X | 16,539.42 | 75,379.92 |
| 08/11/2009 | | | -split- | Deposit | | X | 827.37 | 76,207.29 |
| 08/11/2009 | 2669 | CITICAPITAL - Loa... | 2001 · Accounts Payable | | 6,062.21 | X | | 70,145.08 |
| 08/11/2009 | 2670 | American Express - ... | American Express | | 6,079.93 | X | | 64,065.15 |
| 08/12/2009 | | | -split- | Deposit | | X | 31,786.96 | 95,852.11 |
| 08/12/2009 | | | -split- | Deposit | | X | 1,162.79 | 97,014.90 |
| 08/12/2009 | 2671 | Kelly Tractor | 2001 · Accounts Payable | | 356.69 | X | | 96,658.21 |
| 08/12/2009 | 2672 | Unifirst Corporation. | 2001 · Accounts Payable | | 572.06 | X | | 96,086.15 |
| 08/12/2009 | 2673 | Atlantic - FEC Fertili... | 2001 · Accounts Payable | | 546.22 | X | | 95,539.93 |
| 08/12/2009 | 2674 | Equifax | 2001 · Accounts Payable | 27/324TF00059 | 146.15 | X | | 95,393.78 |
| 08/13/2009 | | | -split- | Deposit | | X | 46,115.12 | 141,508.90 |
| 08/13/2009 | | | -split- | Deposit | | X | 825.96 | 142,334.86 |
| 08/13/2009 | | Compupay | Operating Expense:Lab... | agency | 185.71 | X | | 142,149.15 |
| 08/13/2009 | | Compupay | Operating Expense:Lab... | billing | 151.05 | X | | 141,998.10 |
| 08/13/2009 | | Compupay | Operating Expense:Lab... | dir dep | 22,381.84 | X | | 119,616.26 |
| 08/13/2009 | | Compupay | Operating Expense:Lab... | paychecks | 16,885.60 | X | | 102,730.66 |
| 08/13/2009 | | Compupay | Operating Expense:Lab... | tax | 10,275.51 | X | | 92,455.15 |
| 08/13/2009 | 2675 | Firestone Complete ... | Operating Expense:Ve... | | 26.61 | X | | 92,428.54 |
| 08/13/2009 | 2676 | Sign Source. | 2001 · Accounts Payable | | 493.40 | X | | 91,935.14 |
| 08/13/2009 | 2677 | Voided Check | Operating Expense:Ad... | | | X | | 91,935.14 |
| 08/13/2009 | 2678 | Ford Motor Credit | -split- | | 434.57 | X | | 91,500.57 |
| 08/13/2009 | 2679 | Regions Equipment ... | Long Term Liabilities:... | | 2,760.51 | X | | 88,740.06 |
| 08/13/2009 | 2680 | M & S Fin. | Operating Expense:Oth... | | 5,175.00 | X | | 83,565.06 |
| 08/13/2009 | 2681 | Turner Trucking | Long Term Liabilities:... | | 1,666.67 | X | | 81,898.39 |
| 08/13/2009 | 2682 | Turner Trucking | Long Term Liabilities:... | | 2,500.00 | X | | 79,398.39 |

## Amerigrow Recycling

11/18/2009 5:20 PM

Register: 1048 · Fifth Third Bank - Operating
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 08/13/2009 | 2683 | Huntington Bank - 2... | Long Term Liabilities:... | | 2,102.58 | X | | 77,295.81 |
| 08/13/2009 | 2684 | Komatsu Financial | 2001 · Accounts Payable | | 2,374.67 | X | | 74,921.14 |
| 08/13/2009 | 2685 | First Insurance Fundi... | 2001 · Accounts Payable | | 22,263.38 | X | | 52,657.76 |
| 08/13/2009 | 2686 | Woodfuel com | 2001 · Accounts Payable | | 11,242.12 | X | | 41,415.64 |
| 08/13/2009 | 2687 | Woodfuel com | 2001 · Accounts Payable | | 6,989.10 | X | | 34,426.54 |
| 08/13/2009 | 2688 | Aetna, Inc. | 2001 · Accounts Payable | | 14,770.00 | X | | 19,656.54 |
| 08/13/2009 | 2689 | AT & T | 2001 · Accounts Payable | | 1,338.32 | X | | 18,318.22 |
| 08/13/2009 | 2690 | Best Electric Connec... | 2001 · Accounts Payable | | 862.70 | X | | 17,455.52 |
| 08/13/2009 | 2691 | Briggs Equipment. | 2001 · Accounts Payable | | 65.40 | X | | 17,390.12 |
| 08/13/2009 | 2692 | Carquest. | 2001 · Accounts Payable | | 424.11 | X | | 16,966.01 |
| 08/13/2009 | 2693 | Grainger | 2001 · Accounts Payable | | 190.97 | X | | 16,775.04 |
| 08/13/2009 | 2694 | Hydraulic Supply Co. | 2001 · Accounts Payable | | 8.61 | X | | 16,766.43 |
| 08/13/2009 | 2695 | L & L Distributiors. | 2001 · Accounts Payable | | 2,972.07 | X | | 13,794.36 |
| 08/13/2009 | 2696 | Nextran Truck Center. | 2001 · Accounts Payable | | 2,634.94 | X | | 11,159.42 |
| 08/13/2009 | 2698 | PC Lan Techs | 2001 · Accounts Payable | | 700.00 | X | | 10,459.42 |
| 08/13/2009 | 2699 | Progressive Business... | 2001 · Accounts Payable | May 09 throug... | 39.95 | X | | 10,419.47 |
| 08/13/2009 | 2700 | Pure Beverage Syste... | 2001 · Accounts Payable | | 251.78 | X | | 10,167.69 |
| 08/13/2009 | 2701 | Quality-Analytical-L... | 2001 · Accounts Payable | | 105.00 | X | | 10,062.69 |
| 08/13/2009 | 2702 | Superior Wash. | 2001 · Accounts Payable | | 1,032.50 | X | | 9,030.19 |
| 08/13/2009 | 2703 | Toilet Taxi Corp. | 2001 · Accounts Payable | | 348.00 | X | | 8,682.19 |
| 08/13/2009 | 2704 | White Palms Fire Eq... | 2001 · Accounts Payable | | 1,265.22 | X | | 7,416.97 |
| 08/13/2009 | 2705 | Aetna, Inc. | 2001 · Accounts Payable | | 514.00 | X | | 6,902.97 |
| 08/13/2009 | 2706 | American Heritage L... | 2001 · Accounts Payable | | 256.27 | X | | 6,646.70 |
| 08/13/2009 | 2707 | AT & T | 2001 · Accounts Payable | | 142.40 | X | | 6,504.30 |
| 08/13/2009 | 2708 | At & T Advertising | 2001 · Accounts Payable | Acct 801345693 | 167.00 | X | | 6,337.30 |
| 08/13/2009 | 2709 | Chevron and Texaco ... | 2001 · Accounts Payable | | 69.26 | X | | 6,268.04 |
| 08/13/2009 | 2710 | Colonial Life | 2001 · Accounts Payable | BCN #E3363165 | 2,581.45 | X | | 3,686.59 |
| 08/13/2009 | 2711 | Comp Tech Systems | 2001 · Accounts Payable | | 130.04 | X | | 3,556.55 |
| 08/13/2009 | 2712 | Florida Combined Li... | 2001 · Accounts Payable | | 430.15 | X | | 3,126.40 |
| 08/13/2009 | 2713 | Florida Department o... | 2001 · Accounts Payable | | 63.35 | X | | 3,063.05 |
| 08/13/2009 | 2714 | AT & T | 2001 · Accounts Payable | | 24.19 | X | | 3,038.86 |
| 08/13/2009 | 2715 | Euler Hermes ACI | 2001 · Accounts Payable | Policy #4164544 | 200.00 | X | | 2,838.86 |
| 08/13/2009 | 2716 | FPL | 2001 · Accounts Payable | | 4,928.28 | X | | -2,089.42 |
| 08/13/2009 | 2717 | Nuvox Communicati... | 2001 · Accounts Payable | | 1,432.74 | X | | -3,522.16 |
| 08/13/2009 | 2718 | Pitney Bowes Corpor... | 2001 · Accounts Payable | | 31.76 | X | | -3,553.92 |
| 08/13/2009 | 2719 | Sprint. | 2001 · Accounts Payable | | 50.59 | X | | -3,604.51 |
| 08/13/2009 | 2720 | United Parcel Service. | 2001 · Accounts Payable | | 63.91 | X | | -3,668.42 |
| 08/13/2009 | 2721 | Verizon Wireless 38... | 2001 · Accounts Payable | Account 38020... | 161.45 | X | | -3,829.87 |
| 08/13/2009 | 2722 | Nuvox Communicati... | 2001 · Accounts Payable | VOID: | | X | | -3,829.87 |
| 08/13/2009 | 2723 | Office Depot | 2001 · Accounts Payable | | 454.34 | X | | -4,284.21 |

Amerigrow Recycling                                    11/18/2009 5:20 PM

Register: 1048 · Fifth Third Bank - Operating
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 08/13/2009 | 2724 | PC Lan Techs | 2001 · Accounts Payable | | 807.12 | X | | -5,091.33 |
| 08/13/2009 | 2725 | Pitney Bowes Postag... | 2001 · Accounts Payable | | 834.68 | X | | -5,926.01 |
| 08/13/2009 | 2726 | Tools N More | 2001 · Accounts Payable | | 258.53 | X | | -6,184.54 |
| 08/13/2009 | 2727 | Verizon Wireless*48... | 2001 · Accounts Payable | 480206860-00... | 145.06 | X | | -6,329.60 |
| 08/13/2009 | 2728 | MBNA -Bank of Am... | MBNA | | 76.31 | X | | -6,405.91 |
| 08/13/2009 | 99999 | Nuvox Communicati... | 2001 · Accounts Payable | VOID: | | X | | -6,405.91 |
| 08/14/2009 | | | -split- | Deposit | | X | 4,746.99 | -1,658.92 |
| 08/14/2009 | | | 1049 · Fifth Third Ban... | Deposit | | X | 15,000.00 | 13,341.08 |
| 08/14/2009 | | | -split- | Deposit | | X | 498.22 | 13,839.30 |
| 08/14/2009 | | Fifth Third Bank | 5915 · Interest Expense... | | 2,835.21 | X | | 11,004.09 |
| 08/14/2009 | 2729 | Around the Clock | Operating Expense:Off... | courier service | 42.00 | X | | 10,962.09 |
| 08/14/2009 | 2730 | Land And Sea Petrol... | 2001 · Accounts Payable | | 8,301.35 | X | | 2,660.74 |
| 08/14/2009 | 2731 | Go Green Product an... | Operating Expense:Co... | | 6,607.58 | X | | -3,946.84 |
| 08/14/2009 | 2732 | M & S Fin. | Operating Expense:Oth... | | 4,950.00 | X | | -8,896.84 |
| 08/14/2009 | 2733 | Floragem Investment... | 2042 · Accrued manage... | | 7,050.00 | X | | -15,946.84 |
| 08/14/2009 | 2734 | Sunn Security | 2001 · Accounts Payable | | 111.30 | X | | -16,058.14 |
| 08/14/2009 | 2735 | Network Design & C... | 2001 · Accounts Payable | | 664.19 | X | | -16,722.33 |
| 08/17/2009 | | | -split- | Deposit | | X | 54,638.83 | 37,916.50 |
| 08/17/2009 | | | -split- | Deposit | | X | 932.55 | 38,849.05 |
| 08/17/2009 | | | -split- | Deposit | | X | 21,080.58 | 59,929.63 |
| 08/17/2009 | | Voided Check | Operating Expense:Off... | | | X | | 59,929.63 |
| 08/17/2009 | 2736 | Voided Check | Operating Expense:Off... | | | X | | 59,929.63 |
| 08/17/2009 | 2738 | P.J.'s Land Clearing ... | 2001 · Accounts Payable | | 1,200.00 | X | | 58,729.63 |
| 08/17/2009 | 2739 | Perry & Taylor, P.A. | 2001 · Accounts Payable | | 8,207.75 | X | | 50,521.88 |
| 08/17/2009 | 2740 | Port Consolidated. | 2001 · Accounts Payable | | 6,007.47 | X | | 44,514.41 |
| 08/17/2009 | 2741 | Chevron and Texaco ... | 2001 · Accounts Payable | | 300.40 | X | | 44,214.01 |
| 08/18/2009 | | | -split- | Deposit | | X | 38,232.50 | 82,446.51 |
| 08/18/2009 | | | -split- | Deposit | | X | 873.10 | 83,319.61 |
| 08/18/2009 | 2742 | La Mousse Acadienne | 2001 · Accounts Payable | | 16,764.00 | X | | 66,555.61 |
| 08/18/2009 | 2743 | Land And Sea Petrol... | 2001 · Accounts Payable | | 15,953.58 | X | | 50,602.03 |
| 08/18/2009 | 2744 | Flagler Construction | 2001 · Accounts Payable | | 355.30 | X | | 50,246.73 |
| 08/18/2009 | 2745 | Bob Barra Bonds Inc. | 2001 · Accounts Payable | | 909.00 | X | | 49,337.73 |
| 08/18/2009 | 2746 | Superior Mulch | 2001 · Accounts Payable | | 3,885.12 | X | | 45,452.61 |
| 08/19/2009 | | | -split- | Deposit | | X | 25,880.30 | 71,332.91 |
| 08/19/2009 | | | -split- | Deposit | | X | 1,112.36 | 72,445.27 |
| 08/19/2009 | 2747 | Unifirst Corporation. | 2001 · Accounts Payable | | 635.51 | X | | 71,809.76 |
| 08/19/2009 | 2748 | Florida Department o... | 2001 · Accounts Payable | | 335.00 | X | | 71,474.76 |
| 08/19/2009 | 2749 | Kelly Tractor | 2001 · Accounts Payable | | 853.35 | X | | 70,621.41 |
| 08/19/2009 | 2750 | Anitere Flores Camp... | Operating Expense:Oth... | | 250.00 | X | | 70,371.41 |
| 08/20/2009 | | | -split- | Deposit | | X | 8,968.74 | 79,340.15 |

Amerigrow Recycling                                                11/18/2009 5:20 PM

Register: 1048 · Fifth Third Bank - Operating
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 08/20/2009 | | | -split- | Deposit | | X | 8,076.60 | 87,416.75 |
| 08/20/2009 | | | -split- | Deposit | | X | 509.16 | 87,925.91 |
| 08/20/2009 | | Compupay | Operating Expense:Lab... | agency | 185.71 | X | | 87,740.20 |
| 08/20/2009 | | Compupay | Operating Expense:Lab... | billing | 150.80 | X | | 87,589.40 |
| 08/20/2009 | | Compupay | Operating Expense:Lab... | dir dep | 22,259.15 | X | | 65,330.25 |
| 08/20/2009 | | Compupay | Operating Expense:Lab... | paychecks | 20,121.05 | X | | 45,209.20 |
| 08/20/2009 | | Compupay | Operating Expense:Lab... | tax | 12,134.31 | X | | 33,074.89 |
| 08/20/2009 | 2751 | Orlando Pagan-Custo... | Operating Expense:Ad... | | 2,241.00 | X | | 30,833.89 |
| 08/20/2009 | 2752 | Delray Physician Car... | Operating Expense:Off... | | 30.00 | X | | 30,803.89 |
| 08/20/2009 | 2753 | Woodfuel com | 2001 · Accounts Payable | | 5,601.50 | X | | 25,202.39 |
| 08/20/2009 | 2754 | BEIC. | Operating Expense:Lab... | | 10,338.19 | X | | 14,864.20 |
| 08/20/2009 | 2755 | United States Treasury | Operating Expense:Tax... | | 12,740.00 | X | | 2,124.20 |
| 08/21/2009 | | | -split- | Deposit | | X | 34,058.98 | 36,183.18 |
| 08/21/2009 | | | -split- | Deposit | | X | 193.36 | 36,376.54 |
| 08/21/2009 | 2756 | Unisource Worldwid... | 2001 · Accounts Payable | | 3,647.90 | X | | 32,728.64 |
| 08/21/2009 | 2757 | Andrew M. Schwartz... | 2001 · Accounts Payable | | 2,786.52 | X | | 29,942.12 |
| 08/21/2009 | 2758 | BWI-Homestead | 2001 · Accounts Payable | | 1,681.40 | X | | 28,260.72 |
| 08/21/2009 | 2759 | Galvez Trucking, Inc. | 2001 · Accounts Payable | | 2,325.00 | X | | 25,935.72 |
| 08/21/2009 | 2760 | Kempfer Sawmill Inc. | 2001 · Accounts Payable | | 2,868.75 | X | | 23,066.97 |
| 08/21/2009 | 2761 | Manuel Cordero | 2001 · Accounts Payable | | 6,900.00 | X | | 16,166.97 |
| 08/21/2009 | 2762 | W.R. Grace | 2001 · Accounts Payable | | 1,650.00 | X | | 14,516.97 |
| 08/21/2009 | 2763 | White's Landscape S... | 2001 · Accounts Payable | | 5,745.25 | X | | 8,771.72 |
| 08/21/2009 | 2764 | Powerscreen of Flori... | 2001 · Accounts Payable | | 2,290.17 | X | | 6,481.55 |
| 08/21/2009 | 2765 | Tropical Soil LLC | 2001 · Accounts Payable | | 6,384.00 | X | | 97.55 |
| 08/24/2009 | | | -split- | Deposit | | X | 58,039.41 | 58,136.96 |
| 08/24/2009 | | | -split- | Deposit | | X | 692.24 | 58,829.20 |
| 08/24/2009 | | | -split- | Deposit | | X | 10,238.05 | 69,067.25 |
| 08/24/2009 | 2766 | Francisco migue To... | 1250 · Misc Other Rec... | | 331.31 | X | | 68,735.94 |
| 08/24/2009 | 2767 | U.S. Concrete Produ... | 2001 · Accounts Payable | | 630.00 | X | | 68,105.94 |
| 08/24/2009 | 2768 | Irvine Wood Recovery. | 2001 · Accounts Payable | | 2,500.00 | X | | 65,605.94 |
| 08/24/2009 | 2769 | Kenworth of South F... | 2001 · Accounts Payable | | 208.74 | X | | 65,397.20 |
| 08/24/2009 | 2770 | Kimball Midwest. | 2001 · Accounts Payable | | 1,800.94 | X | | 63,596.26 |
| 08/24/2009 | 2771 | Aramatic Refreshme... | 2001 · Accounts Payable | | 1,463.41 | X | | 62,132.85 |
| 08/24/2009 | 2772 | Cormier, Michael | 2001 · Accounts Payable | | 750.00 | X | | 61,382.85 |
| 08/25/2009 | | | -split- | Deposit | | X | 5,350.94 | 66,733.79 |
| 08/25/2009 | 2773 | Konica Minolta Busi... | 2001 · Accounts Payable | | 179.99 | X | | 66,553.80 |
| 08/25/2009 | 2774 | Konica Minolta Busi... | 2001 · Accounts Payable | | 285.00 | X | | 66,268.80 |
| 08/25/2009 | 2775 | Wachovia Bank NA | Long Term Liabilities:... | | 1,000.00 | X | | 65,268.80 |
| 08/25/2009 | 2776 | Kubota Credit Corpo... | Long Term Liabilities:... | | 353.33 | X | | 64,915.47 |
| 08/25/2009 | 2777 | Dolphin Capital Corp. | Operating Expense:Off... | | 125.67 | X | | 64,789.80 |

Amerigrow Recycling

11/18/2009 5:20 PM

Register: 1048 · Fifth Third Bank - Operating
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 08/25/2009 | 2778 | Y. G. Yovany Gonza... | 2001 · Accounts Payable | | 1,218.00 | X | | 63,571.80 |
| 08/26/2009 | | | -split- | Deposit | | X | 30,144.13 | 93,715.93 |
| 08/26/2009 | | | -split- | Deposit | | X | 1,467.72 | 95,183.65 |
| 08/26/2009 | 2697 | Nuvox Communicati... | 2001 · Accounts Payable | | 715.66 | X | | 94,467.99 |
| 08/26/2009 | 2779 | Unifirst Corporation. | 2001 · Accounts Payable | | 613.42 | X | | 93,854.57 |
| 08/26/2009 | 2780 | Construction Hydrau... | 2001 · Accounts Payable | | 2,480.61 | X | | 91,373.96 |
| 08/26/2009 | 2782 | Woodfuel com | 2001 · Accounts Payable | | 6,667.26 | X | | 84,706.70 |
| 08/26/2009 | 2783 | Florida Bearings, Inc. | 2001 · Accounts Payable | | 418.22 | X | | 84,288.48 |
| 08/27/2009 | | | -split- | Deposit | | X | 25,239.49 | 109,527.97 |
| 08/27/2009 | | | -split- | Deposit | | X | 451.83 | 109,979.80 |
| 08/27/2009 | | Compupay | Operating Expense:Lab... | agency | 185.71 | X | | 109,794.09 |
| 08/27/2009 | | Compupay | Operating Expense:Lab... | billing | 153.63 | X | | 109,640.46 |
| 08/27/2009 | | Compupay | Operating Expense:Lab... | dir dep | 21,233.05 | X | | 88,407.41 |
| 08/27/2009 | | Compupay | Operating Expense:Lab... | paychecks | 21,059.39 | X | | 67,348.02 |
| 08/27/2009 | | Compupay | Operating Expense:Lab... | tax | 11,889.51 | X | | 55,458.51 |
| 08/27/2009 | 2784 | Atlantic - FEC Fertili... | 2001 · Accounts Payable | | 520.20 | X | | 54,938.31 |
| 08/27/2009 | 2785 | AT & T | 2001 · Accounts Payable | | 671.00 | X | | 54,267.31 |
| 08/27/2009 | 2786 | Konica Minolta Busi... | 2001 · Accounts Payable | Contract No 66... | 132.39 | X | | 54,134.92 |
| 08/27/2009 | 2787 | Pitney Bowes Postag... | 2001 · Accounts Payable | | 600.00 | X | | 53,534.92 |
| 08/27/2009 | 2788 | Sprint. | 2001 · Accounts Payable | | 3,546.03 | X | | 49,988.89 |
| 08/27/2009 | 2789 | United Parcel Service. | 2001 · Accounts Payable | | 79.66 | X | | 49,909.23 |
| 08/27/2009 | 2790 | Florida Bearings, Inc. | 2001 · Accounts Payable | | 391.74 | X | | 49,517.49 |
| 08/27/2009 | 2791 | Betrock Information ... | 2001 · Accounts Payable | | 1,450.50 | X | | 48,066.99 |
| 08/27/2009 | 2792 | CBI. | 2001 · Accounts Payable | | 9,691.43 | X | | 38,375.56 |
| 08/27/2009 | 2793 | Express Blower | 2001 · Accounts Payable | | 4,438.49 | X | | 33,937.07 |
| 08/27/2009 | 2794 | Fisher Hydraulic Ser... | 2001 · Accounts Payable | | 816.68 | X | | 33,120.39 |
| 08/27/2009 | 2795 | Florida Potting Soils ... | 2001 · Accounts Payable | | 3,477.70 | X | | 29,642.69 |
| 08/27/2009 | 2796 | Galvez Trucking, Inc. | 2001 · Accounts Payable | | 6,200.00 | X | | 23,442.69 |
| 08/27/2009 | 2797 | Kempfer Sawmill Inc. | 2001 · Accounts Payable | | 2,632.50 | X | | 20,810.19 |
| 08/27/2009 | 2798 | La Mousse Acadienne | 2001 · Accounts Payable | | 11,176.00 | X | | 9,634.19 |
| 08/27/2009 | 2799 | Manuel Cordero | 2001 · Accounts Payable | | 16,600.00 | X | | -6,965.81 |
| 08/27/2009 | 2800 | Nextran Truck Center. | 2001 · Accounts Payable | | 3,648.98 | X | | -10,614.79 |
| 08/27/2009 | 2801 | Nurserymen's Sure-Gro... | 2001 · Accounts Payable | | 2,214.81 | X | | -12,829.60 |
| 08/27/2009 | 2802 | Tate Transport Corp. | 2001 · Accounts Payable | | 1,784.31 | X | | -14,613.91 |
| 08/27/2009 | 2803 | The Apartment Vend... | 2001 · Accounts Payable | | 1,650.00 | X | | -16,263.91 |
| 08/27/2009 | 2804 | Welder Services. | 2001 · Accounts Payable | | 882.02 | X | | -17,145.93 |
| 08/27/2009 | 2805 | Westway Heavy Tran... | 2001 · Accounts Payable | | 634.00 | X | | -17,779.93 |
| 08/27/2009 | 2806 | White's Landscape S... | 2001 · Accounts Payable | VOID: | | X | | -17,779.93 |
| 08/27/2009 | 2807 | Windmill Sprinkler ... | 2001 · Accounts Payable | | 1,593.96 | X | | -19,373.89 |
| 08/27/2009 | 2808 | Y. G. Yovany Gonza... | 2001 · Accounts Payable | | 1,050.00 | X | | -20,423.89 |

Amerigrow Recycling                                      11/18/2009 5:20 PM

Register: 1048 · Fifth Third Bank - Operating
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 08/28/2009 | | | 1049 · Fifth Third Ban... | Deposit | | X | 20,000.00 | -423.89 |
| 08/28/2009 | | | -split- | Deposit | | X | 10,855.94 | 10,432.05 |
| 08/28/2009 | | | -split- | Deposit | | X | 2,086.80 | 12,518.85 |
| 08/28/2009 | 2809 | BG Katz Nurseries | 2001 · Accounts Payable | | 1,650.00 | X | | 10,868.85 |
| 08/28/2009 | 2810 | Land And Sea Petrol... | 2001 · Accounts Payable | | 8,004.94 | X | | 2,863.91 |
| 08/28/2009 | 2811 | Florida Potting Soils ... | 2001 · Accounts Payable | | 8,373.45 | X | | -5,509.54 |
| 08/28/2009 | 2812 | AT & T | 2001 · Accounts Payable | | 308.39 | X | | -5,817.93 |
| 08/28/2009 | 2813 | Amanda Blair McPh... | 1250 · Misc Other Rec... | | 106.20 | X | | -5,924.13 |
| 08/31/2009 | | | -split- | Deposit | | X | 55,036.80 | 49,112.67 |
| 08/31/2009 | | | -split- | Deposit | | X | 1,512.67 | 50,625.34 |
| 08/31/2009 | 2814 | Agri-source Inc | 2001 · Accounts Payable | | 5,400.00 | X | | 45,225.34 |
| 08/31/2009 | 2815 | AFNN Directory Pro... | 2001 · Accounts Payable | | 347.00 | X | | 44,878.34 |
| 09/01/2009 | | | -split- | Deposit | | X | 14,672.76 | 59,551.10 |
| 09/01/2009 | | | -split- | Deposit | | X | 264.59 | 59,815.69 |
| 09/01/2009 | 2816 | Unifirst Corporation. | 2001 · Accounts Payable | | 687.36 | X | | 59,128.33 |
| 09/01/2009 | 2817 | Carquest. | 2001 · Accounts Payable | | 402.38 | X | | 58,725.95 |
| 09/01/2009 | 2818 | Florida Department o... | Operating Expense:Ve... | 60093551-Jam... | 477.00 | X | | 58,248.95 |
| 09/01/2009 | 2819 | The Plant List. | 2001 · Accounts Payable | | 560.00 | X | | 57,688.95 |
| 09/01/2009 | 2820 | FNGLA | 2001 · Accounts Payable | Exhibitor Invoice | 425.00 | X | | 57,263.95 |
| 09/01/2009 | 2821 | L & L Distributiors. | 2001 · Accounts Payable | | 7,032.10 | X | | 50,231.85 |
| 09/02/2009 | | | -split- | Deposit | | X | 14,259.09 | 64,490.94 |
| 09/02/2009 | | | -split- | Deposit | | X | 361.80 | 64,852.74 |
| 09/02/2009 | 2822 | Atlantic - FEC Fertili... | 2001 · Accounts Payable | | 559.22 | X | | 64,293.52 |
| 09/02/2009 | 2823 | Woodfuel com | 2001 · Accounts Payable | | 5,415.00 | X | | 58,878.52 |
| 09/02/2009 | 2824 | Palm Beach Hose & ... | 2001 · Accounts Payable | VOID: | | X | | 58,878.52 |
| 09/03/2009 | | | -split- | Deposit | | X | 41,911.41 | 100,789.93 |
| 09/03/2009 | | | -split- | Deposit | | X | 434.53 | 101,224.46 |
| 09/03/2009 | | Compupay | Operating Expense:Lab... | agency | 185.71 | X | | 101,038.75 |
| 09/03/2009 | | Compupay | Operating Expense:Lab... | billing | 154.92 | X | | 100,883.83 |
| 09/03/2009 | | Compupay | Operating Expense:Lab... | dir dep | 21,978.25 | X | | 78,905.58 |
| 09/03/2009 | | Compupay | Operating Expense:Lab... | paychecks | 18,390.85 | X | | 60,514.73 |
| 09/03/2009 | | Compupay | Operating Expense:Lab... | tax | 10,666.93 | X | | 49,847.80 |
| 09/03/2009 | 2825 | Glass Ratner | Operating Expense:Oth... | | 1,990.00 | X | | 47,857.80 |
| 09/03/2009 | 2827 | Kelly Tractor | 2001 · Accounts Payable | | 141.60 | X | | 47,716.20 |
| 09/03/2009 | 2828 | Palm Beach Hose & ... | 2001 · Accounts Payable | | 3,587.33 | X | | 44,128.87 |
| 09/04/2009 | | | 1049 · Fifth Third Ban... | Deposit | | X | 15,000.00 | 59,128.87 |
| 09/04/2009 | | | 1250 · Misc Other Rec... | Deposit | | X | 20,000.00 | 79,128.87 |
| 09/04/2009 | | | -split- | Deposit | | X | 14,909.24 | 94,038.11 |
| 09/04/2009 | | | -split- | Deposit | | X | 355.69 | 94,393.80 |
| 09/04/2009 | 2826 | Smiley Gil, Inc. | 2001 · Accounts Payable | | 5,400.00 | X | | 88,993.80 |

## Amerigrow Recycling

11/18/2009 5:20 PM

Register: 1048 · Fifth Third Bank - Operating
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 09/04/2009 | 2829 | Go Green Product an... | 2001 · Accounts Payable | | 3,200.09 | X | | 85,793.71 |
| 09/04/2009 | 2830 | Land And Sea Petrol... | 2001 · Accounts Payable | | 18,132.93 | X | | 67,660.78 |
| 09/04/2009 | 2831 | Florida Department o... | Operating Expense:Ve... | Citation #6008... | 950.00 | X | | 66,710.78 |
| 09/04/2009 | 2832 | Tropical Soil LLC | 2001 · Accounts Payable | | 6,384.00 | X | | 60,326.78 |
| 09/04/2009 | 2833 | Port Consolidated. | 2001 · Accounts Payable | | 2,904.33 | X | | 57,422.45 |
| 09/04/2009 | 2834 | Martino Tire. | 2001 · Accounts Payable | | 1,161.56 | X | | 56,260.89 |
| 09/04/2009 | 2835 | Manuel Cordero | 2001 · Accounts Payable | | 15,550.00 | X | | 40,710.89 |
| 09/04/2009 | 2836 | Liquid Graphics. | 2001 · Accounts Payable | | 1,651.05 | X | | 39,059.84 |
| 09/04/2009 | 2837 | John A. Grant, Jr., Inc. | 2001 · Accounts Payable | | 520.00 | X | | 38,539.84 |
| 09/04/2009 | 2838 | GE Fleet Services. | 2001 · Accounts Payable | | 6,996.30 | X | | 31,543.54 |
| 09/04/2009 | 2839 | Galvez Trucking, Inc. | 2001 · Accounts Payable | | 1,600.00 | X | | 29,943.54 |
| 09/04/2009 | 2840 | Flagler C.D.S., Inc. | 2001 · Accounts Payable | | 4,000.00 | X | | 25,943.54 |
| 09/04/2009 | 2841 | Elite Aluminum Corp. | 2001 · Accounts Payable | | 3,365.00 | X | | 22,578.54 |
| 09/04/2009 | 2842 | Flagler C.D.S., Inc. | Operating Expense:Inv... | | 187.50 | X | | 22,391.04 |
| 09/07/2009 | 2781 | Nuvox Communicati... | 2001 · Accounts Payable | | 715.66 | X | | 21,675.38 |
| 09/08/2009 | | | -split- | Deposit | | X | 49,134.13 | 70,809.51 |
| 09/08/2009 | | | -split- | Deposit | | X | 778.55 | 71,588.06 |
| 09/08/2009 | | | -split- | Deposit | | X | 10,639.73 | 82,227.79 |
| 09/08/2009 | 2843 | Lisa M. Ruth | 2001 · Accounts Payable | | 1,413.75 | X | | 80,814.04 |
| 09/08/2009 | 2844 | Agri-source Inc | 2001 · Accounts Payable | | 3,240.00 | X | | 77,574.04 |
| 09/08/2009 | 2845 | Nextran Truck Center. | 2001 · Accounts Payable | | 1,712.43 | X | | 75,861.61 |
| 09/08/2009 | 2846 | L & L Distributiors. | 2001 · Accounts Payable | | 2,243.57 | X | | 73,618.04 |
| 09/08/2009 | 2847 | James Schry | Operating Expense:Re... | | 1,400.00 | X | | 72,218.04 |
| 09/08/2009 | 2848 | Agri-source Inc | 2001 · Accounts Payable | | 2,160.00 | X | | 70,058.04 |
| 09/09/2009 | | | -split- | Deposit | | X | 11,699.38 | 81,757.42 |
| 09/09/2009 | 2850 | Betrock Information ... | 2001 · Accounts Payable | | 1,448.00 | X | | 80,309.42 |
| 09/09/2009 | 2851 | Woodfuel corn | 2001 · Accounts Payable | | 4,335.00 | X | | 75,974.42 |
| 09/09/2009 | 2853 | Unifirst Corporation. | 2001 · Accounts Payable | | 624.44 | X | | 75,349.98 |
| 09/09/2009 | 2854 | Port Consolidated. | 2001 · Accounts Payable | | 3,205.51 | X | | 72,144.47 |
| 09/10/2009 | | | -split- | Deposit | | X | 18,937.58 | 91,082.05 |
| 09/10/2009 | | | Operating Expense:Ba... | Service Charge | 198.53 | X | | 90,883.52 |
| 09/10/2009 | 2855 | Edward Griffin | 2001 · Accounts Payable | | 2,400.00 | X | | 88,483.52 |
| 09/10/2009 | 2856 | Equifax | 2001 · Accounts Payable | | 199.52 | X | | 88,284.00 |
| 09/11/2009 | | | 1049 · Fifth Third Ban... | Deposit | | X | 9,000.00 | 97,284.00 |
| 09/11/2009 | | | -split- | Deposit | | X | 19,793.75 | 117,077.75 |
| 09/11/2009 | | | -split- | Deposit | | X | 1,051.03 | 118,128.78 |
| 09/11/2009 | | Compupay | Operating Expense:Lab... | agency | 185.71 | X | | 117,943.07 |
| 09/11/2009 | | Compupay | Operating Expense:Lab... | billing | 149.51 | X | | 117,793.56 |
| 09/11/2009 | | Compupay | Operating Expense:Lab... | dir dep | 22,251.14 | X | | 95,542.42 |
| 09/11/2009 | | Compupay | Operating Expense:Lab... | paychecks | 16,475.78 | X | | 79,066.64 |

## Amerigrow Recycling

11/18/2009 5:20 PM

Register: 1048 · Fifth Third Bank - Operating
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 09/11/2009 | | Compupay | Operating Expense:Lab... | tax | 10,124.86 | X | | 68,941.78 |
| 09/11/2009 | 2849 | Nina Plastics. | 2001 · Accounts Payable | | 6,271.67 | X | | 62,670.11 |
| 09/11/2009 | 2852 | Nina Plastics. | 2001 · Accounts Payable | | 6,578.15 | X | | 56,091.96 |
| 09/11/2009 | 2857 | Elite Aluminum Corp. | 2001 · Accounts Payable | | 1,155.00 | X | | 54,936.96 |
| 09/11/2009 | 2858 | Voided Check | Operating Expense:Ad... | | | X | | 54,936.96 |
| 09/11/2009 | 2859 | Land And Sea Petrol... | 2001 · Accounts Payable | | 8,832.56 | X | | 46,104.40 |
| 09/11/2009 | 2860 | CITICAPITAL - Loa... | 2001 · Accounts Payable | | 6,062.21 | X | | 40,042.19 |
| 09/11/2009 | 2861 | Amerigrow | 1043 · Suntrust - Payro... | | 6,769.00 | X | | 33,273.19 |
| 09/11/2009 | 2862 | Atlantic Coast Envir... | 2001 · Accounts Payable | | 3,235.00 | X | | 30,038.19 |
| 09/11/2009 | 2863 | Atlantic - FEC Fertili... | 2001 · Accounts Payable | | 1,122.00 | X | | 28,916.19 |
| 09/11/2009 | 2864 | MBNA -Bank of Am... | MBNA | | 747.29 | X | | 28,168.90 |
| 09/11/2009 | 2865 | Wholesale Auto Radi... | 2001 · Accounts Payable | | 250.00 | X | | 27,918.90 |
| 09/11/2009 | 2866 | W.R. Grace | 2001 · Accounts Payable | | 1,650.00 | X | | 26,268.90 |
| 09/11/2009 | 2867 | White's Landscape S... | 2001 · Accounts Payable | | 5,344.50 | X | | 20,924.40 |
| 09/11/2009 | 2868 | Treecycle Land Clear... | 2001 · Accounts Payable | | 5,130.00 | X | | 15,794.40 |
| 09/11/2009 | 2869 | Irvine Wood Recovery. | 2001 · Accounts Payable | | 3,750.00 | X | | 12,044.40 |
| 09/12/2009 | | Fifth Third Bank | 5915 · Interest Expense... | | 2,819.33 | X | | 9,225.07 |
| 09/13/2009 | 2870 | Colonial Life | 2001 · Accounts Payable | BCN #E3363165 | 2,065.16 | X | | 7,159.91 |
| 09/14/2009 | | | -split- | Deposit | | X | 83,122.75 | 90,282.66 |
| 09/14/2009 | | | -split- | Deposit | | X | 13.07 | 90,295.73 |
| 09/14/2009 | NSF | La Mousse Acadienne | Operating Expense:Oth... | Massey Landsc... | 350.00 | X | | 89,945.73 |
| 09/14/2009 | 2871 | La Mousse Acadienne | 2001 · Accounts Payable | | 27,940.00 | X | | 62,005.73 |
| 09/14/2009 | 2872 | Manuel Cordero | 2001 · Accounts Payable | | 14,450.00 | X | | 47,555.73 |
| 09/14/2009 | 2873 | Earthwise Landscape... | 2001 · Accounts Payable | | 728.75 | X | | 46,826.98 |
| 09/15/2009 | | | -split- | Deposit | | X | 18,143.89 | 64,970.87 |
| 09/15/2009 | | | -split- | Deposit | | X | 201.28 | 65,172.15 |
| 09/15/2009 | 2874 | Express Blower | 2001 · Accounts Payable | | 3,650.04 | X | | 61,522.11 |
| 09/15/2009 | 2875 | Agri-source Inc | 2001 · Accounts Payable | | 5,400.00 | X | | 56,122.11 |
| 09/15/2009 | 2876 | American Express - ... | 2001 · Accounts Payable | | 10,253.91 | X | | 45,868.20 |
| 09/15/2009 | 2877 | AT & T | 2001 · Accounts Payable | | 52.30 | X | | 45,815.90 |
| 09/15/2009 | 2878 | AT & T | 2001 · Accounts Payable | | 63.83 | X | | 45,752.07 |
| 09/15/2009 | 2879 | At & T Advertising | 2001 · Accounts Payable | Acct 801345693 | 171.59 | X | | 45,580.48 |
| 09/15/2009 | 2880 | Sprint. | 2001 · Accounts Payable | | 50.19 | X | | 45,530.29 |
| 09/15/2009 | 2881 | Verizon Wireless 38... | 2001 · Accounts Payable | Account 38020... | 156.45 | X | | 45,373.84 |
| 09/15/2009 | 2882 | Verizon Wireless*48... | 2001 · Accounts Payable | 480206860-00... | 140.06 | X | | 45,233.78 |
| 09/15/2009 | 2883 | Ford Motor Credit | -split- | | 434.57 | X | | 44,799.21 |
| 09/15/2009 | 2884 | Regions Equipment ... | Long Term Liabilities:... | | 2,760.51 | X | | 42,038.70 |
| 09/15/2009 | 2885 | M & S Fin. | Operating Expense:Oth... | | 5,175.00 | X | | 36,863.70 |
| 09/16/2009 | | | -split- | Deposit | | X | 25,125.23 | 61,988.93 |
| 09/16/2009 | | | -split- | Deposit | | X | 444.93 | 62,433.86 |

Amerigrow Recycling

11/18/2009 5:20 PM

Register: 1048 · Fifth Third Bank - Operating
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 09/16/2009 | 2886 | Unifirst Corporation. | 2001 · Accounts Payable | | 698.39 | X | | 61,735.47 |
| 09/16/2009 | 2887 | Hoodridge TM | 2001 · Accounts Payable | | 3,082.50 | X | | 58,652.97 |
| 09/16/2009 | 2888 | Komatsu Financial | 2001 · Accounts Payable | | 2,374.67 | X | | 56,278.30 |
| 09/16/2009 | 2889 | Huntington Bank - 2... | Long Term Liabilities:... | | 2,102.58 | X | | 54,175.72 |
| 09/16/2009 | 2890 | Santom Transport, Inc | 2001 · Accounts Payable | | 907.00 | X | | 53,268.72 |
| 09/17/2009 | | | -split- | Deposit | | X | 24,303.68 | 77,572.40 |
| 09/17/2009 | | | -split- | Deposit | | X | 742.52 | 78,314.92 |
| 09/17/2009 | | Compupay | Operating Expense:Lab... | PAYCHECKS | 16,577.95 | X | | 61,736.97 |
| 09/17/2009 | | Compupay | Operating Expense:Lab... | DIR DEP | 20,659.86 | X | | 41,077.11 |
| 09/17/2009 | | Compupay | Operating Expense:Lab... | TAX | 10,189.93 | X | | 30,887.18 |
| 09/17/2009 | | Compupay | Operating Expense:Lab... | AGENCY | 132.41 | X | | 30,754.77 |
| 09/17/2009 | | Compupay | Operating Expense:Lab... | BILLING | 153.63 | X | | 30,601.14 |
| 09/17/2009 | 2891 | Chevron and Texaco ... | 2001 · Accounts Payable | | 102.74 | X | | 30,498.40 |
| 09/17/2009 | 2892 | Flagler Construction | 2001 · Accounts Payable | | 222.79 | X | | 30,275.61 |
| 09/17/2009 | 2893 | Woodfuel com | 2001 · Accounts Payable | | 3,425.00 | X | | 26,850.61 |
| 09/17/2009 | 2894 | Turner Trucking | Long Term Liabilities:... | | 2,500.00 | X | | 24,350.61 |
| 09/17/2009 | 2895 | Turner Trucking | Long Term Liabilities:... | | 1,666.67 | X | | 22,683.94 |
| 09/17/2009 | 2896 | Advanced Pallets-Inv... | 2001 · Accounts Payable | | 5,320.00 | X | | 17,363.94 |
| 09/18/2009 | | | -split- | Deposit | | X | 37,665.70 | 55,029.64 |
| 09/18/2009 | | | -split- | Deposit | | X | 1,143.74 | 56,173.38 |
| 09/18/2009 | 2897 | AECOM USA Inc. | 2001 · Accounts Payable | | 2,109.38 | X | | 54,064.00 |
| 09/18/2009 | 2898 | Andrew M. Schwartz... | 2001 · Accounts Payable | | 3,274.17 | X | | 50,789.83 |
| 09/18/2009 | 2899 | Blaxberg Grayson K... | 2001 · Accounts Payable | | 500.00 | X | | 50,289.83 |
| 09/18/2009 | 2900 | Blaxberg Grayson K... | 2001 · Accounts Payable | | 5,796.99 | X | | 44,492.84 |
| 09/18/2009 | 2901 | Lexow, Johnson, Kof... | 2001 · Accounts Payable | | 3,668.00 | X | | 40,824.84 |
| 09/18/2009 | 2902 | WMS Consulting | 2001 · Accounts Payable | | 1,258.00 | X | | 39,566.84 |
| 09/18/2009 | 2903 | Superior Mulch | 2001 · Accounts Payable | | 3,410.88 | X | | 36,155.96 |
| 09/18/2009 | 2904 | AmeriGas | 2001 · Accounts Payable | | 688.06 | X | | 35,467.90 |
| 09/21/2009 | | | -split- | Deposit | | X | 35,290.26 | 70,758.16 |
| 09/21/2009 | | | -split- | Deposit | | X | 382.14 | 71,140.30 |
| 09/21/2009 | | | -split- | Deposit | | X | 11,364.82 | 82,505.12 |
| 09/21/2009 | 2905 | Euler Hermes ACI | 2001 · Accounts Payable | Policy #4164544 | 1,988.62 | X | | 80,516.50 |
| 09/21/2009 | 2906 | Aramatic Refreshme... | 2001 · Accounts Payable | | 1,248.02 | X | | 79,268.48 |
| 09/21/2009 | 2907 | Superior Wash. | 2001 · Accounts Payable | | 2,362.50 | X | | 76,905.98 |
| 09/21/2009 | 2908 | BEIC. | Operating Expense:Lab... | | 8,314.67 | X | | 68,591.31 |
| 09/21/2009 | 2909 | First Insurance Fundi... | Operating Expense:Ins... | | 22,263.38 | X | | 46,327.93 |
| 09/22/2009 | | | 1049 · Fifth Third Ban... | Deposit | | X | 15,000.00 | 61,327.93 |
| 09/22/2009 | | | -split- | Deposit | | X | 54,983.36 | 116,311.29 |
| 09/22/2009 | | | -split- | Deposit | | X | 186.72 | 116,498.01 |
| 09/22/2009 | 2910 | Land And Sea Petrol... | 2001 · Accounts Payable | | 8,944.21 | X | | 107,553.80 |

Amerigrow Recycling                                                11/18/2009 5:20 PM

Register: 1048 · Fifth Third Bank - Operating
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 09/22/2009 | 2911 | BEC Auto Repair su... | 2001 · Accounts Payable | | 1,097.49 | X | | 106,456.31 |
| 09/22/2009 | 2912 | VMG Truck & Traile... | 2001 · Accounts Payable | | 4,225.00 | X | | 102,231.31 |
| 09/22/2009 | 2913 | Agri-source Inc | 2001 · Accounts Payable | | 6,480.00 | X | | 95,751.31 |
| 09/22/2009 | 2914 | Cormier, Michael | 2001 · Accounts Payable | | 750.00 | X | | 95,001.31 |
| 09/22/2009 | 2915 | AmeriGas | 2001 · Accounts Payable | | 1,589.61 | X | | 93,411.70 |
| 09/23/2009 | | | -split- | Deposit | | X | 22,134.92 | 115,546.62 |
| 09/23/2009 | | | -split- | Deposit | | X | 959.16 | 116,505.78 |
| 09/23/2009 | 2916 | PC Lan Techs | 2001 · Accounts Payable | | 3,267.25 | X | | 113,238.53 |
| 09/23/2009 | 2917 | Konica Minolta #662... | 2001 · Accounts Payable | 662041/662041 | 231.50 | X | | 113,007.03 |
| 09/23/2009 | 2918 | Konica Minolta Busi... | Operating Expense:Ma... | | 179.99 | X | | 112,827.04 |
| 09/23/2009 | 2919 | Flagler Construction | 2001 · Accounts Payable | | 646.22 | X | | 112,180.82 |
| 09/23/2009 | 2920 | Unifirst Corporation. | 2001 · Accounts Payable | | 607.54 | X | | 111,573.28 |
| 09/23/2009 | 2921 | Woodfuel com | 2001 · Accounts Payable | | 5,675.00 | X | | 105,898.28 |
| 09/23/2009 | 2922 | Contech Constructio... | 2001 · Accounts Payable | VOID: | | X | | 105,898.28 |
| 09/23/2009 | 2923 | Amerimulch Dispersi... | 2001 · Accounts Payable | | 29,747.50 | X | | 76,150.78 |
| 09/23/2009 | 2924 | BWI-Homestead | 2001 · Accounts Payable | | 2,246.19 | X | | 73,904.59 |
| 09/23/2009 | 2925 | Conrad Yelvington D... | 2001 · Accounts Payable | | 2,053.37 | X | | 71,851.22 |
| 09/23/2009 | 2926 | Manuel Cordero | 2001 · Accounts Payable | | 14,700.00 | X | | 57,151.22 |
| 09/23/2009 | 2927 | Tropical Soil LLC | 2001 · Accounts Payable | | 6,384.00 | X | | 50,767.22 |
| 09/23/2009 | 2928 | W.R. Grace | 2001 · Accounts Payable | | 1,155.00 | X | | 49,612.22 |
| 09/23/2009 | 2929 | White's Landscape S... | 2001 · Accounts Payable | | 6,203.50 | X | | 43,408.72 |
| 09/23/2009 | 2930 | AT & T | 2001 · Accounts Payable | | 576.04 | X | | 42,832.68 |
| 09/23/2009 | 2931 | Sprint. | 2001 · Accounts Payable | | 3,637.10 | X | | 39,195.58 |
| 09/23/2009 | 2932 | Contech Constructio... | 2001 · Accounts Payable | | 1,520.82 | X | | 37,674.76 |
| 09/23/2009 | 2933 | Palm Beach Hose & ... | 2001 · Accounts Payable | | 3,987.38 | X | | 33,687.38 |
| 09/24/2009 | | | -split- | Deposit | | X | 19,644.93 | 53,332.31 |
| 09/24/2009 | | | -split- | Deposit | | X | 1,129.17 | 54,461.48 |
| 09/24/2009 | | Compupay | Operating Expense:Lab... | paychecks | 18,104.61 | X | | 36,356.87 |
| 09/24/2009 | | Compupay | Operating Expense:Lab... | dir dep | 23,585.56 | X | | 12,771.31 |
| 09/24/2009 | | Compupay | Operating Expense:Lab... | tax | 11,337.25 | X | | 1,434.06 |
| 09/24/2009 | | Compupay | Operating Expense:Lab... | agency | 132.41 | X | | 1,301.65 |
| 09/24/2009 | | Compupay | Operating Expense:Lab... | billing | 153.05 | X | | 1,148.60 |
| 09/24/2009 | NSF | | Operating Expense:Oth... | Norgen Landsc... | 300.00 | X | | 848.60 |
| 09/24/2009 | 2934 | Floragem Investment... | Operating Expense:Oth... | VOID: | | X | | 848.60 |
| 09/24/2009 | 2935 | Perry & Taylor, P.A. | 2001 · Accounts Payable | Payment On A... | 10,566.19 | X | | -9,717.59 |
| 09/24/2009 | 2936 | Go Green Product an... | 2001 · Accounts Payable | | 3,407.26 | X | | -13,124.85 |
| 09/25/2009 | | | -split- | Deposit | | X | 29,205.99 | 16,081.14 |
| 09/25/2009 | | | -split- | Deposit | | X | 788.83 | 16,869.97 |
| 09/25/2009 | 2937 | Lisa M. Ruth | 2001 · Accounts Payable | | 215.50 | X | | 16,654.47 |
| 09/25/2009 | 2938 | Treecycle Land Clear... | 2001 · Accounts Payable | | 1,125.00 | X | | 15,529.47 |

Amerigrow Recycling                                      11/18/2009 5:20 PM

Register: 1048 · Fifth Third Bank - Operating
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 09/25/2009 | 2939 | Toilet Taxi Corp. | 2001 · Accounts Payable | | 696.00 | X | | 14,833.47 |
| 09/28/2009 | | | -split- | Deposit | | X | 39,327.77 | 54,161.24 |
| 09/28/2009 | | | -split- | Deposit | | X | 197.92 | 54,359.16 |
| 09/28/2009 | NSF | | Operating Expense:Oth... | Cut Above the ... | 156.00 | X | | 54,203.16 |
| 09/28/2009 | 2940 | Land And Sea Petrol... | 2001 · Accounts Payable | | 16,340.55 | X | | 37,862.61 |
| 09/28/2009 | 2941 | Advanced Pallets-Inv... | 2001 · Accounts Payable | | 2,660.00 | X | | 35,202.61 |
| 09/28/2009 | 2942 | Adventures in Advert... | 2001 · Accounts Payable | | 236.00 | X | | 34,966.61 |
| 09/28/2009 | 2943 | AT & T | 2001 · Accounts Payable | | 31.03 | X | | 34,935.58 |
| 09/28/2009 | 2944 | FNGLA | 2001 · Accounts Payable | VOID: Exhibit... | | X | | 34,935.58 |
| 09/28/2009 | 2945 | Peanuts Country Store. | 2001 · Accounts Payable | | 1,017.66 | X | | 33,917.92 |
| 09/28/2009 | 2946 | Selective Investigatio... | 2001 · Accounts Payable | | 275.00 | X | | 33,642.92 |
| 09/28/2009 | 2947 | Siftex Equipment Co... | 2001 · Accounts Payable | | 82.79 | X | | 33,560.13 |
| 09/28/2009 | 2948 | South Florida Contra... | 2001 · Accounts Payable | | 306.15 | X | | 33,253.98 |
| 09/28/2009 | 2949 | United Parcel Service. | 2001 · Accounts Payable | | 34.09 | X | | 33,219.89 |
| 09/28/2009 | 2950 | Windmill Sprinkler ... | 2001 · Accounts Payable | | 446.19 | X | | 32,773.70 |
| 09/28/2009 | 2951 | Y. G. Yovany Gonza... | 2001 · Accounts Payable | | 750.00 | X | | 32,023.70 |
| 09/29/2009 | | | -split- | Deposit | | X | 23,169.96 | 55,193.66 |
| 09/29/2009 | | | -split- | Deposit | | X | 210.01 | 55,403.67 |
| 09/29/2009 | 2952 | Atlantic - FEC Fertili... | 2001 · Accounts Payable | | 1,150.06 | X | | 54,253.61 |
| 09/29/2009 | 2953 | Euler Hermes ACI | 2001 · Accounts Payable | | 2,100.94 | X | | 52,152.67 |
| 09/29/2009 | 2954 | LLS Enterprises of S... | 2001 · Accounts Payable | | 1,000.00 | X | | 51,152.67 |
| 09/30/2009 | | | -split- | Deposit | | X | 22,555.07 | 73,707.74 |
| 09/30/2009 | | | -split- | Deposit | | X | 56.60 | 73,764.34 |
| 09/30/2009 | | | 1499 · Undeposited Fu... | Deposit | | X | 3,500.00 | 77,264.34 |
| 09/30/2009 | 2955 | Unifirst Corporation. | 2001 · Accounts Payable | | 720.25 | X | | 76,544.09 |
| 09/30/2009 | 2956 | Woodfuel com | 2001 · Accounts Payable | | 5,563.96 | X | | 70,980.13 |
| 09/30/2009 | 2957 | Wachovia Bank NA | Long Term Liabilities:... | | 1,000.00 | X | | 69,980.13 |
| 09/30/2009 | 2958 | Agri-source Inc | 2001 · Accounts Payable | | 6,100.00 | X | | 63,880.13 |
| 10/01/2009 | | | -split- | Deposit | | X | 21,184.84 | 85,064.97 |
| 10/01/2009 | | | -split- | Deposit | | X | 507.35 | 85,572.32 |
| 10/01/2009 | | Compupay | Operating Expense:Lab... | agency | 132.41 | X | | 85,439.91 |
| 10/01/2009 | | Compupay | Operating Expense:Lab... | billing | 154.26 | X | | 85,285.65 |
| 10/01/2009 | | Compupay | Operating Expense:Lab... | dir dep | 23,110.84 | X | | 62,174.81 |
| 10/01/2009 | | Compupay | Operating Expense:Lab... | paychecks | 22,995.11 | X | | 39,179.70 |
| 10/01/2009 | | Compupay | Operating Expense:Lab... | tax | 12,886.54 | X | | 26,293.16 |
| 10/02/2009 | | | 1049 · Fifth Third Ban... | Deposit | | X | 40,000.00 | 66,293.16 |
| 10/02/2009 | | | -split- | Deposit | | X | 12,455.46 | 78,748.62 |
| 10/02/2009 | | | -split- | Deposit | | X | 1,445.61 | 80,194.23 |
| 10/02/2009 | 2959 | Aetna, Inc. | 2001 · Accounts Payable | | 13,742.00 | X | | 66,452.23 |
| 10/02/2009 | 2960 | Land And Sea Petrol... | 2001 · Accounts Payable | | 13,744.59 | X | | 52,707.64 |

## Amerigrow Recycling

11/18/2009 5:20 PM

Register: 1048 · Fifth Third Bank - Operating
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 10/02/2009 | 2961 | Perry & Taylor, P.A. | 2001 · Accounts Payable | Payment on Ac... | 5,000.00 | X | | 47,707.64 |
| 10/02/2009 | 2962 | James Schry | Operating Expense:Re... | | 1,400.00 | X | | 46,307.64 |
| 10/02/2009 | 2963 | Home Depot. | 2001 · Accounts Payable | | 250.41 | X | | 46,057.23 |
| 10/02/2009 | 2964 | Atlantic Coast Envir... | 2001 · Accounts Payable | | 6,570.00 | X | | 39,487.23 |
| 10/05/2009 | | | -split- | Deposit | | X | 29,210.53 | 68,697.76 |
| 10/05/2009 | | | -split- | Deposit | | X | 1,461.63 | 70,159.39 |
| 10/05/2009 | NSF | | Operating Expense:Oth... | United Nursery... | 7,200.00 | X | | 62,959.39 |
| 10/05/2009 | 2965 | Kubota Credit Corpo... | Long Term Liabilities:... | | 353.33 | X | | 62,606.06 |
| 10/05/2009 | 2966 | Vidal A. Anselmo | 1250 · Misc Other Rec... | | 321.60 | X | | 62,284.46 |
| 10/06/2009 | | | -split- | Deposit | | X | 13,615.59 | 75,900.05 |
| 10/06/2009 | | | -split- | Deposit | | X | 769.43 | 76,669.48 |
| 10/06/2009 | 2967 | La Mousse Acadienne | 2001 · Accounts Payable | | 22,352.00 | X | | 54,317.48 |
| 10/06/2009 | 2968 | Port Consolidated. | 2001 · Accounts Payable | | 4,316.33 | X | | 50,001.15 |
| 10/07/2009 | | | -split- | Deposit | | X | 27,559.93 | 77,561.08 |
| 10/07/2009 | | | -split- | Deposit | | X | 244.23 | 77,805.31 |
| 10/07/2009 | 2969 | Flagler Construction | 2001 · Accounts Payable | | 427.91 | X | | 77,377.40 |
| 10/07/2009 | 2970 | Unifirst Corporation. | 2001 · Accounts Payable | | 613.24 | X | | 76,764.16 |
| 10/07/2009 | 2971 | FPL | 2001 · Accounts Payable | | 4,845.86 | X | | 71,918.30 |
| 10/07/2009 | 2972 | Total Compliance Ne... | 2001 · Accounts Payable | Annual Renew... | 2.00 | X | | 71,916.30 |
| 10/07/2009 | 2973 | MBNA -Bank of Am... | MBNA | | 107.38 | X | | 71,808.92 |
| 10/07/2009 | 2974 | Atlantic - FEC Fertili... | 2001 · Accounts Payable | | 1,122.00 | X | | 70,686.92 |
| 10/07/2009 | 2975 | Nina Plastics. | 2001 · Accounts Payable | | 13,491.60 | X | | 57,195.32 |
| 10/08/2009 | | | -split- | Deposit | | X | 17,372.64 | 74,567.96 |
| 10/08/2009 | | | -split- | Deposit | | X | 265.00 | 74,832.96 |
| 10/08/2009 | | | -split- | Deposit | | X | 12,355.12 | 87,188.08 |
| 10/08/2009 | | Compupay | Operating Expense:Lab... | paychecks | 26,046.29 | X | | 61,141.79 |
| 10/08/2009 | | Compupay | Operating Expense:Lab... | dir dep | 23,547.77 | X | | 37,594.02 |
| 10/08/2009 | | Compupay | Operating Expense:Lab... | tax | 14,375.48 | X | | 23,218.54 |
| 10/08/2009 | | Compupay | Operating Expense:Lab... | agency | 132.41 | X | | 23,086.13 |
| 10/08/2009 | | Compupay | Operating Expense:Lab... | billing | 154.59 | X | | 22,931.54 |
| 10/08/2009 | 2976 | RecycleTech | 2001 · Accounts Payable | | 600.00 | X | | 22,331.54 |
| 10/08/2009 | 2977 | U.S. Concrete Produ... | 2001 · Accounts Payable | | 70.00 | X | | 22,261.54 |
| 10/08/2009 | 2978 | Agri-source Inc | 2001 · Accounts Payable | | 5,400.00 | X | | 16,861.54 |
| 10/08/2009 | 2979 | Equifax | 2001 · Accounts Payable | | 167.44 | X | | 16,694.10 |
| 10/09/2009 | | | -split- | Deposit | | X | 20,758.59 | 37,452.69 |
| 10/09/2009 | | | -split- | Deposit | | X | 65.78 | 37,518.47 |
| 10/09/2009 | | | 1049 · Fifth Third Ban... | Deposit | | X | 25,502.57 | 63,021.04 |
| 10/09/2009 | 2980 | Tropical Soil LLC | 2001 · Accounts Payable | | 3,192.00 | X | | 59,829.04 |
| 10/09/2009 | 2981 | Santom Transport, Inc | 2001 · Accounts Payable | | 907.00 | X | | 58,922.04 |
| 10/09/2009 | 2982 | Stina Brothers Inc. | 1110 · A/R Customers | VOID: | | X | | 58,922.04 |

Amerigrow Recycling                                          11/18/2009 5:20 PM

Register: 1048 · Fifth Third Bank - Operating
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 10/09/2009 | 2983 | OPIS | 2001 · Accounts Payable | Acct 138142 | 118.50 | X | | 58,803.54 |
| 10/09/2009 | 2984 | Land And Sea Petrol... | 2001 · Accounts Payable | | 11,543.06 | X | | 47,260.48 |
| 10/09/2009 | 2985 | Woodfuel com | 2001 · Accounts Payable | | 6,036.90 | X | | 41,223.58 |
| 10/09/2009 | 2986 | Land And Sea Petrol... | 2001 · Accounts Payable | | 3,618.28 | X | | 37,605.30 |
| 10/09/2009 | 2987 | Go Green Product an... | 2001 · Accounts Payable | | 4,726.96 | X | | 32,878.34 |
| 10/10/2009 | | | Operating Expense:Ba... | Service Charge | 199.15 | X | | 32,679.19 |
| 10/12/2009 | 2988 | Thermo King | 2001 · Accounts Payable | | 236.65 | X | | 32,442.54 |
| 10/12/2009 | 2989 | American Express - ... | 2001 · Accounts Payable | | 15,000.00 | X | | 17,442.54 |
| 10/13/2009 | | | 1049 · Fifth Third Ban... | Deposit | | X | 5,430.50 | 22,873.04 |
| 10/13/2009 | | Fifth Third Bank | 5915 · Interest Expense... | | 2,702.82 | X | | 20,170.22 |
| 10/13/2009 | 2990 | Finn Corp | 2001 · Accounts Payable | | 201.25 | X | | 19,968.97 |
| 10/13/2009 | 2991 | Kelly Tractor | 2001 · Accounts Payable | | 978.67 | X | | 18,990.30 |
| 10/13/2009 | 2992 | M & S Fin. | Operating Expense:Oth... | | 5,175.00 | X | | 13,815.30 |
| 10/13/2009 | 2993 | BWI-Homestead | 2001 · Accounts Payable | | 2,847.36 | X | | 10,967.94 |
| 10/13/2009 | 2994 | Cardinal Detecto | 2001 · Accounts Payable | | 460.00 | X | | 10,507.94 |
| 10/13/2009 | 2995 | Carquest. | 2001 · Accounts Payable | | 66.42 | X | | 10,441.52 |
| 10/13/2009 | 2996 | FNGLA- Dade Chapter | 2001 · Accounts Payable | Dade Foligae g... | 100.00 | X | | 10,341.52 |
| 10/13/2009 | 2997 | John A. Grant, Jr., Inc. | 2001 · Accounts Payable | | 892.50 | X | | 9,449.02 |
| 10/13/2009 | 2998 | Nursery Report | 2001 · Accounts Payable | | 970.00 | X | | 8,479.02 |
| 10/13/2009 | 2999 | Onvia | 2001 · Accounts Payable | | 1,095.00 | X | | 7,384.02 |
| 10/13/2009 | 3000 | W.R. Grace | 2001 · Accounts Payable | | 3,465.00 | X | | 3,919.02 |
| 10/14/2009 | 3001 | Best Electric Connec... | 2001 · Accounts Payable | | 1,563.78 | X | | 2,355.24 |
| 10/14/2009 | 3002 | AT & T | 2001 · Accounts Payable | 997291228 | 120.17 | X | | 2,235.07 |
| 10/14/2009 | 3003 | Construction Hydrau... | 2001 · Accounts Payable | | 354.86 | X | | 1,880.21 |
| 10/14/2009 | 3004 | Harrell's Fertilizer | 2001 · Accounts Payable | | 1,041.00 | X | | 839.21 |
| 10/14/2009 | 3005 | Parkland Printing & ... | 2001 · Accounts Payable | | 81.20 | X | | 758.01 |
| 10/14/2009 | 3006 | Pure Beverage Syste... | 2001 · Accounts Payable | | 71.30 | X | | 686.71 |
| 10/15/2009 | 3007 | Chevron and Texaco ... | 2001 · Accounts Payable | | 169.02 | X | | 517.69 |
| 10/15/2009 | 3008 | AT & T | 2001 · Accounts Payable | | 235.37 | X | | 282.32 |
| 10/15/2009 | 3009 | Pitney Bowes Corpor... | 2001 · Accounts Payable | | 42.55 | X | | 239.77 |

Amerigrow Recycling

11/18/2009 5:21 PM

Register: 1049 · Fifth Third Bank - Merchant
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 08/01/2009 | | | 1499 · Undeposited Fu... | Deposit | | X | 40.47 | 4,082.52 |
| 08/03/2009 | | | -split- | Deposit | | X | 3,589.23 | 7,671.75 |
| 08/03/2009 | | | Operating Expense:Oth... | | 336.22 | X | | 7,335.53 |
| 08/04/2009 | | | 1499 · Undeposited Fu... | Deposit | | X | 95.32 | 7,430.85 |
| 08/05/2009 | | | -split- | Deposit | | X | 4,099.00 | 11,529.85 |
| 08/07/2009 | | | -split- | Deposit | | X | 2,772.18 | 14,302.03 |
| 08/07/2009 | | | -split- | Deposit | | X | 2,857.80 | 17,159.83 |
| 08/08/2009 | | | -split- | Deposit | | X | 311.28 | 17,471.11 |
| 08/10/2009 | EH727 | | 1250 · Misc Other Rec... | Jupiter custome... | | X | 134.04 | 17,605.15 |
| 08/11/2009 | | | -split- | Deposit | | X | 266.12 | 17,871.27 |
| 08/11/2009 | | | -split- | Deposit | | X | 719.78 | 18,591.05 |
| 08/12/2009 | | | -split- | Deposit | | X | 30.00 | 18,621.05 |
| 08/13/2009 | | | -split- | Deposit | | X | 12,518.26 | 31,139.31 |
| 08/14/2009 | | | -split- | Deposit | | X | 669.76 | 31,809.07 |
| 08/14/2009 | | | 1048 · Fifth Third Ban... | transfer | 15,000.00 | X | | 16,809.07 |
| 08/17/2009 | | | -split- | Deposit | | X | 172.45 | 16,981.52 |
| 08/17/2009 | | | -split- | Deposit | | X | 1,161.27 | 18,142.79 |
| 08/18/2009 | | | -split- | Deposit | | X | 280.90 | 18,423.69 |
| 08/18/2009 | | Florida Department o... | 2031 · Sales Tax Payable | | 11,386.75 | X | | 7,036.94 |
| 08/19/2009 | | | -split- | Deposit | | X | 3,100.01 | 10,136.95 |
| 08/20/2009 | | | -split- | Deposit | | X | 159.34 | 10,296.29 |
| 08/21/2009 | | | -split- | Deposit | | X | 191.00 | 10,487.29 |
| 08/24/2009 | | | 1499 · Undeposited Fu... | Deposit | | X | 18.00 | 10,505.29 |
| 08/24/2009 | | | -split- | Deposit | | X | 6,986.20 | 17,491.49 |
| 08/25/2009 | | | -split- | Deposit | | X | 2,093.01 | 19,584.50 |
| 08/26/2009 | | | -split- | Deposit | | X | 1,206.81 | 20,791.31 |
| 08/27/2009 | | | -split- | Deposit | | X | 7,641.52 | 28,432.83 |
| 08/28/2009 | | | 1048 · Fifth Third Ban... | | 20,000.00 | X | | 8,432.83 |
| 08/28/2009 | | | -split- | Deposit | | X | 176.33 | 8,609.16 |
| 08/29/2009 | | | -split- | Deposit | | X | 252.41 | 8,861.57 |
| 08/31/2009 | | | -split- | Deposit | | X | 7,319.24 | 16,180.81 |
| 08/31/2009 | | | Operating Expense:Oth... | | 119.17 | X | | 16,061.64 |
| 08/31/2009 | | | Operating Expense:Ba... | Service Charge | 31.70 | X | | 16,029.94 |
| 08/31/2009 | | | Operating Expense:Oth... | monthly charge | 1,121.07 | X | | 14,908.87 |
| 09/01/2009 | | | -split- | Deposit | | X | 1,546.00 | 16,454.87 |
| 09/02/2009 | | | -split- | Deposit | | X | 2,888.19 | 19,343.06 |
| 09/03/2009 | | | -split- | Deposit | | X | 3,001.11 | 22,344.17 |
| 09/04/2009 | | | 1048 · Fifth Third Ban... | transfer | 15,000.00 | X | | 7,344.17 |
| 09/04/2009 | | | -split- | Deposit | | X | 1,380.95 | 8,725.12 |
| 09/09/2009 | | | -split- | Deposit | | X | 447.62 | 9,172.74 |

## Amerigrow Recycling

11/18/2009 5:21 PM

Register: 1049 · Fifth Third Bank - Merchant
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 09/10/2009 | | | -split- | Deposit | | X | 2,210.18 | 11,382.92 |
| 09/11/2009 | | | 1048 · Fifth Third Ban... | transfer | 9,000.00 | X | | 2,382.92 |
| 09/11/2009 | | | -split- | Deposit | | X | 12,636.90 | 15,019.82 |
| 09/14/2009 | | | -split- | Deposit | | X | 274.54 | 15,294.36 |
| 09/15/2009 | | | -split- | Deposit | | X | 366.11 | 15,660.47 |
| 09/16/2009 | | | -split- | Deposit | | X | 8,155.67 | 23,816.14 |
| 09/16/2009 | EH753 | | 1250 · Misc Other Rec... | Vila N Son pay... | | X | 718.89 | 24,535.03 |
| 09/18/2009 | | | -split- | Deposit | | X | 8,870.94 | 33,405.97 |
| 09/18/2009 | | Florida Department o... | 2031 · Sales Tax Payable | | 12,864.69 | X | | 20,541.28 |
| 09/19/2009 | | | -split- | Deposit | | X | 104.94 | 20,646.22 |
| 09/21/2009 | | | -split- | Deposit | | X | 1,273.50 | 21,919.72 |
| 09/22/2009 | | | 1048 · Fifth Third Ban... | transfer | 15,000.00 | X | | 6,919.72 |
| 09/22/2009 | | | -split- | Deposit | | X | 447.68 | 7,367.40 |
| 09/23/2009 | | | -split- | Deposit | | X | 898.89 | 8,266.29 |
| 09/24/2009 | | | -split- | Deposit | | X | 252.80 | 8,519.09 |
| 09/25/2009 | | | -split- | Deposit | | X | 86.68 | 8,605.77 |
| 09/26/2009 | | | 1499 · Undeposited Fu... | Deposit | | X | 191.70 | 8,797.47 |
| 09/28/2009 | | | -split- | Deposit | | X | 3,745.28 | 12,542.75 |
| 09/29/2009 | | | -split- | Deposit | | X | 25,422.30 | 37,965.05 |
| 09/29/2009 | EH764 | | 1250 · Misc Other Rec... | | | X | 1,277.79 | 39,242.84 |
| 09/30/2009 | | | -split- | Deposit | | X | 11,115.96 | 50,358.80 |
| 09/30/2009 | | | Operating Expense:Ba... | Service Charge | 31.45 | X | | 50,327.35 |
| 10/01/2009 | | | -split- | Deposit | | X | 391.07 | 50,718.42 |
| 10/01/2009 | | | Operating Expense:Oth... | September | 2,078.57 | X | | 48,639.85 |
| 10/02/2009 | | | 1048 · Fifth Third Ban... | transfer | 40,000.00 | X | | 8,639.85 |
| 10/02/2009 | | | -split- | Deposit | | X | 11,161.31 | 19,801.16 |
| 10/03/2009 | | | -split- | Deposit | | X | 699.31 | 20,500.47 |
| 10/05/2009 | | | -split- | Deposit | | X | 139.98 | 20,640.45 |
| 10/07/2009 | | | -split- | Deposit | | X | 4,884.49 | 25,524.94 |
| 10/08/2009 | | | -split- | Deposit | | X | 2,697.48 | 28,222.42 |
| 10/09/2009 | | | -split- | Deposit | | X | 311.42 | 28,533.84 |
| 10/09/2009 | | | 1048 · Fifth Third Ban... | TRANSFER | 25,502.57 | X | | 3,031.27 |
| 10/10/2009 | | | 1499 · Undeposited Fu... | Deposit | | X | 12.00 | 3,043.27 |
| 10/12/2009 | | | -split- | Deposit | | X | 2,440.12 | 5,483.39 |
| 10/13/2009 | | | 1048 · Fifth Third Ban... | transfer | 5,430.50 | X | | 52.89 |

## Amerigrow Recycling

11/18/2009 5:21 PM

Register: 1043 · Suntrust - Payroll Account
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 08/11/2009 | 1006 | Amerigrow | 1042 · Suntrust - Opera... | | | X | 6,000.00 | 6,027.22 |
| 08/17/2009 | | Alter Moneta Corpor... | 5915 · Interest Expense... | | 1,915.08 | X | | 4,112.14 |
| 08/17/2009 | | Alter Moneta Corpor... | 5915 · Interest Expense... | | 3,860.65 | X | | 251.49 |
| 08/31/2009 | | | Operating Expense:Ba... | Service Charge | 17.99 | X | | 233.50 |
| 09/11/2009 | 2861 | Amerigrow | 1048 · Fifth Third Ban... | | | X | 6,769.00 | 7,002.50 |
| 09/15/2009 | | Alter Moneta Corpor... | 5915 · Interest Expense... | | 3,860.65 | X | | 3,141.85 |
| 09/15/2009 | | Alter Moneta Corpor... | 5915 · Interest Expense... | | 1,915.08 | X | | 1,226.77 |
| 09/15/2009 | | Alter Moneta Corpor... | 5915 · Interest Expense... | | 983.71 | X | | 243.06 |
| 09/30/2009 | | | Operating Expense:Ba... | Service Charge | 19.23 | X | | 223.83 |
| 10/13/2009 | | | 1042 · Suntrust - Opera... | To close Suntr... | 223.83 | X | | 0.00 |

## Amerigrow Recycling

11/18/2009 5:22 PM

Register: 1044 · Suntrust - Merchant Account
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 08/31/2009 | | | Operating Expense:Re... | Service Charge | 17.99 | X | | 27.93 |
| 09/30/2009 | | | Operating Expense:Re... | Service Charge | 17.99 | X | | 9.94 |
| 10/08/2009 | 1251 | Voided Check | Operating Expense:Off... | this is for openi... | | X | | 9.94 |
| 10/12/2009 | | | -split- | Deposit | | X | 34,713.75 | 34,723.69 |
| 10/12/2009 | | | -split- | Deposit | | X | 754.41 | 35,478.10 |
| 10/13/2009 | | | -split- | Deposit | | X | 6,886.82 | 42,364.92 |
| 10/13/2009 | | | -split- | Deposit | | X | 43,119.25 | 85,484.17 |
| 10/13/2009 | | | -split- | Deposit | | X | 362.33 | 85,846.50 |
| 10/15/2009 | | | 1499 · Undeposited Fu... | Deposit | | X | 2,316.00 | 88,162.50 |
| 10/15/2009 | | | -split- | Deposit | | X | 2,040.38 | 90,202.88 |
| 10/15/2009 | | Compupay | Operating Expense:Lab... | agency | 132.41 | X | | 90,070.47 |
| 10/15/2009 | | Compupay | Operating Expense:Lab... | billing | 154.84 | X | | 89,915.63 |
| 10/15/2009 | | Compupay | Operating Expense:Lab... | dir dep | 22,338.34 | X | | 67,577.29 |
| 10/15/2009 | | Compupay | Operating Expense:Lab... | paychecks | 25,653.08 | X | | 41,924.21 |
| 10/15/2009 | | Compupay | Operating Expense:Lab... | tax | 13,041.00 | X | | 28,883.21 |
| 10/15/2009 | | | Operating Expense:Ba... | analysis fee | 24.99 | X | | 28,858.22 |
| 10/16/2009 | | | -split- | Deposit | | X | 10,949.11 | 39,807.33 |
| 10/17/2009 | | | -split- | Deposit | | X | 378.77 | 40,186.10 |
| 10/19/2009 | | | -split- | Deposit | | X | 10,876.98 | 51,063.08 |
| 10/19/2009 | | Florida Department o... | 2031 · Sales Tax Payable | | 18,453.54 | X | | 32,609.54 |
| 10/20/2009 | | | -split- | Deposit | | X | 4,568.89 | 37,178.43 |
| 10/21/2009 | | | -split- | Deposit | | X | 3,021.93 | 40,200.36 |
| 10/21/2009 | 1128 | Amerigrow | 1042 · Suntrust - Opera... | | | X | 35,000.00 | 75,200.36 |
| 10/22/2009 | | | -split- | Deposit | | X | 1,047.29 | 76,247.65 |
| 10/22/2009 | | Compupay | Operating Expense:Lab... | agency | 132.41 | X | | 76,115.24 |
| 10/22/2009 | | Compupay | Operating Expense:Lab... | billing | 156.13 | X | | 75,959.11 |
| 10/22/2009 | | Compupay | Operating Expense:Lab... | dir dep | 23,302.40 | X | | 52,656.71 |
| 10/22/2009 | | Compupay | Operating Expense:Lab... | paycheck | 29,978.45 | X | | 22,678.26 |
| 10/22/2009 | | Compupay | Operating Expense:Lab... | tax | 14,557.40 | X | | 8,120.86 |
| 10/23/2009 | | | -split- | Deposit | | X | 6,358.64 | 14,479.50 |
| 10/24/2009 | | | -split- | Deposit | | X | 382.78 | 14,862.28 |
| 10/26/2009 | | | -split- | Deposit | | X | 894.12 | 15,756.40 |
| 10/27/2009 | | | -split- | Deposit | | X | 26,871.43 | 42,627.83 |
| 10/27/2009 | | | -split- | Deposit | | X | 30,547.98 | 73,175.81 |
| 10/28/2009 | | | -split- | Deposit | | X | 12,996.33 | 86,172.14 |
| 10/28/2009 | | | -split- | Deposit | | X | 40,710.28 | 126,882.42 |
| 10/28/2009 | | | -split- | Deposit | | X | 462.87 | 127,345.29 |
| 10/28/2009 | | | -split- | Deposit | | X | 591.94 | 127,937.23 |
| 10/28/2009 | | | -split- | Deposit | | X | 527.08 | 128,464.31 |
| 10/29/2009 | | | -split- | Deposit | | X | 665.33 | 129,129.64 |

## Amerigrow Recycling

11/18/2009 5:22 PM

Register: 1044 · Suntrust - Merchant Account
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 10/29/2009 | | | -split- | Deposit | | X | 10,092.55 | 139,222.19 |
| 10/29/2009 | | Compupay | Operating Expense:Lab... | paychecks | 30,119.39 | X | | 109,102.80 |
| 10/29/2009 | | Compupay | Operating Expense:Lab... | dir dep | 23,327.77 | X | | 85,775.03 |
| 10/29/2009 | | Compupay | Operating Expense:Lab... | tax | 14,632.34 | X | | 71,142.69 |
| 10/29/2009 | | Compupay | Operating Expense:Lab... | agency | 132.41 | X | | 71,010.28 |
| 10/29/2009 | | Compupay | Operating Expense:Lab... | billing | 158.96 | X | | 70,851.32 |
| 10/29/2009 | 1253 | Bobbie Fernandez | 1250 · Misc Other Rec... | | 433.58 | | | 70,417.74 |
| 10/30/2009 | | | -split- | Deposit | | | 385.17 | 70,802.91 |
| 10/30/2009 | | | -split- | Deposit | | | 1,000.00 | 71,802.91 |
| 10/31/2009 | | | Operating Expense:Ba... | Service Charge | 18.00 | X | | 71,784.91 |
| 11/01/2009 | | | Operating Expense:Oth... | for October | 3,810.74 | | | 67,974.17 |

Amerigrow Recycling

11/18/2009 5:22 PM

Register: 1042 · Suntrust - Operating Account
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 08/03/2009 | | | 1499 · Undeposited Fu... | Deposit | | X | 28,243.60 | 179,976.11 |
| 08/11/2009 | 1006 | Amerigrow | 1043 · Suntrust - Payro... | | 6,000.00 | X | | 173,976.11 |
| 08/17/2009 | | | 1499 · Undeposited Fu... | Deposit | | X | 28,282.10 | 202,258.21 |
| 09/02/2009 | 1007 | La Mousse Acadienne | 2001 · Accounts Payable | | 32,258.00 | X | | 170,000.21 |
| 09/09/2009 | 1008 | Wells Fargo_1 | -split- | | 26,799.37 | X | | 143,200.84 |
| 09/14/2009 | | | -split- | Deposit | | X | 6,745.61 | 149,946.45 |
| 10/05/2009 | | | 1499 · Undeposited Fu... | Deposit | | X | 9,486.40 | 159,432.85 |
| 10/08/2009 | | | -split- | Deposit | | X | 23,548.57 | 182,981.42 |
| 10/08/2009 | | | 1499 · Undeposited Fu... | Deposit | | X | 13,860.00 | 196,841.42 |
| 10/08/2009 | | bank service charge | Operating Expense:Ba... | debit for deposi... | 6.00 | X | | 196,835.42 |
| 10/09/2009 | | | 1499 · Undeposited Fu... | Deposit | | X | 17,398.15 | 214,233.57 |
| 10/09/2009 | 1009 | A & L Great Lake La... | 2001 · Accounts Payable | | 290.00 | X | | 213,943.57 |
| 10/09/2009 | 1010 | A & L Southern Agri... | 2001 · Accounts Payable | | 175.30 | X | | 213,768.27 |
| 10/09/2009 | 1011 | Advanced Pallets-Inv... | 2001 · Accounts Payable | | 3,660.00 | X | | 210,108.27 |
| 10/09/2009 | 1012 | Air Pro Mechanical Inc | 2001 · Accounts Payable | | 778.00 | X | | 209,330.27 |
| 10/09/2009 | 1013 | Aramatic Refreshme... | 2001 · Accounts Payable | | 972.14 | X | | 208,358.13 |
| 10/09/2009 | 1014 | AT & T | 2001 · Accounts Payable | | 0.07 | X | | 208,358.06 |
| 10/09/2009 | 1015 | Atlantic Coast Envir... | 2001 · Accounts Payable | | 2,385.00 | X | | 205,973.06 |
| 10/09/2009 | 1016 | BWI-Homestead | 2001 · Accounts Payable | | 932.26 | X | | 205,040.80 |
| 10/09/2009 | 1017 | Conrad Yelvington D... | 2001 · Accounts Payable | | 588.96 | X | | 204,451.84 |
| 10/09/2009 | 1018 | Construction Hydrau... | 2001 · Accounts Payable | | 345.99 | X | | 204,105.85 |
| 10/09/2009 | 1019 | Elite Aluminum Corp. | 2001 · Accounts Payable | | 2,735.00 | X | | 201,370.85 |
| 10/09/2009 | 1020 | Federal Background ... | 2001 · Accounts Payable | | 169.00 | X | | 201,201.85 |
| 10/09/2009 | 1021 | Irvine Wood Recovery. | 2001 · Accounts Payable | | 3,750.00 | X | | 197,451.85 |
| 10/09/2009 | 1022 | J & J Auto Electric C... | 2001 · Accounts Payable | | 572.97 | X | | 196,878.88 |
| 10/09/2009 | 1023 | John A. Grant, Jr., Inc. | 2001 · Accounts Payable | | 1,410.00 | X | | 195,468.88 |
| 10/09/2009 | 1024 | L & L Distributors. | 2001 · Accounts Payable | | 465.28 | X | | 195,003.60 |
| 10/09/2009 | 1025 | La Mousse Acadienne | 2001 · Accounts Payable | VOID: | | X | | 195,003.60 |
| 10/09/2009 | 1026 | Manuel Cordero | 2001 · Accounts Payable | VOID: | | X | | 195,003.60 |
| 10/09/2009 | 1027 | Network Design & C... | 2001 · Accounts Payable | | 2,308.15 | X | | 192,695.45 |
| 10/09/2009 | 1028 | Nova Packaging LLC | 2001 · Accounts Payable | | 466.67 | X | | 192,228.78 |
| 10/09/2009 | 1029 | PC Lan Techs | 2001 · Accounts Payable | | 1,585.62 | X | | 190,643.16 |
| 10/09/2009 | 1030 | Peanuts Country Store. | 2001 · Accounts Payable | | 422.30 | X | | 190,220.86 |
| 10/09/2009 | 1031 | R. Husey Enterprises... | 2001 · Accounts Payable | | 125.00 | X | | 190,095.86 |
| 10/09/2009 | 1032 | South Florida Contra... | 2001 · Accounts Payable | | 229.95 | X | | 189,865.91 |
| 10/09/2009 | 1033 | Southern Building Pr... | 2001 · Accounts Payable | | 2,370.00 | X | | 187,495.91 |
| 10/09/2009 | 1034 | Sprint. | 2001 · Accounts Payable | | 50.09 | X | | 187,445.82 |
| 10/09/2009 | 1035 | United Parcel Service. | 2001 · Accounts Payable | | 11.52 | X | | 187,434.30 |
| 10/09/2009 | 1036 | Verizon Wireless 38... | 2001 · Accounts Payable | Account 38020... | 156.45 | X | | 187,277.85 |
| 10/09/2009 | 1037 | Verizon Wireless*48... | 2001 · Accounts Payable | 480206860-00... | 143.42 | X | | 187,134.43 |

Amerigrow Recycling                                          11/18/2009 5:22 PM

Register: 1042 · Suntrust - Operating Account
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 10/09/2009 | 1038 | VMG Truck & Traile... | 2001 · Accounts Payable | | 2,600.00 | X | | 184,534.43 |
| 10/09/2009 | 1039 | W.R. Grace | 2001 · Accounts Payable | | 1,815.00 | X | | 182,719.43 |
| 10/09/2009 | 1040 | Windmill Sprinkler ... | 2001 · Accounts Payable | | 832.08 | X | | 181,887.35 |
| 10/09/2009 | 1041 | Y. G. Yovany Gonza... | 2001 · Accounts Payable | | 545.00 | X | | 181,342.35 |
| 10/09/2009 | 1042 | AT & T | 2001 · Accounts Payable | | 79.28 | X | | 181,263.07 |
| 10/09/2009 | 1043 | AT & T | 2001 · Accounts Payable | | 86.04 | X | | 181,177.03 |
| 10/09/2009 | 1044 | Network Design & C... | 2001 · Accounts Payable | | 696.52 | X | | 180,480.51 |
| 10/09/2009 | 1045 | Manuel Cordero | 2001 · Accounts Payable | | 24,785.00 | X | | 155,695.51 |
| 10/09/2009 | 1046 | La Mousse Acadienne | 2001 · Accounts Payable | | 11,176.00 | X | | 144,519.51 |
| 10/12/2009 | 1047 | Allison R. Day, Esq | Operating Expense:Pro... | VOID: | | X | | 144,519.51 |
| 10/12/2009 | 1048 | AECOM USA Inc. | 2001 · Accounts Payable | | 3,665.25 | X | | 140,854.26 |
| 10/12/2009 | 1049 | LLS Enterprises of S... | 2001 · Accounts Payable | | 950.00 | X | | 139,904.26 |
| 10/12/2009 | 99995 | Genovese, Joblove, ... | Operating Expense:Pro... | wire transfer | 50,000.00 | X | | 89,904.26 |
| 10/13/2009 | | | 1043 · Suntrust - Payro... | Deposit | | X | 223.83 | 90,128.09 |
| 10/13/2009 | 99995 | bank service charge | Operating Expense:Ba... | Wire transfer 9... | 50.00 | X | | 90,078.09 |
| 10/14/2009 | | | -split- | Deposit | | X | 33,760.77 | 123,838.86 |
| 10/14/2009 | | | -split- | Deposit | | X | 383.27 | 124,222.13 |
| 10/14/2009 | 15871 | Amerigrow | 1046 · National City - #1 | | | X | 427.57 | 124,649.70 |
| 10/14/2009 | 1050 | Unifirst Corporation. | 2001 · Accounts Payable | | 694.12 | X | | 123,955.58 |
| 10/14/2009 | 1051 | Top Cut Lawn Service. | 2001 · Accounts Payable | | 240.00 | X | | 123,715.58 |
| 10/14/2009 | 1052 | Hoodridge TM | 2001 · Accounts Payable | | 3,994.00 | X | | 119,721.58 |
| 10/14/2009 | 1053 | Woodfuel com | 2001 · Accounts Payable | | 5,588.08 | X | | 114,133.50 |
| 10/14/2009 | 1054 | A & L Great Lake La... | 2001 · Accounts Payable | | 260.00 | X | | 113,873.50 |
| 10/14/2009 | 1055 | A & L Southern Agri... | 2001 · Accounts Payable | | 116.50 | X | | 113,757.00 |
| 10/14/2009 | 1056 | Advanced Pallets-Inv... | 2001 · Accounts Payable | | 250.00 | X | | 113,507.00 |
| 10/14/2009 | 1057 | Cormier, Michael | 2001 · Accounts Payable | | 750.00 | X | | 112,757.00 |
| 10/14/2009 | 1058 | Elite Aluminum Corp. | 2001 · Accounts Payable | | 1,281.00 | X | | 111,476.00 |
| 10/14/2009 | 1059 | Euler Hermes ACI | 2001 · Accounts Payable | Policy #4164544 | 50.00 | X | | 111,426.00 |
| 10/14/2009 | 1060 | Express Blower | 2001 · Accounts Payable | | 550.95 | X | | 110,875.05 |
| 10/14/2009 | 1061 | Florida Bearings, Inc. | 2001 · Accounts Payable | | 2,252.19 | X | | 108,622.86 |
| 10/14/2009 | 1062 | Florida Combined Li... | 2001 · Accounts Payable | | 425.19 | X | | 108,197.67 |
| 10/14/2009 | 1063 | JR's Lawn & Garden | 2001 · Accounts Payable | | 364.00 | X | | 107,833.67 |
| 10/14/2009 | 1064 | Kempfer Sawmill Inc. | 2001 · Accounts Payable | | 6,006.25 | X | | 101,827.42 |
| 10/14/2009 | 1065 | Kimball Midwest. | 2001 · Accounts Payable | | 1,399.37 | X | | 100,428.05 |
| 10/14/2009 | 1066 | Welder Services. | 2001 · Accounts Payable | | 2,415.88 | X | | 98,012.17 |
| 10/14/2009 | 1067 | Windmill Sprinkler ... | 2001 · Accounts Payable | | 285.77 | X | | 97,726.40 |
| 10/14/2009 | 1068 | VMG Truck & Traile... | 2001 · Accounts Payable | | 1,300.00 | X | | 96,426.40 |
| 10/15/2009 | | | -split- | Deposit | | X | 63,448.17 | 159,874.57 |
| 10/15/2009 | | | -split- | Deposit | | X | 819.23 | 160,693.80 |
| 10/15/2009 | | | 1499 · Undeposited Fu... | Deposit | | X | 1,052.20 | 161,746.00 |

Amerigrow Recycling

11/18/2009 5:22 PM

Register: 1042 · Suntrust - Operating Account
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 10/15/2009 | 1069 | W.R. Grace | 2001 · Accounts Payable | | 1,650.00 | X | | 160,096.00 |
| 10/15/2009 | 1070 | Superior Mulch | 2001 · Accounts Payable | | 3,344.00 | X | | 156,752.00 |
| 10/15/2009 | 1071 | CSR Agricultural Re... | 2001 · Accounts Payable | | 900.00 | X | | 155,852.00 |
| 10/15/2009 | 1072 | Luis A. Mayen | 2001 · Accounts Payable | | 1,740.00 | X | | 154,112.00 |
| 10/16/2009 | | | -split- | Deposit | | X | 19,678.55 | 173,790.55 |
| 10/16/2009 | | | -split- | Deposit | | X | 737.00 | 174,527.55 |
| 10/16/2009 | 1073 | Harrell's Fertilizer | 2001 · Accounts Payable | | 1,041.00 | X | | 173,486.55 |
| 10/16/2009 | 1074 | Flagler Construction | 2001 · Accounts Payable | | 912.28 | X | | 172,574.27 |
| 10/16/2009 | 1075 | Woodfuel.com | 2001 · Accounts Payable | | 6,022.60 | X | | 166,551.67 |
| 10/16/2009 | 1076 | Advanced Pallets-Inv... | 2001 · Accounts Payable | | 500.00 | X | | 166,051.67 |
| 10/16/2009 | 1077 | Aglime Sales, Inc. | 2001 · Accounts Payable | | 2,182.41 | X | | 163,869.26 |
| 10/16/2009 | 1078 | American Heritage L... | 2001 · Accounts Payable | | 256.27 | X | | 163,612.99 |
| 10/16/2009 | 1079 | Aramatic Refreshme... | 2001 · Accounts Payable | | 387.00 | X | | 163,225.99 |
| 10/16/2009 | 1080 | AT & T | 2001 · Accounts Payable | | 597.38 | X | | 162,628.61 |
| 10/16/2009 | 1081 | Atlantic Coast Envir... | 2001 · Accounts Payable | | 435.00 | X | | 162,193.61 |
| 10/16/2009 | 1082 | BWI-Homestead | 2001 · Accounts Payable | | 157.81 | X | | 162,035.80 |
| 10/16/2009 | 1083 | Colonial Life | 2001 · Accounts Payable | BCN #E3363165 | 2,065.16 | X | | 159,970.64 |
| 10/16/2009 | 1084 | FPL | 2001 · Accounts Payable | | 4,870.24 | X | | 155,100.40 |
| 10/16/2009 | 1085 | Galvez Trucking, Inc. | 2001 · Accounts Payable | | 4,100.00 | X | | 151,000.40 |
| 10/16/2009 | 1086 | Hamer LLC | 2001 · Accounts Payable | | 505.40 | X | | 150,495.00 |
| 10/16/2009 | 1087 | J & J Auto Electric C... | 2001 · Accounts Payable | | 2,333.14 | X | | 148,161.86 |
| 10/16/2009 | 1088 | L & L Distributiors. | 2001 · Accounts Payable | | 844.17 | X | | 147,317.69 |
| 10/16/2009 | 1089 | Palm Beach Hose & ... | 2001 · Accounts Payable | | 3,843.36 | X | | 143,474.33 |
| 10/16/2009 | 1090 | Pitney Bowes Corpor... | 2001 · Accounts Payable | | 244.43 | X | | 143,229.90 |
| 10/16/2009 | 1091 | Pitney Bowes Postag... | 2001 · Accounts Payable | | 679.10 | X | | 142,550.80 |
| 10/16/2009 | 1092 | Powerscreen of Flori... | 2001 · Accounts Payable | | 94.75 | X | | 142,456.05 |
| 10/16/2009 | 1093 | Qqest Software Syste... | 2001 · Accounts Payable | | 533.00 | X | | 141,923.05 |
| 10/16/2009 | 1094 | Regional Groundworks | 2001 · Accounts Payable | | 6,150.00 | X | | 135,773.05 |
| 10/16/2009 | 1095 | SNA Machinery | 2001 · Accounts Payable | | 2,170.00 | | | 133,603.05 |
| 10/16/2009 | 1096 | South Florida Contra... | 2001 · Accounts Payable | | 235.85 | | | 133,367.20 |
| 10/16/2009 | 1097 | Southern Building Pr... | 2001 · Accounts Payable | | 2,201.90 | X | | 131,165.30 |
| 10/16/2009 | 1098 | Toilet Taxi Corp. | 2001 · Accounts Payable | | 348.00 | X | | 130,817.30 |
| 10/16/2009 | 1099 | VMG Truck & Traile... | 2001 · Accounts Payable | | 975.00 | X | | 129,842.30 |
| 10/16/2009 | 1100 | Welder Services. | 2001 · Accounts Payable | | 743.92 | X | | 129,098.38 |
| 10/16/2009 | 1101 | Xenco Laboratories | 2001 · Accounts Payable | | 315.00 | X | | 128,783.38 |
| 10/16/2009 | 1102 | Y. G. Yovany Gonza... | 2001 · Accounts Payable | | 2,549.00 | X | | 126,234.38 |
| 10/19/2009 | | | -split- | Deposit | | X | 117,672.31 | 243,906.69 |
| 10/19/2009 | | | -split- | Deposit | | X | 626.53 | 244,533.22 |
| 10/19/2009 | 1103 | Aetna, Inc. | 2001 · Accounts Payable | | 13,572.00 | X | | 230,961.22 |
| 10/19/2009 | 1104 | BEIC. | 2001 · Accounts Payable | | 7,872.72 | X | | 223,088.50 |

Amerigrow Recycling

11/18/2009 5:22 PM

Register: 1042 · Suntrust - Operating Account
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 10/19/2009 | 1105 | First Insurance Fundi... | Operating Expense:Ins... | | 22,263.38 | X | | 200,825.12 |
| 10/19/2009 | 1106 | Advanced Pallets-Inv... | 2001 · Accounts Payable | VOID: | | X | | 200,825.12 |
| 10/19/2009 | 1107 | Construction Hydrau... | 2001 · Accounts Payable | | 2,226.18 | X | | 198,598.94 |
| 10/19/2009 | 1108 | Manuel Cordero | 2001 · Accounts Payable | | 27,340.00 | X | | 171,258.94 |
| 10/19/2009 | 1109 | Perry & Taylor, P.A. | 2001 · Accounts Payable | VOID: | | X | | 171,258.94 |
| 10/19/2009 | 1110 | Superior Wash. | 2001 · Accounts Payable | VOID: | | X | | 171,258.94 |
| 10/19/2009 | 1111 | Tropical Soil LLC | 2001 · Accounts Payable | | 11,004.00 | X | | 160,254.94 |
| 10/19/2009 | 1112 | White's Landscape S... | 2001 · Accounts Payable | | 6,567.00 | X | | 153,687.94 |
| 10/19/2009 | 1113 | Windmill Sprinkler ... | 2001 · Accounts Payable | | 634.31 | X | | 153,053.63 |
| 10/19/2009 | 1114 | Y. G. Yovany Gonza... | 2001 · Accounts Payable | | 245.00 | X | | 152,808.63 |
| 10/19/2009 | 1115 | Go Green Product an... | 2001 · Accounts Payable | | 4,354.21 | X | | 148,454.42 |
| 10/20/2009 | | | -split- | Deposit | | X | 26,917.33 | 175,371.75 |
| 10/20/2009 | | | -split- | Deposit | | X | 945.00 | 176,316.75 |
| 10/20/2009 | 1116 | Superior Wash. | 2001 · Accounts Payable | | 1,035.00 | X | | 175,281.75 |
| 10/20/2009 | 1117 | Manuel Cordero | 2001 · Accounts Payable | | 1,470.00 | X | | 173,811.75 |
| 10/20/2009 | 1118 | Agri-source Inc | 2001 · Accounts Payable | | 7,560.00 | X | | 166,251.75 |
| 10/20/2009 | 1119 | Andrew M. Schwartz... | 2001 · Accounts Payable | | 6,000.00 | X | | 160,251.75 |
| 10/21/2009 | | | -split- | Deposit | | X | 26,966.23 | 187,217.98 |
| 10/21/2009 | | | -split- | Deposit | | X | 933.37 | 188,151.35 |
| 10/21/2009 | 1120 | Express Blower | 2001 · Accounts Payable | | 273.26 | X | | 187,878.09 |
| 10/21/2009 | 1121 | Unifirst Corporation. | 2001 · Accounts Payable | | 762.12 | X | | 187,115.97 |
| 10/21/2009 | 1122 | Flagler Construction | 2001 · Accounts Payable | | 1,251.73 | X | | 185,864.24 |
| 10/21/2009 | 1123 | Treecycle Land Clear... | 2001 · Accounts Payable | | 6,540.00 | X | | 179,324.24 |
| 10/21/2009 | 1124 | Firestone Complete ... | 2001 · Accounts Payable | | 442.41 | X | | 178,881.83 |
| 10/21/2009 | 1125 | American Express - ... | American Express | 372717300172... | 3,000.00 | X | | 175,881.83 |
| 10/21/2009 | 1126 | John A. Grant, Jr., Inc. | 2001 · Accounts Payable | | 950.00 | X | | 174,931.83 |
| 10/21/2009 | 1127 | Perry & Taylor, P.A. | 2001 · Accounts Payable | | 7,777.24 | X | | 167,154.59 |
| 10/21/2009 | 1128 | Amerigrow | 1044 · Suntrust - Merc... | | 35,000.00 | X | | 132,154.59 |
| 10/21/2009 | 1129 | Aramatic Refreshm... | 2001 · Accounts Payable | | 383.38 | X | | 131,771.21 |
| 10/21/2009 | 1130 | Atlantic Coast Envir... | 2001 · Accounts Payable | | 2,035.00 | X | | 129,736.21 |
| 10/21/2009 | 1131 | CSR Agricultural Re... | 2001 · Accounts Payable | | 1,500.00 | X | | 128,236.21 |
| 10/21/2009 | 1132 | Elite Aluminum Corp. | 2001 · Accounts Payable | VOID: | | X | | 128,236.21 |
| 10/21/2009 | 1133 | Fafard | 2001 · Accounts Payable | | 6,622.08 | X | | 121,614.13 |
| 10/21/2009 | 1134 | Forestry Resources Inc. | 2001 · Accounts Payable | | 1,200.00 | X | | 120,414.13 |
| 10/21/2009 | 1135 | J & J Auto Electric C... | 2001 · Accounts Payable | | 660.30 | X | | 119,753.83 |
| 10/21/2009 | 1136 | Kempfer Sawmill Inc. | 2001 · Accounts Payable | | 2,181.25 | X | | 117,572.58 |
| 10/21/2009 | 1137 | Office Depot | 2001 · Accounts Payable | | 215.90 | X | | 117,356.68 |
| 10/21/2009 | 1138 | Pronto Mowers. | 2001 · Accounts Payable | | 655.21 | X | | 116,701.47 |
| 10/21/2009 | 1139 | Superior Wash. | 2001 · Accounts Payable | | 520.00 | X | | 116,181.47 |
| 10/21/2009 | 1140 | VMG Truck & Traile... | 2001 · Accounts Payable | | 975.00 | X | | 115,206.47 |

Amerigrow Recycling                              11/18/2009 5:22 PM

Register: 1042 · Suntrust - Operating Account
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 10/21/2009 | 1141 | Y. G. Yovany Gonza... | 2001 · Accounts Payable | | 70.00 | X | | 115,136.47 |
| 10/21/2009 | 1142 | AECOM USA Inc. | 2001 · Accounts Payable | | 4,000.00 | X | | 111,136.47 |
| 10/21/2009 | 1143 | Florida Department o... | Operating Expense:Ve... | Citation 60117... | 87.00 | | | 111,049.47 |
| 10/22/2009 | | | -split- | Deposit | | X | 53,872.73 | 164,922.20 |
| 10/22/2009 | | | -split- | Deposit | | X | 1,968.90 | 166,891.10 |
| 10/22/2009 | 1144 | Lisa M. Ruth | Operating Expense:Ad... | | 130.00 | X | | 166,761.10 |
| 10/22/2009 | 1145 | Tropical Soil LLC | 2001 · Accounts Payable | | 4,788.00 | X | | 161,973.10 |
| 10/22/2009 | 1146 | Santom Transport, Inc | 2001 · Accounts Payable | | 907.00 | X | | 161,066.10 |
| 10/22/2009 | 1147 | SE FL Chapter of NI... | 2001 · Accounts Payable | VOID: | | X | | 161,066.10 |
| 10/22/2009 | 1148 | Kimball Midwest. | 2001 · Accounts Payable | | 1,674.57 | X | | 159,391.53 |
| 10/22/2009 | 1149 | Flagler Construction | 2001 · Accounts Payable | | 456.62 | X | | 158,934.91 |
| 10/22/2009 | 1150 | Freedom Alloys | 2001 · Accounts Payable | | 3,312.26 | | | 155,622.65 |
| 10/22/2009 | 1151 | Woodfuel com | 2001 · Accounts Payable | | 4,655.00 | X | | 150,967.65 |
| 10/22/2009 | 1152 | Advanced Pallets-Inv... | 2001 · Accounts Payable | VOID: | | X | | 150,967.65 |
| 10/22/2009 | 1154 | Construction Hydrau... | 2001 · Accounts Payable | | 153.42 | X | | 150,814.23 |
| 10/22/2009 | 1155 | Elpex | 2001 · Accounts Payable | | 2,627.02 | X | | 148,187.21 |
| 10/22/2009 | 1156 | Fastenal Industries &... | 2001 · Accounts Payable | | 159.72 | X | | 148,027.49 |
| 10/22/2009 | 1157 | Florida Bearings, Inc. | 2001 · Accounts Payable | | 343.70 | X | | 147,683.79 |
| 10/22/2009 | 1158 | GE Fleet Services. | 2001 · Accounts Payable | | 3,570.90 | X | | 144,112.89 |
| 10/22/2009 | 1159 | Parkland Printing & ... | 2001 · Accounts Payable | | 133.08 | X | | 143,979.81 |
| 10/22/2009 | 1160 | Pronto Mowers. | 2001 · Accounts Payable | | 80.90 | X | | 143,898.91 |
| 10/22/2009 | 1161 | Windmill Sprinkler ... | 2001 · Accounts Payable | | 169.45 | X | | 143,729.46 |
| 10/22/2009 | 1162 | CSR Agricultural Re... | 2001 · Accounts Payable | | 2,400.00 | X | | 141,329.46 |
| 10/22/2009 | 1163 | Galvez Trucking, Inc. | 2001 · Accounts Payable | | 9,600.00 | X | | 131,729.46 |
| 10/22/2009 | 1164 | Treecycle Land Clear... | 2001 · Accounts Payable | | 900.00 | X | | 130,829.46 |
| 10/22/2009 | 1165 | Manuel Cordero | 2001 · Accounts Payable | | 5,910.00 | X | | 124,919.46 |
| 10/23/2009 | | | -split- | Deposit | | X | 27,787.09 | 152,706.55 |
| 10/23/2009 | | | -split- | Deposit | | X | 1,260.00 | 153,966.55 |
| 10/26/2009 | | | -split- | Deposit | | X | 1,520.07 | 155,486.62 |
| 10/26/2009 | | | -split- | Deposit | | X | 0.00 | 155,486.62 |
| 10/26/2009 | | | -split- | Deposit | | X | 4,515.00 | 160,001.62 |
| 10/26/2009 | 1166 | Manuel Cordero | 2001 · Accounts Payable | | 1,695.00 | X | | 158,306.62 |
| 10/26/2009 | 1167 | Elizabeth Hornsby, C... | 1030 · Petty Cash - Janet | | 5,000.00 | X | | 153,306.62 |
| 10/26/2009 | 1168 | Regional Groundworks | 2001 · Accounts Payable | VOID: | | X | | 153,306.62 |
| 10/26/2009 | 1169 | Y. G. Yovany Gonza... | 2001 · Accounts Payable | | 1,483.37 | X | | 151,823.25 |
| 10/26/2009 | 1170 | John A. Grant, Jr., Inc. | 2001 · Accounts Payable | | 2,462.50 | X | | 149,360.75 |
| 10/26/2009 | 1171 | Smiley Gil, Inc. | 2001 · Accounts Payable | | 2,520.00 | X | | 146,840.75 |
| 10/26/2009 | 999999 | La Mousse Acadienne | 2001 · Accounts Payable | | 27,940.00 | X | | 118,900.75 |
| 10/27/2009 | | | -split- | Deposit | | X | 325.18 | 119,225.93 |
| 10/27/2009 | | | -split- | Deposit | | X | 0.00 | 119,225.93 |

Amerigrow Recycling

11/18/2009 5:22 PM

Register: 1042 · Suntrust - Operating Account
From 08/01/2009 through 11/01/2009
Sorted by: Date, Type, Number/Ref

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|------|--------|-------|---------|------|---------|---|---------|---------|
| 10/27/2009 | 1172 | Advanced Pallets-Inv... | 2001 · Accounts Payable | | 3,660.00 | X | | 115,565.93 |
| 10/27/2009 | 1173 | Eric T Pasco | Operating Expense:Co... | | 8,021.00 | X | | 107,544.93 |
| 10/28/2009 | | | -split- | Deposit | | X | 89,391.80 | 196,936.73 |
| 10/28/2009 | 1174 | Elizabeth Hornsby, C... | 1030 · Petty Cash - Janet | VOID: | | X | | 196,936.73 |
| 10/28/2009 | 1175 | Janet Tomlinson, Cus... | 1030 · Petty Cash - Janet | | 6,574.84 | X | | 190,361.89 |
| 10/29/2009 | | | -split- | Deposit | | X | 27,247.30 | 217,609.19 |
| 10/29/2009 | | | -split- | Deposit | | X | 923.18 | 218,532.37 |
| 10/29/2009 | | | -split- | Deposit | | X | 0.00 | 218,532.37 |
| 10/29/2009 | | | -split- | Deposit | | X | 0.00 | 218,532.37 |
| 10/29/2009 | 1176 | Nina Plastics. | 2001 · Accounts Payable | | 8,053.05 | | | 210,479.32 |
| 10/29/2009 | 1177 | Atlantic Coast Envir... | 2001 · Accounts Payable | | 2,295.00 | X | | 208,184.32 |
| 10/29/2009 | 1178 | L & L Distributors. | 2001 · Accounts Payable | | 1,450.64 | | | 206,733.68 |
| 10/29/2009 | 1179 | Woodfuel com | 2001 · Accounts Payable | | 6,903.96 | X | | 199,829.72 |
| 10/29/2009 | 1180 | Advanced Pallets -M... | 2001 · Accounts Payable | | 2,660.00 | X | | 197,169.72 |
| 10/29/2009 | 1181 | Kempfer Sawmill Inc. | 2001 · Accounts Payable | | 3,825.00 | X | | 193,344.72 |
| 10/29/2009 | 1182 | M & S Fin. | Operating Expense:Oth... | | 8,250.00 | X | | 185,094.72 |
| 10/29/2009 | 1183 | Floragem Investment... | Operating Expense:Oth... | | 11,750.00 | X | | 173,344.72 |
| 10/29/2009 | 1184 | Land And Sea Petrol... | 2001 · Accounts Payable | | 9,148.66 | X | | 164,196.06 |
| 10/29/2009 | 99996 | CBI. | 2001 · Accounts Payable | | 22,680.56 | X | | 141,515.50 |
| 10/29/2009 | 99997 | Express Blower | 2001 · Accounts Payable | | 3,721.44 | X | | 137,794.06 |
| 10/29/2009 | 99998 | Blaxberg Grayson K... | 2001 · Accounts Payable | | 10,000.00 | X | | 127,794.06 |
| 10/30/2009 | | | -split- | Deposit | | X | 1,434.79 | 129,228.85 |
| 10/30/2009 | | | -split- | Deposit | | X | 0.00 | 129,228.85 |
| 10/30/2009 | | bank service charge | Operating Expense:Ba... | wire transfer 99... | 50.00 | X | | 129,178.85 |
| 10/30/2009 | | bank service charge | Operating Expense:Ba... | wire transfer fe... | 50.00 | X | | 129,128.85 |
| 10/30/2009 | | bank service charge | Operating Expense:Ba... | wire transfer fe... | 50.00 | X | | 129,078.85 |
| 10/30/2009 | | bank service charge | Operating Expense:Ba... | wire transfer fe... | 60.00 | X | | 129,018.85 |
| 10/30/2009 | 1185 | Manuel Cordero | 2001 · Accounts Payable | | 1,475.00 | X | | 127,543.85 |
| 10/30/2009 | 1186 | Treecycle Land Clear... | 2001 · Accounts Payable | | 6,150.00 | X | | 121,393.85 |
| 10/30/2009 | 1187 | VMG Truck & Traile... | 2001 · Accounts Payable | | 2,275.00 | X | | 119,118.85 |
| 10/30/2009 | 1188 | Agri-source Inc | 2001 · Accounts Payable | | 8,160.00 | X | | 110,958.85 |
| 10/30/2009 | 1189 | American Express - ... | American Express | 372717300172... | 5,000.00 | X | | 105,958.85 |
| 10/30/2009 | 1190 | Janet Tomlinson, Cus... | 1030 · Petty Cash - Janet | | 5,814.85 | X | | 100,144.00 |
| 10/30/2009 | 1191 | Eric T Pasco | Operating Expense:Co... | 44281 | 3,624.61 | | | 96,519.39 |
| 10/30/2009 | 99994 | Express Blower | Operating Expense:Re... | | 100.00 | X | | 96,419.39 |

Exhibit F
(List of Payments Within 1 Year of Petition Date)

3.C

5:29 PM
11/18/09

## Amerigrow Recycling
## All Transactions for M & S Fin.
### November 2, 2008 through November 1, 2009

| Type | Num | Date | Account | Amount |
|------|-----|------|---------|--------|
| **Nov 2, '08 - Nov 1, 09** | | | | |
| Check | 1154 | 11/19/2008 | 1048 · Fifth Third B... | -5,175.00 |
| Check | 1182 | 10/29/2009 | 1042 · Suntrust - O... | -8,250.00 |
| Check | 1356 | 12/17/2008 | 1048 · Fifth Third B... | -5,175.00 |
| Check | 1661 | 2/18/2009 | 1048 · Fifth Third B... | -5,175.00 |
| Check | 1841 | 3/16/2009 | 1048 · Fifth Third B... | -5,175.00 |
| Check | 2075 | 4/15/2009 | 1048 · Fifth Third B... | -5,175.00 |
| Check | 2216 | 5/7/2009 | 1048 · Fifth Third B... | -17,550.00 |
| Check | 2249 | 5/15/2009 | 1048 · Fifth Third B... | -5,175.00 |
| Check | 2406 | 6/23/2009 | 1048 · Fifth Third B... | -5,175.00 |
| Check | 2549 | 7/8/2009 | 1048 · Fifth Third B... | -4,950.00 |
| Check | 2574 | 7/15/2009 | 1048 · Fifth Third B... | -5,175.00 |
| Check | 2605 | 7/17/2009 | 1048 · Fifth Third B... | -4,950.00 |
| Check | 2680 | 8/13/2009 | 1048 · Fifth Third B... | -5,175.00 |
| Check | 2732 | 8/14/2009 | 1048 · Fifth Third B... | -4,950.00 |
| Check | 2885 | 9/15/2009 | 1048 · Fifth Third B... | -5,175.00 |
| Check | 2992 | 10/13/2009 | 1048 · Fifth Third B... | -5,175.00 |
| Check | 13554 | 1/19/2009 | 1040 · Wachovia - ... | -5,175.00 |
| **Nov 2, '08 - Nov 1, 09** | | | | |

**Amerigrow Recycling**
**All Transactions for Floragem Investments Corp.**
November 2, 2008 through November 1, 2009

| Type | Num | Date | Account | Amount |
|------|-----|------|---------|--------|
| **Nov 2, '08 - Nov 1, 09** | | | | |
| Check | 1183 | 10/29/2009 | 1042 · Suntrust - O... | -11,750.00 |
| Check | 2217 | 5/7/2009 | 1048 · Fifth Third B... | -12,450.00 |
| Check | 2550 | 7/8/2009 | 1048 · Fifth Third B... | -7,050.00 |
| Check | 2604 | 7/17/2009 | 1048 · Fifth Third B... | -7,050.00 |
| Check | 2733 | 8/14/2009 | 1048 · Fifth Third B... | -7,050.00 |
| Check | 2934 | 9/24/2009 | 1048 · Fifth Third B... | 0.00 |
| **Nov 2, '08 - Nov 1, 09** | | | | |

# Amerigrow Recycling
## All Transactions for Tomlinson Charles.
### November 2, 2008 through November 1, 2009

| Type | Num | Date | Account | Amount |
|---|---|---|---|---|
| **Nov 2, '08 - Nov 1, 09** | | | | |
| Check | 1272 | 12/1/2008 | 1048 · Fifth Third B... | -13,034.00 |
| Check | 1477 | 12/22/2008 | 1048 · Fifth Third B... | -14,695.00 |
| Check | 1544 | 1/21/2009 | 1048 · Fifth Third B... | -14,610.00 |
| Check | 1697 | 2/23/2009 | 1048 · Fifth Third B... | -9,733.00 |
| Check | 1880 | 3/23/2009 | 1048 · Fifth Third B... | -7,248.00 |
| Check | 2071 | 4/14/2009 | 1048 · Fifth Third B... | -9,850.00 |
| Check | 15810 | 11/7/2008 | 1046 · National City... | -7,233.00 |

**Nov 2, '08 - Nov 1, 09**

5:29 PM
11/18/09

# Amerigrow Recycling
## All Transactions for Kearney, Silvia.
### November 1, 2008 through November 2, 2009

| Type | Num | Date | Account | Amount |
|------|-----|------|---------|--------|
| **Nov 1, '08 - Nov 2, 09** | | | | |
| Bill | | 12/29/2008 | 2001 · Accounts Pa... | -1,270.91 |
| Bill Pmt -Check | 1488 | 12/29/2008 | 1048 · Fifth Third B.... | -1,270.91 |
| Check | 1881 | 3/23/2009 | 1048 · Fifth Third B.... | -1,012.23 |
| **Nov 1, '08 - Nov 2, 09** | | | | |

5:31 PM
11/18/09

# Amerigrow Recycling
## All Transactions for Janet Tomlinson
November 2, 2008 through November 1, 2009

| Type | Num | Date | Account | Amount |
|------|-----|------|---------|--------|

Nov 2, '08 - Nov 1, 09

Nov 2, '08 - Nov 1, 09